HONORABLE JOSE L. LINARES, U.S.D.J.

GRACE H. PARK
Acting Prosecutor of Union County
32 Rahway Avenue
Elizabeth, New Jersey 07202-2115
(908) 527-4500
Attorney for the State of New Jersey

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO. 15-2092 (JLL)

MARVIN MATHIS,                    :            Civil Action

    Petitioner,               :

      v.                     :         ANSWER TO PETITION FOR
                                               WRIT OF HABEAS CORPUS
ATTORNEY GENERAL OF               :
NEW JERSEY, et al.

    Respondents.              :

    RESPONDENTS, by way of Answer to the Petition for a Writ of Habeas Corpus in this matter, state:

    1.  Respondents admit the allegations of paragraph 1.

    2.  Respondents admit the allegations of paragraph 2.

    3.  Respondents admit the allegations of paragraph 3, but would clarify that petitioner was sentenced to a term of fifty years, with a thirty-year period of parole ineligibility on count one.  On count two, petitioner was sentenced to a concurrent term of eighteen years in prison, with a six-year period of parole ineligibility.  On count five, petitioner was sentenced to a concurrent four-year term, with an eighteen month period of

parole ineligibility.  Counts three and four merged into count
one for sentencing.

> 4.  Respondents admit the allegations of paragraph 4.

> 5.  Respondents admit the allegations of paragraph 5.

> 6.  Respondents admit the allegations of paragraph 6.

> 7.  Respondents admit the allegations of paragraph 7.

> 8.  Respondents admit the allegations of paragraph 8.

> 9.  Respondents admit the allegations of paragraph 9.

> 10. Respondents admit the allegations of paragraph 10.

> 11. Respondents admit the allegations of paragraph 11(a),
but would clarify that the grounds listed on page one of
petitioner's addendum were raised in his verified motion for
post-conviction relief, filed in September 2003.  (Ra8 at 3).
The grounds listed in page two of petitioner's addendum were
raised in his memorandum of law in support of his post-conviction
motion, filed in February 2005.  (Ra9 at 2).  The first "Point I"
listed on page three of petitioner's addendum was raised in his
pro se letter brief in support of his post-conviction motion,
filed in August 2007.  (Ra20 at 4).  The second "Point I" through
"Point III," also listed in page three of petitioner's addendum,
was raised in his letter brief in support of his post-conviction
motion, filed in July 2011.  (Ra20 at 33).

Respondents deny the allegations of paragraph 11(b), where
the grounds listed on page four of petitioner's addendum do not

precisely state the grounds raised in the appeal of his post-conviction motion.  Further, petitioner first appealed the denial of his post-conviction motion in Docket No. A-3695-07T4[1].  In that case, appellate counsel argued:

> I. THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED BECAUSE PCR COUNSEL DEPRIVED DEFENDANT OF HIS RIGHT TO A RUE "HEARING" BY FAILING TO PREPARE A BRIEF ON BEHALF OF THE DEFENDANT.
>
> II. THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED BECAUSE THE COURT MISAPPLIED THE PROCEDURAL BARS OF R. 3:22-4 AND R. 3:22-5.
>
> III. THE COURT ERRED IN DENYING POST-CONVICTION RELIEF BECAUSE TRIAL COUNSEL'S FAILURE TO PRESENT EVIDENCE THAT THE DEFENDANT WAS DIAGNOSED WITH A PERSONALITY DISORDER AND COGNITIVE LIMITATIONS AND WAS FOUND TO BE FUNCTIONING AT THE BORDERLINE LEVEL OF RETARDATION DURING THE PRETRIAL MIRANDA HEARING, DURING THE TRIAL, AND AT SENTENCING SATISFIED BOTH PRONGS OF THE STRICKLAND/FRITZ TEST FOR INEFFECTIVE ASSISTANCE OF COUNSEL, AND APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THESE ISSUES ON APPEAL.
>
> IV. THE COURT'S RULING DENYING POST-CONVICTION RELIEF VIOLATED THE DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL, APPELLATE, AND POST-CONVICTION RELIEF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10, OF THE NEW JERSEY CONSTITUTION.
>
> V. DEFENDANT REASSERTS ALL OTHER ISSUES RAISED IN HIS PRO SE PETITION AND BRIEFS IN SUPPORT OF POST-CONVICTION RELIEF.

---

[1] Despite a diligent search, our office was unable to locate the file containing petitioner's appeal in Docket No. A-3695-07T4.

[Ra20 at 21].

Petitioner also filed a <u>pro</u> <u>se</u> brief in which he raised the

following issues:

> I. THE DEFENDANT RIGHT TO EFFECTIVE
> ASSISTANCE OF COUNSEL AS GUARANTEED BY THE
> SIXTH AMENDMENT TO THE UNITED STATES
> CONSTITUTION AND ART. I, PAR. 10 OF THE NEW
> JERSEY CONSTITUTION WAS VIOLATED BY ASSIGNED
> PCR COUNSEL FAILURE TO COMPLY WITH <u>R.</u> 3:22-
> 6(D) BY NOT ADVANCING THE DEFENDANT'S
> ARGUMENTS SET FORTH IN HIS FEBRUARY 24, 2005
> <u>PRO</u> <u>SE</u> MEMORANDUM OF LAW AND APPENDIX ON PCR.
>
> A. PCR Counsel Failed to Investigate,
> Interview and Secure Affidavits from Three
> Expert Witnesses, Such Psychological Evidence
> was Crucial in Advancing Defendant's
> Competency Claim on PCR, Contrary to the
> Sixth and Fourteenth Amendment.
>
> B. PCR Counsel Failed to Raise on PCR
> Ineffective Assistance of Appellate Counsel
> Failure to Raise on Direct Appeal, Trial
> Counsel's Failure to Elicit the Aid of an
> Expert Witness to Illustrate Defendant's
> Limited Mental Ability and His Status as a
> Special Education Student, Contrary to the
> Sixth and Fourteenth Amendment.
>
> [Ra11 at 3].

On October 12, 2010, the Appellate Division reversed and

remanded petitioner's case, finding that PCR counsel failed to

comply with the requirements of <u>R.</u> 3:22-6(d), <u>State v. Rue</u>, 175

N.J. 1, 811 A.2d 425 (2002) and <u>State v. Webster</u>, 187 N.J. 254,

901 A.2d 338 (2006).  (Ra20 at 20 to 30).

After remand, the post-conviction court ultimately denied relief on January 27, 2012 (Ra20 at 60), and petitioner appealed to the Appellate Division in Docket No. A-3222-11T1.  In that appeal, defense counsel argued:

> POINT I
> THE PCR COURT ERRED IN DENYING MATHIS AN EVIDENTIARY HEARING EVEN THOUGH MATHIS PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
>
> POINT II
> THE PCR COURT ERRED IN DENYING MATHIS'S PETITION FOR POST-CONVICTION RELIEF AS MATHIS SUCCESSFULLY DEMONSTRATED THAT HIS STATEMENTS TO THE POLICE SHOULD HAVE BEEN SUPPRESSED AND MATHIS DID NOT RECEIVE REASONABLE REPRESENTATION OF TRIAL COUNSEL AT THE MIRANDA HEARING.
>
> POINT III
> THE PCR COURT ERRED IN DENYING MATHIS'S PETITION FOR POST-CONVICTION RELIEF EVEN THOUGH THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE, IMPROPER AND OTHERWISE UNCONSTITUTIONAL AND MATHIS DID NOT RECEIVE THE REASONABLE REPRESENTATION OF TRIAL COUNSEL AT SENTENCING.
>
> POINT IV
> MATHIS INCORPORATES BY REFERENCE THE ARGUMENTS CONTAINED IN HIS INITIAL VERIFIED PETITION AND BRIEF.
>
> [Ra13 at 2].

Petitioner additionally raised the following points in his pro se supplemental brief:

> POINT I
> THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED BECAUSE THE COURT

MISAPPLIED THE PROCEDURAL BARS OF R. 3:22-4
AND 3:22-5.

POINT II
THE PCR COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF BECAUSE
TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
INVESTIGATE AND PRESENT EVIDENCE OF
DEFENDANT'S COGNITIVE LIMITATIONS AND HIS
STATUS AS A SPECIAL EDUCATION STUDENT DURING
THE PRETRIAL MIRANDA HEARING AND AT TRIAL.

POINT III
THE PCR COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF BECAUSE
APPELLATE COUNSEL FAILED TO DISCOVER AND
RAISED ON DIRECT APPEAL TRIAL COUNSEL'S
FAILURE TO PRESENT EVIDENCE OF DEFENDANT'S
COGNITIVE LIMITATIONS AND HIS STATUS AS A
SPECIAL EDUCATION STUDENT DURING THE PRETRIAL
MIRANDA HEARING AND AT TRIAL.

POINT IV
THE PCR COURT'S RULING DENYING POST-
CONVICTION RELIEF VIOLATED DEFENDANT'S RIGHT
TO EFFECTIVE ASSISTANCE OF TRIAL AND
APPELLATE AS GUARANTEED BY THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION
AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY
CONSTITUTION.

POINT V
DEFENDANT REASSERTS ALL OTHER ISSUES RAISED
IN HIS PRO SE PETITION AND BRIEFS IN SUPPORT
OF POST-CONVICTION RELIEF.

[Ra17 at 2 to 3].

Lastly, respondents admit the allegations contained in

paragraph 11(c), but would add that his petition for

certification was denied at State v. Mathis, 220 N.J. 572, 108

A.3d 632 (2015).

12. Respondents deny the allegations in paragraph 12. First, petitioner's claims are time barred since his petition was filed beyond the one-year time limit as set forth in 28 U.S.C. §2244(d). Second, petitioner's claims have been reviewed by the New Jersey Courts and have been reasonably rejected on their merits where these claims afford no basis for relief.

AFFIRMATIVE DEFENSE:

Petitioner filed this habeas corpus petition on or about March 13, 2015. Because that filing was more than one year after the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) on April 24, 1996, and more than one year after petitioner's direct appeal became final and his post-conviction relief proceedings in the State courts were completed, respondents contend that the habeas petition is out of time and must be dismissed.

Under 28 U.S.C. §2244(d)(1), as amended by the AEDPA, a one-year period of limitation has been established for the filing of habeas corpus petitions by state prisoners. Duncan v. Walker, 533 U.S. 167, 121 S.Ct. 2120 (2001); Fahy v. Horn, 240 F.3d 239, 243 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Morris v. Horn, 187 F.3d 333, 337 (3d Cir. 1999); Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999); Miller v. New Jersey Department of Corrections, 145 F.3d 616, 617 (3d Cir. 1998); Burns v. Morton, 134 F.3d 109 (3d Cir. 1998). That portion of the AEDPA provides:

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State actions in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Thus, evaluation of the timeliness of a §2254 petition requires a determination of, first, when the pertinent judgment became "final," and second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."

A state-court criminal judgment becomes "final" within the meaning of §2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See, Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337, n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

An application for state post-conviction relief is considered "pending" within the meaning of §2244(d)(2), and the limitations period is statutorily tolled from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Staffold, 536 U.S. 214, 221-22, 122 S.Ct. 2134 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, supra, 204 F.3d at 420-24.  However, the statute of limitations is not tolled during the time a state prisoner may file a petition for writ of certiorari in the United States Supreme Court.  Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079 (2007).  Importantly, the limitations period of §2244(d) is not tolled by a post-conviction state proceeding that was not timely filed under state law.  Pace v. DiGuglielmo, 544 U.S. 408, 414, 125 S.Ct. 1807, 1812 (2005).  This is so even where the state court addresses the merits of the

petition in addition to finding it untimely.  Carey v. Staffold, supra, 536 U.S. at 225-26, 122 S.Ct. at 2141.

Further, §2244(d) of the AEDPA was enacted to curb the abuse of the writ of habeas corpus by providing a one year limitation period for filing petitions.  Miller, supra, 145 F.3d at 618. Prior to the adoption of the AEDPA, there was no specific period of limitations governing federal habeas corpus petitions. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998); Brown v. Angelone, 150 F.3d 370, 371 (4th Cir. 1998); Ross v. Artuz, 150 F.3d 97, 99 (2d Cir. 1998).

In the present case, petitioner's conviction was affirmed on direct appeal by the Superior Court of New Jersey, Appellate Division ("Appellate Division") on June 2, 2000.  (Ra3).  On October 11, 2000, the New Jersey Supreme Court denied petitioner's petition for certification.  State v. Mathis, 165 N.J. 603 (2000).  (Ra6).  Petitioner's one-year time to file his habeas petition began to run on January 9, 2001, following the expiration of the ninety-day period in which petitioner could have sought review in the United States Supreme Court.

Thereafter, time was tolled when petitioner properly filed his motion for post-conviction relief on September 17, 2003. (Ra8).  During this time, 981 days elapsed, thus making his habeas petition already time-barred.  The Appellate Division ultimately affirmed the lower court's denial of post-conviction

relief on August 1, 2014.  (Ra24).  Time began running again until petitioner filed his petition for writ of habeas corpus on March 13, 2015.  During this time, another 223 days elapsed. When combined, approximately 1,204 days have elapsed, and petitioner is well beyond the one-year time limit to file his petitioner for habeas corpus relief.

Petitioner argues, though, that his time to file was tolled in 2001 when he filed a motion for post-conviction relief.  This Court noted the discrepancy between petitioner's asserted filing date and the date listed in the Appellate Division's opinion and on April 22, 2015, ordered petitioner to show cause why his petition should not be dismissed as time-barred.  (ECF No. 2). In his response, petitioner asserted that he filed a pro se petition for post-conviction relief on April 26, 2001, and that it was "time-stamped 'Received and Filed' on May 01, 2001" by the court clerk's office.  (ECF No. 3 at 4-5).  On May 28, 2015, this Court found that petitioner showed good cause why his petition should not be dismissed as untimely and ordered respondents to file a response.  Respondents would submit, though, that the 2001 document was not a "properly filed" PCR, and, thus, did not toll the one-year time limit.

"An application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct.

361, 364, 148 L.Ed.2d 213 (2000); Merritt v. Blaine, 326 F.3d 157, 162 (3d Cir. Pa. 2003).  "In determining whether a petition is 'properly filed,' a federal court 'must look to state law governing when a petition for collateral relief is properly filed.'"  Douglas v. Horn, 359 F.3d 257, 262 (3d Cir. Pa. 2004) (quoting Fahy v. Horn, 240 F.3d 239, 243 (3d Cir. 2001)). Pursuant to New Jersey Rule 3:22-8, a petition for post-conviction relief "shall be verified by defendant and shall set forth with specificity the facts upon which the claim for relief is based, the legal grounds of complaint asserted, and the particular relief sought."  (Emphasis Added).

In this case, petitioner filed a document entitled "Verified Petition for Post Conviction Relief" dated April 26, 2001. However, respondents submit that the document was not a "properly filed" post-conviction petition.  Although petitioner verified the petition, as required by R. 3:22-8, he failed to state with specificity the legal grounds of his complaint or relief sought. In fact, he did not make any claims of error or state what relief he sought at all – not even a blanket statement claiming he received ineffective assistance of counsel.

Instead, petitioner merely gave a procedural history of his case from his indictment through to his appeal, stating the issues he raised on appeal, then he concluded with his certification and signature.  (Ra7 at 6 to 7).  In his cover

letter to the court clerk, petitioner stated that "A brief in support of this [petition] is currently being prepared and at the time of this filing [is] incomplete." (Ra7 at 1). No brief was filed.

Instead, in 2003, petitioner filed another pro se "Verified Petition for [] Post-Conviction Relief," dated September 17, 2003, in which he stated the claims he was raising and the relief he was seeking. (Ra8 at 3 to 6). Respondents would submit that this 2003 petition was the "properly filed" petition from which petitioner's one-year time limit should be calculated. Both the State PCR court and the Appellate Division, including both parties, relied on the 2003 petition as the basis of petitioner's post-conviction claims. (Ra23 at 8)("On September 25, 2003, Mathis filed a first Petition for Post-Conviction relief."); (Ra21 at 5)("On September 25, 2003, defendant filed a Petition for Post-Conviction Relief."); (Ra20 at 23)("On September 25, 2003, defendant filed the PCR petition that is the subject of this appeal."); (Ra24 at 2)("Defendant filed a PCR petition in 2003.").

Petitioner's 2001 filing was deficient and not a "properly filed" post-conviction petition where there were no grounds for relief raised. The State courts did not, and could not, proceed with the 2001 filing since there was absolutely no indication what type of relief petitioner sought. Not until petitioner

13

properly filed his 2003 petition was the State able to respond, and the State courts were able to review whether petitioner presented any meritorious issues.

Additionally, the time period between the 2001 filing and the 2003 post-conviction petition should not be considered tolled as a time when petitioner was "preparing" his post-conviction motion.  See, <u>Washington v. Byrd</u>, 2002 U.S. Dist. LEXIS 5010, No. 00-6389, 2002 WL 461729 at *20-21 (E.D.Pa. March 22, 2002) (holding that preparation of a state court petition does not toll the filing of a federal habeas petition.)

Nor is petitioner entitled to equitable tolling.  The doctrine of equitable tolling is available when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights."  <u>Miller v. New Jersey State Dep't of Corrs.</u>, 145 F.3d 616, 618 (3d Cir. 1998).  Equitable tolling may be appropriate if:

>    (1) The government actively misled the petitioner,
>
>    (2) The petitioner has in some extraordinary way been prevented from asserting his rights, or
>
>    (3) The petitioner has timely asserted his rights in the wrong forum.
>
>    [<u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)].

Accord, Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  In this case, petitioner fails to meet any of the above grounds in order to justify equitable tolling.  The State never misled petitioner regarding his post-conviction petition, he has not been prevented from asserting his rights, nor did he timely file his claim, but in the wrong forum.  Here, petitioner filed a document containing the procedural history of his case in 2001.  The filing did not contain any claims of error or basis for relief.  It did not even contain a blanket assertion that he was denied effective representation of counsel.  It was, quite simply, just a recitation of the procedural history.

When petitioner properly filed his verified post-conviction petition in 2003, he included his claims of error and stated the relief he sought.  (Ra8 at 3 to 4; 6).  After petitioner properly filed his post-conviction petition, the State was able to respond to his claims, and the court was able to make its ruling.  (Ra15 at 87 to 94).  Each party relied on the 2003 post-conviction petition as the properly filed petition in which petitioner raised his claims.  Therefore, since the 2003 petition was the first "properly filed" petition, petitioner's habeas petition should be dismissed as time barred since it was filed well over the one year time limit.

However, even if this Court were to review the merits of petitioner's arguments, his claims fail where they are without merit and have been properly rejected by the New Jersey Courts.

STANDARD OF REVIEW:

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas corpus relief "shall not be granted" unless the challenged state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. §2254(d)(2).

The United States Supreme Court has clarified the meaning of §2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  Under the "contrary to" clause of §2254(d)(1),

> [a] state-court decision will certainly be
> contrary to our clearly established precedent
> if the state court applies a rule that
> contradicts the governing law set forth in
> our cases ... .  A state-court decision will
> also be contrary to this Court's clearly
> established precedent if the state court
> confronts a set of facts that are materially
> indistinguishable from a decision of this
> Court and nevertheless arrives at a result
> different from our precedent.  Accordingly,
> in either of these two scenarios, a federal
> court will be unconstrained by §2254(d)(1)
> because the state-court decision falls within
> the provision's "contrary to" clause.

> On the other hand, a run-of-the mill state-
> court decision applying the correct legal
> rule from our cases to the fact of a
> prisoner's case would not fit comfortably
> within §2254(d)(1)'s "contrary to" clause.
>
> [Id. at 405-06, 1519-20; accord, Werts v.
> Vaughn, 228 F.3d 178, 196-97 (3d Cir. 2000)].

Therefore, the federal habeas court must first determine if there is any clearly established United States Supreme Court precedent governing petitioner's claim, and if there is, the court must determine whether the state court decision was "contrary to" that precedent. Relief is appropriate only if petitioner shows that the "Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir.)(emphasis in original), cert. denied, 528 U.S. 824 (1999).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, supra, 529 U.S. at 413, 120 S.Ct. at 1523. The "unreasonable application" inquiry is an objective one: "[s]tated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 1521. A habeas petition should not be granted unless the state court

decision "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent ... [m]ere disagreement with the state court's conclusions is not enough to warrant habeas relief." Matteo, supra, 171 F.3d at 888.

> The most important point is that an unreasonable application of federal law is different from an incorrect application of federal law ... . Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under §2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal laws erroneously or incorrectly. Rather, that application must also be unreasonable.
>
> [Williams v. Taylor, 529 U.S. at 410-11, 120 S.Ct. at 1522; accord, Werts v. Vaughn, 228 F.3d at 196-97].

A habeas petitioner may alternatively find relief if the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. §2254(d)(2); see also, Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000), cert. denied, 531 U.S. 1084, 121 S.Ct. 789 (2001). The federal habeas court must presume that any factual issue determined by the state court is correct, unless petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1); Werts v. Vaughn, supra, 228 F.3d at 195. The

presumption of correctness applies to both explicit and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d at 286.  Where the state court findings have support in the record, those findings must control, even though the federal habeas court might have rendered contrary findings that would have support in the record.  Wainwright v. Goode, 464 U.S. 78, 85, 104 S.Ct. 378, 382 (1983).

In Grounds One through Four, petitioner argues that he received ineffective assistance of trial counsel for failing to present evidence of his low-intellectual functioning in waiving his Miranda rights, for failing to call witnesses to support his status as a special education student, and in arguing for a mitigation in his sentence.  Petitioner also argues in Grounds Five and Six that appellate counsel was ineffective for failing to raise these issues on appeal.  Petitioner's claims have been properly rejected by the State courts, and he is not entitled to habeas relief.

The relevant Supreme Court precedent for determining ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  Under Strickland, in order for a convicted defendant to establish that counsel's assistance was so defective as to require a reversal of his conviction, he must demonstrate that: (1) counsel's performance was deficient in that counsel made errors so serious

that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that this deficient performance prejudiced defendant, in that counsel's errors were so serious as to deprive him of a fair trial.  Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064.

The proper standard of evaluating effective assistance of counsel is whether the attorney's performance is that of reasonably effective assistance.  Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064.  The purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, but simply to ensure that criminal defendants receive a fair trial.  Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065.  The reasonableness of counsel's conduct must be evaluated on the facts of the particular case, viewed at the time of counsel's conduct.  Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.

The state appellate court reviewed petitioner's ineffective assistance of counsel claim in accordance with the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  The state court determined that the trial record refuted petitioner's claims and held that petitioner failed to demonstrate that trial counsel was ineffective under Strickland.  The decision of the state court was a reasonable application of federal law and there is no basis

for habeas relief on this ground.  See, Werts v. Vaughn, 228 F.3d at 203-206.

Respondents maintain that petitioner has failed to show that his trial counsel was not "a reasonably competent attorney," i.e., that his performance "'was not within the range of competence demanded of attorneys in criminal cases.'" Strickland, 466 U.S. at 687 (citation omitted).  Furthermore, respondents maintain that petitioner was not prejudiced, since there was no reasonable probability, given the record below, that any errors by defense counsel affected the outcome of his trial.

Here, both the PCR court and the Appellate Division reviewed petitioner's claims of ineffective assistance of counsel, and rejected them where they failed to meet Strickland.  In his habeas petition, petitioner argues that his attorney was ineffective for failing to present evidence of his low intellectual functioning at the Miranda hearing, trial, or at sentencing.  However, the state courts properly rejected petitioner's argument where he failed to make a prima facie claim of ineffective assistance of counsel.

In this case, Detective Thomas Koczur testified at the Miranda hearing that after petitioner was brought in, he informed petitioner that he was a "strong suspect" in the case, and told petitioner "not to answer any questions until his mother was present ... ."  (3T18-10 to 19).  After petitioner's mother

arrived, Detective Koczur advised petitioner regarding his
<u>Miranda</u> rights. (Ra14 at 17; 3T20-1 to 24-9). Petitioner's
mother was present at the start of the interview, however at one
point, petitioner asked his mother to leave the room. Petitioner
then confessed to the crime. (Ra14 at 17 to 18; 3T26-8 to 10;
3T27-4 to 28-3). After petitioner's mother returned to the room,
petitioner reiterated his involvement in the crime and provided
two written statements. (Ra14 to 18 to 19; 3T28-4 to 22; 3T36-13
to 38-21).

After hearing all of the testimony presented during the
suppression hearing and the attorneys' arguments, the trial court
properly found

> beyond a reasonable doubt that ... defendant
> knowingly, voluntarily, and intelligently
> read his, waived his rights after having been
> advised of those rights. There is no
> evidence that the defendant was threatened,
> forced, or coerced into giving a statement.
> The defendant's rights were, as I indicated,
> read to him by the officer.
>
> [4T15-14 to 21].

Petitioner argues that due to his "severe learning
disability," he was unable to fully understand his <u>Miranda</u>
warnings. The court found petitioner's testimony that he didn't
understand what was being read to him to be not credible. (4T16-
7 to 8). Neither petitioner, nor his mother, advised police, or
gave any indication, that they did not understand the warnings.

(4T16-8 to 23).  Although petitioner was in special education classes at the time of his arrest, this falls far short of establishing a mental deficiency rendering him incapable of waiving his <u>Miranda</u> rights.  Again, the trial judge had the opportunity to view petitioner during his testimony and evaluate his ability to understand and answer questions.  Petitioner's mother was also present when Detective Koczur read petitioner those rights.  (3T20-1 to 24-9).

Furthermore, while Drs. Thompson and Page classified petitioner with low to borderline intelligence, (Ra19 at 42; 54), Dr. Schlesinger classified him as within the high end of borderline range of intelligence.  (Ra19 at 62).  Dr. Thompson also found that petitioner was oriented to time, place and person, had no delusional thinking, and had no acute psychiatric disability.  (Ra19 at 42 to 43).  She also stated that petitioner was fully aware of her role in his judicial process.  (Ra19 at 41).  Dr. Schlesinger concluded that petitioner had no severe psychopathology; nor did he show signs of schizophrenia, psychosis, or major mental illness.  (Ra19 at 69).  In short, petitioner presented nothing indicating that he suffered from any type of mental defect that would have affected his ability to understand and waive his Miranda rights.  Thus, the state courts correctly concluded that petitioner did not establish that

counsel was deficient, since the evidence that petitioner claims should have been presented does not even exist.

Additionally, petitioner cannot show that the result of the trial would have been different had trial counsel called witnesses to testify about his special education status.  Indeed, as the PCR Court found "There is simply nothing that indicates to the Court that errors committed by trial counsel, if there were any, were such a substantial nature so that it is reasonably probably [sic] that the results would have been different." (16T28-9 to 13).  Specifically, the PCR Court found:

> Based upon my review of those [psychological] reports it is clear to me that they – while the evidence does support the conclusion that Mr. Mathis had learning disabilities, that his – that he – his learning capacity was as – I believe it is indicated at a borderline level.  There's also no information contained in these reports that supports a conclusion that he was suffering any psychiatric illness.
>
> There is nothing here that says he lacked competence.  That is that he did not understand and appreciate the nature of the charges against him.  There is nothing that supports the conclusion that he had a diminished capacity.  That is he did not have the capacity to formulate the ability to act in a purposeful or knowing way.
>
> The review of the proceedings indicates that he participated in the interview with the police and the time he gave his statement – again in the presence of his – or a parent. He voluntarily waived his rights.  It is apparent that he understood the proceedings, that he understood the questions being posed

to him, and was able to formulate answers to
those questions that were appropriate and
responsive to the questions before him.

There is nothing that allows this court to
conclude that the evidence supports a
conclusion that the defendant at the time of
his trial was incompetent or suffered from
diminished capacity.  Thus any failure on the
part of his attorney to raise those issues,
either in connection with the <u>Miranda</u> or at
the time of sentencing to mitigate – as a
mitigating factor or to raise as a bar to the
prosecution of this case that any failure of
counsel to do that was ineffective
assistance.  There simply was nothing to
present to the court to argue that the
defendant lacked competency or that he
suffered diminished capacity.

[15T10-10 to 11-20].

In reviewing the issue again after remand, the PCR Court

again found that there were not

any facts from which it could be demonstrated
that the fact that the defendant was learning
disabled or was a special ed student was
sufficient to show that he had a mental
deficiency that would some way render him
incapable of or impairing his ability to
participate in this case.

There is nothing that indicates that he was
disabled so that he could not knowingly and
voluntarily waive his Miranda rights.  That
somehow that special ed status would have
affected his waiver hearing in juvenile
court, his participation in the trial, or
even affect the sentencing.  We are not
without a record here.  There was a waiver
proceeding in the juvenile court.  There was
a psychologist involved in that proceeding.

And again the conclusion of the court is that
there was not evidence that the mental

> deficiency was so severe that the absence of
> his presentation would have affected the
> outcome of the proceeding.  There is nothing
> to show that reasonable probability but for
> the failure to present that evidence, the
> result somehow would have been different.

[16T25-16 to 26-12].

On appeal the Appellate Division agreed that petitioner failed to establish ineffective assistance of counsel pursuant to Strickland, and held that "The fact that defendant was a special education student and functioned at a low intellectual level does not alone constitute a sufficient factual basis to conclude that he did not understand his rights when he waived them." (Ra24 at 17 to 18).  Although petitioner testified at the suppression hearing that he did not understand certain isolated phrases of the Miranda warnings, the trial court found petitioner's testimony to be incredible.  In affording the trial court deference in its findings, the Appellate Division properly concluded that there was no evidence to support a finding of ineffective assistance of counsel.  (Ra24 at 18).

Additionally, contrary to petitioner's argument, appellate counsel was not ineffective for failing to raise these issues on appeal.  Although an appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal, the hallmark of effective appellate advocacy is the process of

"winnowing out" weaker arguments and focusing on those more likely to prevail.  McCoy v. Court of Appeals of Wis., Dist. 1, 486 U.S. 429, 438, 108 S.Ct. 1895, 1902 (1988); Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313 (1983).  Counsel decides what issues to pursue on appeal, and is not obligated to raise every possible claim.  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).

While appellate counsel may choose to raise every colorable claim possible, he or she runs the risk of burying the strongest issues in the "verbal mound" of weak and strong claims.  Jones v. Barnes, supra, 463 U.S. at 752, 103 S.Ct. at 3313, Sistrunk v. Vaughn, supra, 96 F.3d at 670.  A decision to avoid diverting the court's attention from what counsel considers to be stronger arguments is the kind of strategy that "able counsel pursue and appellate courts appreciate."  Wicker v. McCotter, 783 F.2d 487, 497 (5th Cir. 1986), cert. denied, 478 U.S. 1010 (1986).

Thus, appellate counsel is under no constitutional obligation to pursue every nonfrivolous point requested by petitioner if, as a matter of professional judgment, he or she decides not to pursue the issue.  Jones v. Barnes, supra, 463 U.S. at 751, 103 S.Ct. at 3312.  Likewise, appellate counsel is not constitutionally obligated to press frivolous issues on appeal.  See State v. Kyles, 132 N.J. Super. 397, 400-01, 334 A.2d 44, 46 (App. Div. 1975).

In this case, appellate counsel raised several claims on appeal, but he cannot be considered ineffective just because he chose not to raise these non-meritorious issues as well. Therefore, petitioner has failed to establish that he received ineffective assistance of counsel at trial, at the sentencing hearing, or on appeal.  He has further failed to establish that the state court decisions on this issue were contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. §2254(d)(1).  The state courts applied the Strickland standard, the Supreme Court precedent applicable to this issue, and made a reasonable determination that petitioner was represented by competent counsel.  Petitioner's claims on this issue fail both factually and legally, and thus, there is no basis for habeas relief.

13. Respondents admit the allegations of paragraph 13.

14. Respondents admit the allegations of paragraph 14.

15. Respondents admit the allegations of paragraph 15.

16. Respondents admit the allegations of paragraph 16.

17. Respondents admit the allegations of paragraph 17.

18. Respondents deny the allegations of paragraph 18, as argued in detail in paragraph 12.

WHEREFORE, respondents respectfully urge that this petition for a Writ of Habeas Corpus be denied, and that no Writ be issued.

GRACE H. PARK
Acting Prosecutor of Union County


s/ Meredith L. Baló

By:   MEREDITH L. BALO
      Assistant Prosecutor
      Attorney for Respondents


DATED: August 7, 2015