Marvin Mathis #304144/244859-C
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625-0861

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3222-11T1

STATE OF NEW JERSEY,                    :
                                        :
          Plaintiff-Respondent;         :
                                        :          CRIMINAL ACTION
v.                                      :
                                        :     On Appeal from a Denial
                                        :     of Petition for Post-
MARVIN MATHIS,                          :     Conviction Relief from
                                        :     New Jersey Law Division,
                                        :     Union County
          Defendant-Appellant.         :
                                        :     Sat Below:


                                              Hon. John F. Malone, J.S.C.

PRO SE SUPPLEMENTAL BRIEF ON BEHALF OF
DEFENDANT-APPELLANT MARVIN MATHIS

Defendant is Presently Confined

# TABLE OF CONTENTS

PAGE NOS.

STATEMENT OF PROCEDURAL HISTORY ....................... 1

STATEMENT OF FACTS ................................... 4

(A)

WAIVER HEARING, MIRANDA MOTION, AND TRIAL .... 4

(B)

DIRECT APPEAL ................................... 8

(C)

POST-CONVICTION RELIEF ...................... 9

LEGAL ARGUMENT:

POINT I

THE ORDER DENYING POST-CONVICTION RELIEF
SHOULD BE REVERSED BECAUSE THE COURT
MISAPPLIED THE PROCEDURAL BARS OF R.
3:22-4 AND 3:22-5 ........................... 17

POINT II

THE PCR COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF
BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR
FAILING TO INVESTIGATE AND PRESENT EVIDENCE
OF DEFENDANT'S COGNITIVE LIMITATIONS AND
HIS STATUS AS A SPECIAL EDUCATION STUDENT
DURING THE PRETRIAL MIRANDA HEARING AND
AT TRIAL ................................... 23

POINT III

THE PCR COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF
BECAUSE APPELLATE COUNSEL FAILED TO DISCOVER
AND RAISED ON DIRECT APPEAL TRIAL COUNSEL'S
FAILURE TO PRESENT EVIDENCE OF DEFENDANT'S
COGNITIVE LIMITATIONS AND HIS STATUS AS A
SPECIAL EDUCATION STUDENT DURING THE
PRETRIAL MIRANDA HEARING AND AT TRIAL .............. 34

POINT IV

THE PCR COURT'S RULING DENYING POST-CONVICTION
RELIEF VIOLATED DEFENDANT'S RIGHT TO
EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE AS
GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AND ARTICLE I, PARAGRAGH 10
OF THE NEW JERSEY CONSTITUTION .................... 43

POINT V

DEFENDANT REASSERTS ALL OTHER ISSUES RAISED IN
HIS PRO SE PETITION AND BRIEFS IN SUPPORT OF
POST-CONVICTION RELIEF ............................ 44

CONCLUSION ............................................. 45

## INDEX TO APPENDIX

PAGE NOS.

Appellate Division Per Curiam Opinion,
State v. Marvin Mathis, Appellate
Division Docket No. A-3316-98T8 ..................... Da 1 to Da 40

Notice of Petition for Certification ..................... Da 41

Order of Petition for Certification ...................... Da 42

Pro Se Petition for Post- Conviction
Relief .................................................. Da 43 to Da 50

Pro Se Verified Petition for Post-
Conviction Relief ...................................... Da 51 to Da 58

Pro Se Memorandum of Law in Support
of Post-Conviction Relief .............................. Da 59 to Da 96

Pro Se Appendix to Memorandum of Law
        Psychological Assessment of Defendant
        By Dr. Cheryl L. Thompson ..................... Da 97 to Da 101

        Psychological Evaluation of Defendant
        By Dr. Martha H. Page .......................... Da 102 to Da 111

        Psychological Evaluation of Defendant
        By Dr. Louis B. Schlesinger ................... Da 112 to Da 127

Pro Se Letter-Brief in Support of
Post-Conviction Relief ................................. Da 129 to Da 144

February 29, 2008 Order Denying Post-
Conviction Relief ...................................... Da 145

Appellate Division Per Curiam Opinion,
State v. Marvin Mathis, Appellate
Division Docket No. A-3695-07T4 ...................... Da 146 to Da 155

Pro Se Second Letter-Brief in Support
of Post-Conviction Relief and Appendix ............... Da 156 to Da 182

January 27, 2012 Order Denying Post-
Conviction Relief ...................................... Da 185

Statement of Facts, Direct Appeal Brief ............. Da 186 to Da 200

Trial transcript of Marvin Mathis, Morning
Session, June 11, 1998 ................................ Da 201 to Da 205

# TABLE OF AUTHORITIES

## CASES

PAGE NOS.

Doe v. Poritz, 142 N.J. 1 (1995) .................................... 20

Estelle v. Williams 425 U.S. 501,
96 S.Ct. 1691 (1976) ............................................... 28

Evttis v. Lucey, 469 U.S. 387,
105 S.Ct. 830 (1985) ............................................... 34

In Re Cannady, 126 N.J. 486 (1991) ................................. 26

In Re Kanffman, 126 N.J. 499 (1991) ................................ 26

Kent v. United States, 383 U.S. 541,
86 S.Ct. 1045 (1966) ........................................... 20, 21

State Interest of A.S. 409 N.J. Super. 99
(App. Div. 2009) ................................................... 21

State v. Afandor, 151 N.J. 41 (1997) ............................... 18

State v. Arthur, 184 N.J. 307 (2005) ............................... 29

State v. Bey 161 N.J. 233 (1999) ............................... 32, 41

State v. Budis, 125 N.J. 519 (1991) ................................ 27

State v. Capenter, 268 N.J. Super. 378
(App. Div. 1993), certif. denied,
135 N.J. 467 (1994) ................................................ 27

State v. Cooper, 410 N.J. Super. 43
(App. Div. 2009) ................................................... 28

Sate v. Coruzzi 189 N.J. Super. 273
(App. Div.) certif. denied,
94 N.J. 531 (1983) ................................................. 24

California v. Trombetta, 467 U.S. 479,
104 S.Ct. 2528 (1984) .............................................. 27

Crane v. Kentucky, 476 U.S. 683,
106 S.Ct. 2142 (1986) .............................................. 27

State v. Cummings, 321 N.J. Super. 154
(App. Div 1999), certif. denied,
162 N.J. 199 (2000) ..................................... 31,33,41,42

## TABLE OF CASES (cont'd)

PAGE NOS.

State v. Dalziel, 182 N.J. 494 (2005) ........................ 21

State v. Difrsco, 174 N.J. 195 (2002) ........................ 26

State v. Flowers, 224 N.J. Super. 208
(Law Div. 1987), aff'd, 224 N.J. Super. 90
(App. Div. 1988) ............................................ 27

State v. Fritz 105 N.J. 42 (1987) ................... 23,28,29,31,34,41

State v. Green, 55 N.J. 133 (1967) .......................... 26

State v. Guzman 313 N.J. Super. 363
(App. Div. 1998), certif. denied,
156 N.J. 424 (1998) ................................ 19,34,41

State v. J.M. 182 N.J. Super. 402 (2005) .................... 21

State v. Marshall 126 N.J. 545 (1992) ....................... 19

State v. Marshall 148 N.J. 89 (1997),
Cert denied, 522 U.S. 850, 118
S.Ct. 140 (1997) ................................... 20,32,42

State v. Mayron, 344 N.J. Super. 382
(App. Div. 2001) ............................................ 34

State v. McQuaid, 147 N.J. 464 (1997) ....................... 18

State v. Merola, 365 N.J. Super. 202
(App. Div. 2002), aff'd 365 N.J. Super 82
(App. Div. 2003), certif. denied, 179
N.J. 312 (2004) ............................................. 19

State v. Morrison 215 N.J. Super. 540
(App. Div. 1987), certif. denied,
107 N.J. 642 (1987) ................................. 34,41,43

State v. Odom, 113 N.J. Super. 186
(App. Div. 1971) ............................................ 22

State v. Preciose, 129 N.J. 451 (1992) ............... 18,19,32,42

State v. Rue, 175 N.J. 1 (2002) ............................. 22,44

State v. Russo, 333 N.J. Super. 119
(App. Div. 1998), certif. denied,
156 N.J. 425 (1998) ................................. 33,42

Pointer v. Texas, 380 U.S. 400,
85 S.Ct. 1065 (1965) ..............................................  27

State v. Sexton 311 N.J. Super. 70
(App. Div. 1998), aff'd,                              23,27,29,36,38,40
160 N.J. 93 (1999) ............................

Strickland v. Washington, 466 U.S. 668,                  17,23,24,28,29,
104 S.Ct. 2052 (1984)                       31,32,34,38,40,41,43
.........................

United v. Cronic, 466 U.S. 648,
104 S.Ct. 2039 (1984) ...........................           23,34

State v Wilbely 122 N.J. Super. 463
App. Div.), Rev'd on other grounds.                                24
63 N.J. 420 (1973) ..............................

## TABLE OF STATUTES CITED

**PAGE NOS.**

N.J.S.A. 2A:4A-26 ..............................................  1

N.J.S.A. 2C:2-6 ...............................................  1

N.J.S.A. 2C:11-3a(a) ..........................................  1

N.J.S.A. 2C:11-3a .............................................  1

N.J.S.A. 2C:15-1 ..............................................  1

N.J.S.A. 2C:39-4(a) ...........................................  1

N.J.S.A. 2C:39-5b .............................................  1

N.J.S.A. 2A:158A-5 ............................................  26

## TABLE OF RULES CITED

R. 3:22-1 .....................................................  18,32,42

R. 3:22-2 .....................................................  18

R. 3-22-2(a) ..................................................  18

R. 3-22-2(b) ..................................................  18

R. 3-22-2(c) ..................................................  19

## TABLE OF RULES (cont'd)

R. 3:22-2(b) ............................................... 18

R. 3:22-3 ............................................... 19

R. 3:22-4 ............................................... 17,18,19

R. 3:22-(b) ............................................... 18

R. 3:22-4(c) ............................................... 19

R. 3:22-5 ............................................... 17,18,19,22

R. 3:22-6 ............................................... 3

R. 3:22-10 ............................................... 32,42

R. 3:22-12 ............................................... 18,19,

## CONSTITUTIONAL PROVISION CITED

N.J. Const. Art. I, par. 10 ............................... 27,43

U.S. Const, amend. XIV ............................... 20,21,26,

## STATEMENT OF PROCEDURAL HISTORY

Defendant-appellant Marvin Mathis was charged in Union
County Indictment No. 97-02-0123 with murder, a crime of the
first degree, contrary to the provision of N.J.S.A. 2C:11-3a(1)
and/or (2) (count one); robbery, a crime of the first degree,
contrary to the provision of N.J.S.A. 2C:15-1 (count two);
felony murder, a crime of the first degree, contrary to the
provision of N.J.S.A. 2C:11-3(a)(3) (count three); possession
of a weapon for an unlawful purpose, a crime of the second degree
contrary to the provision of N.J.S.A. 2C:39-4a (count four);
and unlawful possession of a weapon, a crime of the third degree,
contrary to the provision of N.J.S.A. 2C:39-5b (count five).[1]

The Honorable John F. Malone, J.S.C., presided over a jury
trial on June 10, 11, 16, 17 and 18 1998. On the last mentioned
day, defendant was found guilty on all counts. On August 14,
1998, defendant was sentenced on his conviction for murder

---

[1]
Defendant was 15 years old when charged. Following a waiver hearing
held on October 10, and November 11, 1996, the Honorable Rudolph
N. Hawkins, J.S.C., waiver jurisdiction of the Chancery Division,
Family Part, and the matter was transferred to the Law Division to
try defendant as an adult.

on count one to State Prison for a term of 50 years with 30 years of parole ineligibility. A concurrent term of 18 years was imposed on defendant's conviction for robbery on count two. A concurrent term of 4 years was imposed on defendant's conviction for unlawful possession of a weapon on count five. Defendant's conviction for felony murder on count two and possession of a weapon for unlawful purpose on count four were merged. The aggregate custodial sentence imposed was 50 years with 30 years of parole ineligibility. A Notice of Appeal was filed on March 15, 1999.

In per curiam opinion decided on June 2, 2000, the Appellate Division affirmed defendant's convictions and sentences imposed. (See State of New Jersey v. Marvin Mathis, Appellate Division Docket No. A-3316-98T4; Da 1 to Da 40). A Notice of Petition For Certification was filed on June 15, 2000. (Da 41). On

---

2
Da refers to the appendix to this brief
"1MT" refers to the transcript of October 10, 1996, juvenile waiver
        hearing.
"2MT" refers to the transcript of November 11, 1996, juvenile waiver
        hearing.
"3MT" refers to the transcript of June 9, 1998, Miranda hearing
"1T" refers to the trial transcript of June 10, 1998
"2T" refers to the trial transcript of June 11, 1998 (a.m.)
"3T" refers to the trial transcript of June 11, 1998 (p.m.)
"4T" refers to the trial transcript of June 16, 1998
"5T" refers to the trial transcript of June 17, 1998 (a.m.)
"6T" refers to the trial transcript of June 17, 1998 (p.m.)
"7T" refers to the trial transcript of June 18, 1998
"ST" refers to the sentencing transcript of August 14, 1998
"PCR" refers to the transcript of January 27, 2012 (PCR heearing)

October 11, 2000, the New Jersey Supreme Court denied defendant's Certification. (Da 42).

A Pro Se Petition for Post-Conviction Relief was filed on or about May 1, 2001. (Da 43 to Da 50). A Pro Se Verified Petition for Post-Conviction Relief was filed on or about September 25, 2003. Defendant's Pro Se Memorandum of Law in Support of Post-Conviction Relief was filed on or about February 24, 2005. (Da 59 to 96). A Pro Se Letter-Brief in Support of Post-Conviction Relief was filed on or about August 7, 2007. (Da 129 to Da 1440. After presiding over a non-evidentiary hearing on February 29, 2008, Judge Malone denied defendant's Petition for Post-Conviction Relief. (Da 145).

Defendant appealed from that denial. On October 12, 2010, in a per curiam decision, the Appellate Division reversed and remanded the matter predicated "upon PCR counsel's failure to comply with the requirements of Rule 3:22-6(d), Rue and Webster." (Da 146 to Da 155).

A Pro Se Second Letter-Brief and Appendix in Support of Post-Conviction Relief was filed on or about October 28, 2011. (Da 156 to Da 182). After presiding over a non-evidentiary hearing on January 27, 2012, Post-Conviction Relief was denied by Judge Malone. (Da 185).

STATEMENT OF FACTS

(A)

WAVIER HEARING, MIRANDA MOTION/3, AND TRIAL

Defendant relies upon and incorporates by reference the Statement of Facts as set forth in his Appellate Division direct appeal brief. (Da 186 to Da 200). In addition, the Court's attention to the following is respectfully urged:

At the waiver hearing, the defense presented the reports of Dr. Cheryl L Thompson and Dr. Martha H. Page.[4] The State presented Dr. Louis B. Schlesinger. Each evaluated defendant "to assess the likelihood of successful rehabilitation within the Juvenile Justice System . . . prior to the achievement of age 19." (Da 97). Dr. Thompson opined that defendant "may well be functioning at the level of retardation" because of his severe learning problems, and suggested that defendant be referred for a complete diagonstic assessment. (Da 100).

Dr. Page, a psychologist, was retained to determine whether defendant "was amenable to the rehabilitation processes afforded by the juvenile system by age 19" (Da 105 to Da 106). Dr. Page found that defendant "was functioning on the borderline level of intelligence." (Da 110). Dr. Page diagnosed defendant

---

[3]  Miranda v. Arizona, 384 U.S. 486, 86 S.Ct. 1602 (1966)

[4]  Defense counsel Walter Florczak also represented defendant at trial.

with Axis I adjustment personality disorder with mixed
disturbance of emotion and conduct; with Axis II reading, written
expression, and mathematics disorder; with Axis IV educational
problems. (Da 110). Both Dr. Thompson and Dr. Page opined that
defendant could be successful rehabilitate before the age of
19. (Da 101; Da 109; Da 110 to Da 111).

During the _Miranda_ hearing, trial counsel's first reference
of defendant's cognitive limitations and his status as a
special education student occurred during his cross-examination
of Detective Thomas Koczur:

> [Trial counsel]: (W)ere you aware that he was a
> special education student in the school?
>
> [Detective Koczur]: No.
>
> [Trial counsel]: So you weren't aware he may
> have had certain learning disabilities that
> made it difficult for him to understand any
> of these things?
>
> [Detective Koczur]: No.
>
> [Trial counsel]: So you just assumed in the
> two minutes that you read this that he
> understand everything?
>
> [Detective Koczur]: Yes.
>
> [emphasis added]  (3MT 48-15 to 24).

At the _Miranda_ hearing, defendant testified inferentially
that he did not have the cognitive ability to understand and
to knowingly waive his rights when he was questioned by the
police. (3MT 113-14 to 117-3). Trial counsel argued that
defendant's statement should be suppressed because defendant
"didn't understand those right":

> [Trial counsel]: I suggest to the court con-
> sidering the nature of the charge, the fact
> that you have a fifteen year ten month old
> juvenile at the time of the arrest . . . .
> knowingly waived his rights . . especially
> since my client's own testimony indicated
> that he didn't understand those rights at
> that time.
>
> (1T 10-17 to 11-1).

Defendant's status as a special education student became the focus of significant attention at sidebar where a lengthy discussion took place between the prosecutor and trial counsel. The prosecutor was troubled when trial counsel asked Detective Thomas Koczur during cross-examination, if he was aware that defendant was a special education student. The prosecutor immediately requested the trial judge to give a curative instruction to the jury. The prosecutor and the trial counsel exchanged the following:

> [Prosecutor]: While there is some testimony
> of special education, you know, you should not
> assume what the meaning of that is. You can
> only make determinations based on the evidence
> and testimony. And that is something that
> requires expert testimony. Because that's a
> kind of reverse inflammatory.

> [Trial counsel]: I think the request is
> premature at this point.

> [Prosecutor]: The jury is thinking this kid is
> too stupid to give a statement and he is more
> likely to be malleable and be led into this.
> Because I know I have thoughts about special
> education, but I have never had any experience
> so I don't know what it actually is.

> [Trial counsel]: I asked the question based on
> the fact that he is a special education student.

> [Prosecutor]: So what is he  - - advanced, middle
> level, low level?

> [Trial counsel]: It goes to the voluntariness of the statement, whether the officer was aware at the time. [emphasis added].
>
> (2T 115-4 to 22; Da 201).

Evidence of defendant being classified as special education and communication handicap was readily available to trial counsel:

> [Trial counsel]: But I can bring evidence that he is classified as special ed. That's no problem.
>
> (2T 116-2 to 3; Da 202).

Trial counsel had ample opportunity to offer an expert to illustrate what defendant's status as a special education student meant, but counsel refused to elicit the aid of an expert as evidenced by the following:

> [Trial counsel]: I won't call an expert. All I am saying school administrator, custodian of that record saying he is classified as special ed. As to the basis of it you already have that discovery. [emphasis added].
>
> (2T 116-13 to 16; Da 202).

In addition, the trial judge never gave any curative instruction on this particular issue. (See 2T 117-11 to 12; Da 205). During the Miranda hearing, trial counsel did not offer Dr. Page or Dr. Thompson as defense witnesses, and did not attempt to introduce their evaluation of defendant into evidence. Nor did trial counsel offer these evaluations during the sidebar colloquy.

At sentencing, trial counsel also made reference to defendant's cognitive deficiencies and special education status was when he reminded the trial court that defendant was a "special ed. student." (See ST 3-1 to 3). At sentencing, trial counsel

presented no argument concerning the presence of mitigating factors. The trial court found two aggravating factors present: the nature and circumstances of the offense, N.J.S.A. 2C:44-1(a)(1), and the need for deterrence, N.J.S.A. 2C:44-1(a)(9). one mitigating factor was found present: the lack of a prior criminal record, N.J.S.A. 2C:44-1(b)(7). (See ST 10-1 to 11).

### (B)

### DIRECT APPEAL

Four issue were raised on direct appeal:

POINT I THE DECISION OF THE FAMILY PART JUDGE TO WAIVE JUVENILE JURISDICTION OVER MARVIN MATHIS CONSTITUTED A CLEAR ERROR OF JUDGMENT AND SHOULD BE REVERSED.

POINT II- DEFENDANT'S CONVICTION MUST BE REVERSED DUE TO THE IMPROPER ADMISSION OF HEARSAY EVIDENCE THAT HIS GIRLFRIEND WAS ACCOSTED ON THE STREET BY A MAN WHO TOLD HER THAT DEFENDANT HAD KILLED SOMEONE. SUCH EVIDENCE VIOLATED DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO CONFRONTATION U.S. CONST., AMENDS VI AND XIV; N.J. CONST., (1947), ART I, PAR. 10.

POINT-III DEFENDANT'S CONVICTION MUST BE REVERSED DUE TO ACTS OF PROSECUTORIAL MIS-CONDUCT, WHICH INCLUDED REFERRED TO DEFEN-DANT AS A THUG AND COMMENTING ON FACTORS OUTSIDE OF THE RECORD.

POINT IV- THE BASE TERM OF FIFTY YEARS IMPRISONMENT IS EXCESSIVE AND SHOULD BE MODIFIED BY THIS COURT.

(Da 2).

(C)

POST-CONVICTION RELIEF

In his initial <u>Pro se</u> Petition for Post-Conviction Relief,

defendant argued:

A. DEFENDANT'S CONVICTIONS WERE SECURED IN
VIOLATION OF CONSTITUTIONS OF BOTH THE
UNITED STATES AND THE STATE OF NEW JERSEY
IN THAT DUE PROCESS WAS NOT SATISFIED BECAUSE
MATERIAL PERJURED TESTIMONY WAS EMPLOYED
DURING HIS TRIAL.

B. DEFENDANT'S CONVICTIONS WERE SECURED IN
VIOLATION OF DUE PROCESS, A FAIR TRIAL AND
EQUAL PROTECTION OF LAW IN VIOLATION OF HIS
SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL
RIGHTS DUE TO THE STATE'S FAILURE TO AFFORD
HIM A PETIT JURY FREE FROM TAINT OF DISCRIMI
NATORY PRACTICE AND ONE MADE UP FROM A FAIR
CROSS-SECTION OF THE COMMUNITY INCLUDING
BLACKS AND HISPANICS.

C. DEFENDANT WAS DENIED EQUAL PROTECTION OF
LAW DUE TO HIS RACE IN THE JUVENILE WAIVER
HEARING, UNDER SIMILAR CIRCUMSTANCES OTHER
GROUP (CAUCASIANS) ARE LESS LIKELY TO BE
WAIVED UP TO ADULT COURT, AND OFTEN ARE NOT
PROPORTIONALITY REVIEW IS NECESSARY TO
SUBSTANTIATE DEFENDANT'S CLAIMS.

D. THE CUMULATIVE EGREGIOUS SHORTCOMINGS OF
TRIAL COUNSEL DEPRIVED DEFENDANT OF HIS
SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL
RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL,
DUE PROCESS OF LAW, AND A FAIR TRIAL.

E. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE
OF COUNSEL ON DIRECT APPEAL BY VIRTUE OF HIS
APPELLATE COUNSEL'S FAILURE TO MOUNT AND ARGUE
THE ISSUES RAISED HEREIN BEFORE THE APPELLATE
DIVISION ON DIRECT APPEAL. APPELLATE COUNSEL
ALSO FAILED TO ARGUE THE TOTALITY OF THE
CIRCUMSTANCES TEST MANDATED IN SCHENLOTH
BUSTAMANTE (DIC). THE CONFESSIONS ALLEGEDLY
GIVEN BY DEFENDANT WERE NOT GIVEN VOLUNTARILY
NOR KNOWINGLY.

F. THE GRAND JURY WHICH RETURNED THE INDICT-
MENT AGAINST DEFENDANT WAS NOT MADE UP FROM A
CROSS-SECTION OF THE COMMUNITY.

(Da 52 to Da 54).

In his Pro se Memorandum of Law in Support of Post-
Conviction Relief, defendant argued:

POINT I- DEFENDANT'S STATE CONSTITUTIONAL
RIGHT TO INDICTMENT BY GRAND JURY WAS VIOLATED
WHEN THE FACTS REQUIRED TO BE FOUND BEFORE
DEFENDANT COULD BE TRIED AS AN ADULT WERE NOT
CHARGED IN THE INDICTMENT. FURTHERMORE,
DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL
RIGHTS TO TRIAL BY JURY WERE VIOLATED WHEN A
JUDGE MADE THE FINDING THAT RESULTED IN
DEFENDANT BEING TRIED AS AN ADULT, AND NOT
AS A JUVENILE.

POINT II DEFENDANT'S FEDERAL AND STATE
CONSTITUTIONAL RIGHT TO A JURY TRIAL WERE
VIOLATED WHEN THE TRIAL JUDGE FOUND THE
AGGRAVATING FACTORS USED TO INCREASE
DEFENDANT'S SENTENCE FOR MURDER BEYOND THE
PRESCRIBED MAXIMUM. FURTHERMORE, DEFENDANT'S
(STATE CONSTITUTIONAL) RIGHT TO INDICTMENT
BY GRAND JURY WAS VIOLATED WHEN THE AGGRAVA-
TING FACTORS USED TO INCREASE THE SENTENCE
FOR MURDER WERE NOT CHARGED IN THE INDICTMENT.

POINT III DEFENDANT'S WAIVER OF HIS MIRANDA
RIGHTS WAS NOT KNOWING AND INTELLIGENT
BECAUSE DEFENDANT WAS NOT INFORMED THAT,
ALTHOUGH HE WAS A JUVENILE, ANY STATEMENT
MADE BY HIM COULD BE USED AGAINST HIM IN A
PROSECUTION AS AN ADULT.

POINT IV TRIAL COUNSEL WAS INEFFECTIVE FOR
FAILING TO PRESENT EVIDENCE OF DEFENDANT'S
LOW INTELLECTUAL FUNCTIONING IN ORDER TO
ESTABLISH THAT DEFENDANT'S WAIVER OF HIS
MIRANDA RIGHTS WAS NOT KNOWING AND
INTELLIGENT.

POINT V TRIAL COUNSEL WAS INEFFECTIVE FOR
NOT PRESENTING IN MITIGATION OF SENTENCE THE
EVIDENCE OF DEFENDANT'S LOW INTELLECTUAL
FUNCTIONING AND PERSONALITY DISORDER.

POINT VI THE NEW RULE PROPOSED IN POINT
III SHOULD BE RETROACTIVELY APPLIED TO
DEFENDANT.

POINT VII THE CLAIMS FOR RELIEF ARE NOT
BARRED BY A PROCEDURAL RULE.

(Da 60 to Da 61).

-10-

In his Pro se Letter-Brief in Support of Post-Conviction Relief, defendant argued:

> POINT I TRIAL AND APPELLATE COUNSEL WERE PREJUDICIALLY INEFFECTIVE BY FAILING TO DISCOVER AND RAISED THE ISSUE OF THE DEFENDANT'S LACK OF COMPETENCE TO STAND TRIAL. N.J. CONST., (1947), ART. I PAR. 10; U.S. CONST., AMEND V: VI: XIV.

(Da 130).

In his Pro se Second Letter-Brief in Support of Post-Conviction Relief, defendant argued:

> POINT I TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EVIDENCE OF THE DEFENDANT'S COGNITIVE LIMITATIONS AND HIS STATUS AS A SPECIAL EDUCATION STUDENT AS A BASIS TO EXPLAIN THE REASONABLENESS OF DEFENDANT'S PERCEPTIONS DURING THE CHARGED CRIMES AND AS A BASIS FOR THE JURY TO EVALUATE DEFENDANT'S CREDIBILITY AND DEMEANOR AS A WITNESS AT TRIAL.

> POINT II APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ON DIRECT APPEAL, THE GROSS INCOMPETENCE OF DEFENDANT'S TRIAL COUNSEL'S FAILURE TO PRESENT RELEVANT EVIDENCE OF DEFENDANT'S COGNITIVE LIMITATIONS AND HIS STATUS AS A SPECIAL EDUCATION STUDENT AS A BASIS TO EXPLAIN THE REASONABLENESS OF DEFENDANT'S PERCEPTIONS DURING THE CHARGED CRIMES AND AS A BASIS FOR THE JURY TO EVALUATE DEFENDANT'S DEMEANOR AND CREDIBILITY AS A WITNESS AT TRIAL.

> POINT III DEFENDANT'S CLAIMS FOR RELIEF ARE NOT BARRED PROCEDURAL FROM BEING RAISED IN THIS PETITION FOR POST-CONVICTION RELIEF.

(Da 158).

PCR counsel submitted a brief in support of Post-Conviction Relief, and relying on defendant's pro se submissions. At the PCR hearing, the Court asked PCR counsel if he wished to add or highlight any arguments. (PCR-T 5-15 to 18). In response counsel summarized his argument, stressing the argument that trial counsel was ineffective for failing to present defendant's cognitive limitations and his special education status. PCR counsel introduced on record a trial transcript of a sidebar colloquy that took place between the prosecutor and trial counsel where defendant's special education status was at issue:

> [PCR counsel]: And it's interesting to note that at one point during the trial -- and the Court has been provided as was the State provided with the trial proceeding, the transcripts, the minutes. I'm referring now to June 11th, 1998 which if I'm not mistaken that was the morning session. And I believe that to be 2T.
>
> Essentially, beginning on page 114 and then going on all the way through and up to page 117, there's quite a colloquy that takes place wherein the prosecutor actually objects to counsel making reference to the defendant even being in a special education class. And the prosecutor seems to opine that a curative charge was required by just making reference to special education.
>
> And the reason being that according to the prosecutor an expert would have needed to be proffered. Trial counsel seemed to think that you know just calling a person from the school would suffice. But clearly it was on trial counsel's mind. So you know very often we hear well, you know from the prosecutor that is we here well this is trial strategy. Where's the trial strategy?
>
> Clearly, counsel wanted to introduce this in some way. But by virtue of counsel's ineffective representation did not do so in a competent and adequate way. Certainly, Judge the defendant's state of mind and limited in this case special

-12-

education and being learning disabled was relevant. And I would not that in this particular case, it was a special importance because the defendant actually testified.

And there's case law I've submitted. And I'm referring now to pages 52 and 53, State v. Sexton, for example, where it's submitted that the defendant was essentially -- and what I'd like to do here is actually quote a little bit from State v. Sexton, "however, we think it's only fair in the event of a re-trial that the defendant have the opportunity upon proper notice to the State to offer relevant experts and/or appropriate school personnel who may be able to failrly describe defendant's mental ability."

Now, I won't read the whole quote. It's there on page 52 of the brief. But essentially the Court in that case noted that there was extensive psychological expert testimony at the juvenile waiver hearing although no expert testimony was presented at trial. Well, that's exactly what we have here. I mean you talk about a case that's right on point, that's exactly what we have here.

And the Court in that particular case said look just because the defendant is waived up doesn't mean you can't then bring in those witnesses to establish the facts upon which those expert relied. And in this instance that exactly what the defendant is asserting. That it still would have helped the jury to assess the defendant's testimony. And by the way for that matter the same thing at the motion to suppress.

It would have helped the Court in assessing the credibility of the defendant.

(PCR-T 11-14 to 25; 12-1 to 25; and 13-1 to 23).

At the PCR hearing, the State conceded that defendant was in special education classes. (PCR-T 20-22 to 24). However, the State simply misconstrued defendant's issue by mentioning a "diminished capacity defense." (PCR-T 20-4 to 7). In response PCR counsel clearly pointed out to the court that a diminished capacity or an insanity defense was not the issue which is being raised:

[PCR counsel]: The State had mentioned just moments ago diminished capacity that the experts

do not find diminished capacity. I just want to
note, again referring to page 52 of my brief,
we're not suggesting here that defendant had a
diminished capacity or an insanity defense.

Nonetheless, under State v. Sexton 311 N.J.
Super 70, an Appellate Division 1998 case, the Court
concluded that the defendant's mental condition
may nonetheless be admitted as evidence at trial.
And, again, I'm just going to quote this and then
I'll sit down. This is a quote from State v. Sexton.
"We note that despite extensive psychological expert
testimony at the waiver hearing, no expert testimony
was offered at trial.

"Under those circumstances, it was within the
trial judge's discretion either to admit or to
exclude defendant's and his mother's testimony
regarding his school placement. The trial judge
found the proffer so vague as to be more prejudicial
and confusing and relevant. However, we think it's
only fair in the event of a retrial that the defendant
had the opportunity upon proper notice to the State
to offer relevant experts and/or appropriate school
personnel who may be able to fairly describe a
defendant's mental ability."

Again, Judge, we're not suggesting here today,
we don't want to be disingenuous to suggest there
was a diminished capacity defense. What we are
suggesting is that nonetheless and as conceded in
State's brief, the defendant was in special
education. He had a learning disability. And that
is something that the Jury should have been made
aware of because it sheds light on the way he
testified. And he did testify at trial.

(PCR-T 22-14 to 25 and 23-1 to 23).

In denying post-conviction relief, the Court ruled that
all arguments relating to the jurisdictional waiver and the
sentence imposed were procedurally barred by R. 3:22-5 because
they were raised on appeal. (PCR-T 26-13 to 27-1). The Court
ruled that all other arguments concerning trial error including
those relating to the admission of defendant's statement were
procedurally barred by R. 3:22-4 because they could have been
raised on direct appeal. (PCR-T 27-2 to 24).

With regard to the issue of ineffective assistance of
counsel, in denying post-conviction relief, the Court found

-14-

that trial counsel was not ineffective. With regard to the
first prong of Strickland v. Washington, the trial Court found:

> [PCR Court]: With respect to the contention that
> the failure to raise a learning disability or
> special ed status, constituting ineffective
> assistance, the Court notes that in reviewing the
> record, it does not find that there are any facts
> from which it could be demonstrated that the fact
> that the defendant was learning disabled or was a
> special ed student was sufficient to show that he
> had a mental deficiency that would some way render
> him incapable of or impairing his ability to
> participate in this case.
>
> There is nothing that indicates that he was
> disabled so that he could not knowingly and
> voluntarily waive his Miranda rights.
>
> (PCR-T 25-12 to 24).

In addition, in denying post-conviction relief, the Court
found that defendant's Miranda argument were meritless:

> [PCR Court]: There is a contention that the Miranda,
> that the determination in the Miranda case was
> improper. That it should not have been granted
> separate and apart from the failure, the learning
> disability aspect of this P.C.R. That is certainly
> something that could have been raised on appeal.
> But even not considering the procedural bar, that
> it could have been adjudicated.
>
> There is nothing here again that would
> suggest that anything could have been presented,
> should have been presented that would have affected
> the outcome of the Miranda hearing.
>
> (PCR-T 27-2 to 13).

In denying post-conviction relief, the Court also found
that defendant failed to show prejudice under the second prong
of Strickland:

> [PCR Court]: Again, it is not developed or
> demonstrated as to how that would have affected the
> outcome of this matter. There is simply nothing that
> indicates to the Court that errors committed by trial
> counsel, if there were any, were such a substantial
> nature so that it is reasonably probably that the
> results would have been different.
>
> (PCR-T 28-7 to 13).

## Point I

THE     ORDER     DENYING     POST - CONVICTION
RELIEF         SHOULD        BE      REVERSED      BECAUSE
THE        COURT       MISAPPLIED       THE        PROCEDURAL
BARS     OF      RULE 3:22-4 AND 3:22-5

In his Pro se post-conviction relief submission, defendant argued inter alia that his due process right to a fair trial was violated by trial error including the wrongful waiver of jurisdiction to the Law Division, the eliciting of prejured testimony by the prosecutor, a biased jury and grand jury panel, the wrongful admission of his inculpatory statements under Miranda criteria, and illegal and excessive sentence. (Da 53 to 54). Defendant also argued in his Pro se post-conviction relief submissions that his due process right to a fair trial was violated by ineffective assistance of trial and appellate counsel. (Da 55). With regard all issues involving trial error, including issue related to the admission of his inculpatory statements, in denying post-conviction relief, the court ruled that defendant was procedurally barred by R. 3:22-4 from raising those issues in post-conviction relief because they could have been raised on direct appeal. With regard to those issues involving trial error, including issues related to the jurisdictional waiver hearing and the sentence, that were raised on direct appeal, the court ruled that they were procedurally barred from being raised in post-conviction relief by R. 3:22-5. With regard to defendant's arguments involving ineffective assistance of trial and appellate counsel, in denying post-conviction relief the court found that defendant failed to make a prima facie showing of either prong set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

(See Statement of Facts, Pages 14 to 16).

In denying post-conviction relief, the court misapplied applicable principles of "fundamental injustice" and controlling R. 3:22-4 and R. 3:22-5 post-conviction relief criteria. The court also applied an improper "outcome determinative" standard that was disapproved of in Strickland v. Washington, supra.[5]

Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49 (1997); State v Preciose, 129 N.J. 451, 459 (1992). Post-conviction relief is a safeguard that provides a defendant with a final means to challenge the legality of a sentence or a judgment of conviction thereby ensuring that a defendant was not unjustly convicted. State v. McQuaid, 147 N.J. 464, 482 (1997). A petition must establish the right to post-conviction relief by a preponderance of the credible evidence. State v. Preciose, supra 129 N.J. at 459.

The applicable principles are well-settled. Post-conviction relief is governed by the provisions of New Jersey Court Rules 3:22-1, 3:22-2, and 3:22-12 which read:

> 3:22-1 Petition for Relief- Any person convicted of a crime may, pursuant to this rule, file . . . a petition for post-conviction relief captioned in the action in which the conviction was entered.
>
> 3:22-2 Grounds - A petition for post-conviction relief is cognizable, i.e. based upon any of the following grounds:
>
> (a) Substantial denial in the conviction proceedings of the defendant's rights under the Constitution of the United States or the Constitution of the State of New Jersey;
>
> (b) Lack of jurisdiction of the court to impose the judgment rendered upon the defendant's conviction;

---

[5] See Point II and Point III, infra.

(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law;

(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law statutory remedy.

3:22-12 Limitation - A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than five (5) years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.

Post-conviction relief, however, is not a substitute for direct appeal. R. 3:22-3. Nor is post-conviction relief an opportunity to re-litigate matters already decided on the merits. R. 3:22-5. State v. Preciose supra. 129 N.J at 459; State v. Marshall, 126 N.J. 565, 583 (1992). With regards to issues that could have, but were not raised on appeal, post-conviction relief is not cognizable unless the circumstances fall within one of three (3) exceptions:

(a) the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

R. 3:22-4; State v. Guzman, 313 N.J. Super. 363, 372 (App. Div. 1998), certif. denied, 156 N.J. 424 (1998).

Although rules containing procedural bars are important, equally deserving of the court's respect and considerations are the enumerated exceptions to the rules. State v. Merola, 365 N.J. Super. 202, 218 (Law Div. 2002), aff'd 365 N.J. Super. 82 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004). This is particularly true in post-conviction relief because it is expected that in post-conviction relief the defendant's petition

will be decided on the merits and not on procedural bars. In post-conviction relief, it is expected that the court will conscientiously apply the exceptions to R. 3:22-4 and R. 3:22-5 with a view to the unique circumstances of the case. State v. Marshall, 148 N.J. 89, 152 (1997), certif. denied, 522 U.S. 850, 118 S.Ct. 140, 139 (1997). Although finality in judgment is an important goal of our legal system, due process constitutional protections limit the discretion by which post-conviction courts promote finality in judgment by application of procedural bars. Post-conviction relief procedural bars should not be applied when it would effectively result in a forfeiture of the defendant's fundamental due process constitutional protections. In this appeal, this is exactly what occurred below.

The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const., amend XIV. The New Jersey Supreme Court has held that although Article I, Paragraph 1 of the New Jersey Constitution does not specifically enumerate the right to due process, it protects against injustice and, to that extent, protects values encompassed by the principles of "due process." Doe v. Pritz, 142 N.J. 1, 99 (1995). Due process is a flexable concept that depends on the particular circumstances. Id. at 106.

Since the decision by the State to seek waiver from the Family Part is a "critically important action determining vitally important statutory rights of the juvenile," the juvenile waiver hearing involves the due process rights. An inappropriate or wrongful waiver violated the defendant Fourteenth Amendment due process right to a fair trial. Kent v. United States, 383

-20-

U.S. 541, 556, 86 S.Ct. 1045, 1055 (1966); State v. J.M., 182
N.J. 402, 411 (2005).

The wrongful admission of a juvenile's inculpatory statement
under Miranda v. Arizona criteria, or under criteria that apply
solely to juveniles, violated the defendant's Fourteenth Amend-
ment due process right to a fair trial. State In Interest of
A.S., 409 N.J. Super. 99 (App. Div. 2009). Grand jury panels
and petit jury panels that violate the defendant's Sixth Amend-
ment right to a jury from a cross-section of the community
violates the defendant's due process right to a fair trial.
State v. Fortin, 178 N.J. 540 (2004). The trial court's failure
to consider all applicable mitigating factor, including the
presence of cognitive limitations and special education status
that impact on defendant's mens rea, violates defendant's due
process right to a fair sentencing procedure. State v. Dalziel,
182 N.J. 494, 505 (2005).

In denying post-conviction relief, the court ruled that
it was procedurally barred both by R. 3:22-4 from considering
these issues because they were raised by appellate counsel on
direct appeal, and by R. 3:22-5 because they were not raised
in appellate counsel's Appellate Division brief. (See Statement
of Facts, Page 14). The court failed to acknowledge that all
of these issues cited above were cognizable in post-conviction
relief because enforcement of the procedurally bars resulted
in a fundamental injustice. R. 3:22-4(b). Too, the court failed
to acknowledge, or chose to ignore, that these issues were
cognizable in post-conviction relief because denial of relief
was contrary to the Constitution of the United States and State
of New Jersey. R. 3:22-4(c).

R. 3:22-5 provides:

A prior adjudication upon the merits of any
grounds for relief is conclusive whether made
in the proceedings resulting in the conviction
or in any post-conviction proceeding brought
pursuant to this rule .   .   . or in any appeal
taken from such proceeding.

In applying this procedural bar to deny post-conviction
relief, the court failed to acknowledge that these issues were
cognizable in post-conviction relief because they were not
"identical to" or "substantially equivalent to" the issues
previously raised on direct appeal. Therefore, the Appellate
Division's prior adjudication was not the "merits of the issues
now raised." State v. Odom 113 N.J. Super. 186, 189 (App. Div.
1971).

Post-conviction relief is an important part of the appellate
process. In post-conviction relief, the New Jersey judiciary
has been charged with the responsibility to exercise its
discretion in a manner consistent with the importance of the
constitutional issues involved and the constitutional protections
afforded to criminal defendants. State v. Rue, 175 N.J. 1, 13
(2002). In light of our judiciary's "unique" view concerning
the "overarching importance" of post-conviction relief; Ibid.,
the PCR court's ruling must be reversed because by failing to
consider the exceptions to both rules, the right to post-
conviction relief was effectively forfeited.

## Point II

THE     PCR     COURT     ERRED     IN     DENYING
DEFENDANT'S     PETITION     FOR     POST-CONVICTION
RELIEF     BECAUSE     TRIAL     COUNSEL     WAS
INEFFECTIVE     FOR     FAILING     TO     INVESTIGATE
AND     PRESENT     EVIDENCE     OF     THE
DEFENDANT'S     COGNITIVE     LIMITATIONS
AND     HIS     STATUS     AS     A
SPECIAL     EDUCATION     STUDENT     DURING
THE     PRETRIAL     MIRANDA     HEARING     AND
AT     TRIAL

In order to establish a prima facie claim of ineffective
assistance, defendant "must demonstrate the reasonable likeli-
hood of succeeding under the test set forth in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 2068 (1984) and United
States v. Cronic 466 U.S. 648, 104 S.Ct. 2039 (1984), which
the New Jersey Supreme Court adopted in State v. Fritz 105 N.J.
42, 58 (1987). Under the Strickland/Frtiz two-pronged test,
defendant must first show that counsel's performance was
deficient. Strickland, 104 S.Ct. at 2064. Second, defendant
must show that the deficient performance prejudiced the defense.
Ibid. "This requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a trial
whose result is reliable." Ibid.

In the present appeal, evidence of defendant's cognitive
limitations and his status as a special education[6] student was
not only material to the issue of the volunariness of defen-
dent's statement to the police[7] and the question of mitigation
of defendant's sentence,[8] but was also material to the jury's
assessment of defendant's demeanor and credibility as a
witness at trial. See State v. Sexton, 311 N.J. Super. 70, 88
(App. Div. 1998), aff'd 160 N.J. 93 (1999). Trial counsel's

failure to present this relevant evidence at trial, like his failure to present this evidence at the Miranda hearing and at the sentencing hearing, established a prima facie claim of ineffective assistance of counsel. Strickland/Fritz, supra.

It is well-established that "relevant evidence need only have some tendency to prove a material fact." State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div.) certif. denied, 94 N.J. 531 (1983) See also, N.J.R.E. 401. Furthermore, it is well-established that "all relevant evidence should generally be admitted." State v. Wilbely, 122 N.J. Super. 463 (App. Div.) reversed on other grounds, 63 N.J. 420 (1973) See also N.J.R.E. 102.

In this appeal, throughout defendant's trial, trial counsel repeatedly made references of defendant's status as a special education student at the Miranda hearing (3MT 48-15 to 21); in defense opening statement (1T 39-12 to 15); during the

---

[6] See Defendant's Initial Pro Se Memorandum of Law, Dated February 24, 2005, at pp. 17 to 19, 21, 23 to 26 and Memorandum Appendix at 1 to 31.

[7] See Point IV of Initial Memorandum, at pp. 15 to 22. See (Da 79 to Da 86).

[8] See Point V of Initial Memorandum, at pp. 23 to 26. See (Da 87 to Da 90).

Miranda v. Arizona, supra.

testimony of Detective Thomas Koczur (2T 97-8 to 10); and in defense summation (6T 188-18 to 19).

Defendant's special education status was brought into focus when the prosecutor requested a sidebar to express his concerns about trial counsel asking Detective Thomas Koczur during cross-examination, if he was aware that defendant was a special education student. The prosecutor immediately requested the trial judge to give a curative instruction to the jury. (See Statement of Facts Pages 6 and 7; Da 201).

It is also significant, with respect to trial counsel's notice of facts materially relevant to defendant's special education status that evidence of him being classified as "special education" and "communication handicap" was readily available to trial counsel. Counsel was remiss, however, in offering this relevant evidence. (See Statement of Facts Page 7; Da 202) In addition, the issue of defendant's special education status at sidebar was never resolved. See (2T 117-11 to 12; Da 205).

Trial counsel was wholly ineffective because he did not present evidence of defendant's special education status at the Miranda hearing. See (Da 79 to Da 86). Yet, this was documented in defendant's school records. Moreover, in advance of the juvenile waiver hearing, defendant was evaluated by psychologists to assess the likelihood of rehabilitation within the juvenile justice system. These psychologists also determined that defendant functioned at a low intellectual level. (Da 98 to Da 100; Da 103 to Da 104; Da 106 to 110).

Dr. Cheryl L. Thompson administered a mental status exam and reviewed defendant's school records. In her report dated

-25-

February 10, 1996, She stated that [Defendant] was retained in the first and second grades. He was placed in a special education programs because he was never able to learn basic reading, writing and computation. (Da 98). Dr. Thompson opined that defendant "may well be functioning at the level of retardation" because of his severe learning problems, and suggested that defendant be referred for s complete diagonstic assessment. See (Da 100).

Dr. Martha H. Page, administered several tests to defendant and reviewed his school records. (Da 104). In her report dated July 15, 1996, She stated that defendant's school history, which documents years of learning disabilities including that defendant was classified as special education and communication handicap. (Da 104).

New Jersey court have found that the right to effective assistance of counsel under Article I, paragraph 10 of the New Jersey Constitution includes the right to the assistance of experts[9] State v. Difrisco, 174 N.J. 195, 243-44 (2002); State v. Green, 55 N.J. 13, 18 (1969). The Sixth and Fourteenth

---

[9] The New Jersey Court determined that a specific provision of the Public Defender Act, N.J.S.A. 2A:158A-5, grants indigent defendants in New Jersey the statutory right to the assistance of expert necessary to their defense. See In Re Cannady, 126 N.J. 486, (1991); In Re Kauffman, 126 N.J. 499, 501 (1991), finding that the Public Defender Act mandates that the Office of the Public Defender pay for expert services that are necessary to any indigent defendant's case.

Amendment right of confrontation is "a fundamental right essential to a fair trial in a criminal prosecution." Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068 (1965). Our State Constitution contain a similar guarantee. N.J. Const., Art I, Paragraph 10. The right of confrontation "protect against improper restrictions on questions defense counsel may ask during cross-examination" and "encompasses the right to elicit favorable testimony" from those witnesses. State v. Budis, 125 N.J. 519, 531 (1991) Together with the rights to compulsory process and due process, the right of confrontation guarantee criminal defendants "a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 S.Ct. 2142, 2146 (1986); California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984). Defendant contends that it is respectfully submitted that those right were unquestionably denied in the present appeal.

At the time relevant to defendant's trial, the Sexton court specifically stated that "evidence of the defendant's limited mental ability and his status as a special education student was potentially relevant to the reasonableness of his perceptions of the charged crimes. It is also relevant to the jury's evaluation of the defendant's demeanor and credibility as a witness at trial." 311 N.J. Super. at 88.

In the present appeal, defendant contends that evidence of his severe learning disabilities, including being classified as "special education" and "communication handicap" was clearly relevant, especially since he testified on his own behalf at the Miranda hearing and at trial. See (Trial transcript, June 9, 1998, (3MT) 3MT 72-6 to 117-15; Trial transcript, June 16,

1998, (4T) 4T 130-19 to 165-5 and June 17, 1998, Morning Session (5T) 5T 3-9 to 133-6). By virtue of trial counsel's ineffective representation, defendant was precluded from presenting such evidence. As such, defendant contends that not only did he receive the ineffective assistance of trial counsel as a result of counsel's failure to properly present a defense, but that by virtue of the ineffective assistance of counsel, he was further deprived his constitutional right to present witnesses on his behalf. See (2T 116-13 to 16; Da 203).

In assessing the adequacy of trial counsel's performance, strategic choices made after a thorough investigation of law and facts relevant to the plausible option are virtually unchallegeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation. In other words, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, supra. 466 U.S. at 690-91, 104 S.Ct. at 2066.

In determining whether the defendant met the first prong of the Strickland/Fritz test, it is well-understood that a post-conviction relief court should not second-guess trial counsel's decision that rest upon strategic or tactical considerations. Estelle v. Williams, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697 (1991). In the present appeal, trial counsel's conduct is clearly distinguishable because it did not involve legitimate trial strategy. Cf. State v. Cooper, 410 N.J. Super. 43 (App. Div. 2009), certif. denied, 201 N.J. 151 (2010). Here, there was no strategical attempt by trial counsel to present evidence of defendant's special education status.

-28-

In determining whether trial counsel was ineffective under
the first prong of the Strickland/Frtiz test, trial counsel's
conduct should be measured against what a "minimally competent
criminal defense attorney would have done under like circum-
stances." State v. Arthur, 184 N.J. 307, 345 (2005) (Justice
Albin, dissent). In the present appeal, such an attorney would
have introduced evidence of defendant's special education status
during the Miranda hearing (See Da 79 to 86), during the sidebar
colloquy (See Statement of Facts Pages 6 and 7; Da 202 to Da
205), and at sentencing (See 87 to Da 90). Trial counsel had
a duty to make an investigation into the law of defendant's
special education status pursuant to the first prong of
Strickland v. Washington, supra. Counsel unreasonably failed
to perform this duty, and therefore was deficient pursuant to
Strickland v. Washington, supra.

To show "prejudice," the defendant must show "that there
is a reasonable probability that, but for counsel's profess-
ional errors, the result of the proceeding would have been
different." Strickland v. Washington, supra. 466 U.S. at 694,
104 S.Ct. at 2068.

In Sexton, which was decided 33 days before defendant's
trial, the court stated that even when the defendant does not
raise a diminished capacity or insanity defense, defendant mental
condition may, nonetheless, be admitted as evidence at trial:

> We note that despite extensive psychological
> expert testimony at the waiver hearing, no
> expert testimony was offered at trial. Under
> those circumstances, it was within the trial
> judge's discretion either to admit or to
> exclude defendant's and his mother's
> testimony regarding his school placement. The
> trial judge found the proffer so vague as to

-29-

be more prejudicial and confusing than
relevant. See N.J.R.E. 403. However, we think
only fair, in the event of a retrial, that
defendant have the opportunity upon proper
notice the the state, to offer relevant experts
and/or appropriate school personnel, who may
be able to fairly describe defendant's mental
ability. [emphasis added].

[311 N.J. Super. at 88].

In the present appeal, the fact that defendant's special
education status was at issue, which is understood by the sidebar
colloquy, counsel's failure to present this highly relevant
evidence also prejudiced defendant because had this evidence
been admitted during the sidebar colloquy, it would have clearly
demonstrated defendant's special education background which
documents years of learning disabilities, including being
classified as "special education classes," with "communication
handicap" dating back to 1990. See (Da 98; Da 100 to Da 104).
If defendant's status as a special education student did not
make any sense to the prosecutor, how would it make any sense
to the jury? See (2T 115-14 to 16 and 2T 116-4 to 8; Da 202
to Da 203).

Perhaps even more egregious was trial counsel's decision
to refuse the aid of an expert in this case. See (2T 116-13
to 16; Da 203). The sidebar colloquy demonstrates all the more
reason why an expert was critically needed, even the prosecutor
pointed out that expert testimony was needed in describing
defendant's mental abilities and what exactly special education
meant. See (2T 116-4 to 8; Da 203).

Defendant contends that his special education status was
also a significant factor in his defense, and that such evidence
was material to the issue of the voluntariness of his statement
to the police. Presentation of this relevant evidence would

-30-

have corroborated defendant's testimony that he did not fully understand his Miranda rights. (See Statement of Facts Pages 5 and 6; Da 79 to 86).

Defendant further contends that had this relevant evidence been admitted at trial, it would have also established a basis for the jury to understand defendant's demeanor. Moreover, defendant's guilt or innocence hinged on the jury's assessment of defendant's credibility and the believability of his testimony. (PCR-T 13-17 to 19). As opposed to the State's witnesses, there exists a reasonable probability that the outcome of the trial would have been different had the jury heard the evidence of defendant's special education background. Strickland v. Washington, supra. 466 U.S. at 694, 104 S.Ct. at 2068.

In State v. Cummings, 321 N.J. Super. 154 (App. Div. 1999), certif. denied, 162 N.J. 199 (2000), the court held that in order to establish the right to a full evidentiary hearing on post-conviction relief, a defendant must establish a prima facie claim of ineffective assistance of counsel under two prong Strickland/Fritz test. In denying post-conviction relief, the court applied an improper "outcome determinative" test in finding that defendant failed to show prejudice under the second prong:

> [PCR Court]: Again, it is not developed or demonstrated as to how that would have affected the outcome of this matter. There is simply nothing that indicates to the Court that errors committed by trial counsel, if there were any, were such a substantial nature so that it is reasonably probably that the results would have been different.
>
> I must conclude that there has not been a prima facie showing of ineffective assistance of counsel demonstrated in this case from which the Court could determine, should determine that a hearing is required. This P.C.R. application is denied.
>
> (PCR-T 28-7 to 18).

The PCR Court's ruling represents an abuse of judicial discretion because its function in post-conviction relief in determining whether defendant established a _prima facie_ showing of prejudice is to determine whether defendant's claims creates a reasonable probability that a different final result would have been reached at trial or on appeal. _State v. Bey_ 161 N.J. 233, 252 (1999). A court is not to disregard controlling legal criteria in denying post-conviction relief. In _Strickland v. Washington, supra._, the Supreme Court rejected the "outcome determinative" type of prejudice test that was applied by the Court in this case. Instead, the Supreme Court held, "(W)e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case . . . the result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." _Id._ 466 U.S. at 687, 694. Under this standard, defendant has established a _prima facie_ showing of prejudice. In denying post-conviction relief without a full evidentiary hearing, the court failed to apply the judiciary's long-standing dictate that defendant's submissions should be viewed in the light most favorable to the defendant when determining if a _prima facie_ claim was established. _State v. Preciose, supra_ 129 N.J. at 462.

Although R. 3:22-1 does not require evidentiary hearing to be held on post-conviction relief petitions, R. 3:22-10 recognizes judicial discretion to conduct such hearings. _State v. Marshall, supra._ 148 N.J. at 159. However, if defendant has presented a _prima facie_ case in support of his petition, the failure to conduct a full evidentiary hearing is an abuse of

discretion. State v. Russo, 333 N.J. Super.119, 138 (App. Div. 2000). In this appeal, the PCR Court's opinion denying post-conviction relief is not entitled to any deference because defendant presented a prima facie claim of ineffective assistance of trial counsel. State v. Cummings, supra. For the aforementioned reasons, the order denying post-conviction relief should be reversed and the matter remanded for a full evidentiary hearing.

## Point III

THE     PCR     COURT     ERRED     IN     DENYING
DEFENDANT'S     PETITION     FOR     POST-CONVICTION
RELIEF     BECAUSE     APPELLATE     COUNSEL     FAILED
TO     DISCOVER     AND     RAISED     ON     DIRECT
APPEAL     TRIAL     COUNSEL'S     FAILURE     TO
PRESENT     EVIDENCE     OF     DEFENDANT'S
COGNITIVE     LIMITATIONS     AND     SPECIAL
EDUCATION     STATUS     DURING     THE     PRETRIAL
MIRANDA     HEARING     AND     AT     TRIAL

In order to establish a prima facie claim of ineffective assistance, defendant "must demonstrate the reasonable likelihood of succeeding under the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2068 (1984) and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039 (1984), which the New Jersey Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987). Under the Strickland/Fritz two-pronged test, defendant must first show that counsel's performance was deficient. Strickland, 104 S.Ct. at 2064. Second, defendant must show that the deficient performance prejudiced the defense. Ibid. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid.

A criminal defendant's constitutional right to effective assistance of counsel applies to appellate counsel as well as trial counsel. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830 (1985); State v. Guzman, 313 N.J. Super. 363, 374 (App. Div. 1998), certif. denied, 156 N.J. 424 (1998). The Strickland/ Fritz test to determine ineffective assistance of trial counsel also applies to appellate counsel. State v. Morrison 215 N.J. Super. 540 (App. Div. 1987), certif. denied 107 N.J. 642 (1987).

In the present appeal, on July 21, 1999, defendant received
a letter from appellate counsel, Paul Klein, informing him that
the "only issues he can raise on appeal at this time are issues
that can be found in the trial transcript" . . . . "evidence
of [defendant's] status as a special education student cannot
be raised on direct appeal because there is nothing in the record
to support the argument." See (Da 179).

Defendant then wrote appellate counsel and mailed it via
certified mail dated May 23, 2000. See (Da 182). Defendant
brought to appellate counsel's attention a lengthy discussion
between the prosecutor and trial counsel at sidebar where
defendant's special education status was at issue and the need
of expert testimony to illustrate his mental ability. See (Da
181).

Defendant's special education status was brought into focus
when the prosecutor requested a sidebar to express his concerns
about trial counsel asking Detective Thomas Koczur during cross-
examination, if he was aware that defendant was a special
education student. The prosecutor immediately requested the
trial judge to give a curative instruction to the jury. (See
Statement of Facts Pages 6 and 7; Da 201).

It is also significant, with respect to trial counsel's
notice of fact materially relevant to defendant's special
education status that evidence of him being classified as
"special education classes" and "communication handicap" was
readily available to trial counsel. Counsel was remiss, however,
in offering this relevant evidence. (See Statement of Facts
Page 7; Da 202). In addition, the issue of defendant's special
education status at sidebar was never resolved. See (2T 117-

11 to 12; Da 205).

Trial counsel was wholly ineffective because he did not present evidence of defendant's special education status at the Miranda hearing. See (Da 79 to Da 86). Yet, this was documented in defendant's school records. Moreover, in advance of the juvenile waiver hearing, defendant was evaluated by psychologists to assess the likelihood of rehabilitation within the juvenile justice system. These psychologists also determined that defendant functioned at a low intellectual level. (Da 98 to Da 100; Da 103 to Da 104; Da 106 to Da 110).

At the time relevant to defendant's trial, the Sexton court specifically stated that "evidence of the defendant's limited mental ability and his status as a special education student was potentially relevant to the reasonableness of his perceptions of the charged crimes. It is also relevant to the jury's evaluation of the defendant demeanor and credibility as a witness at trial." 311 N.J. Super. at 88.

In the present appeal, evidence of defendant's severe learning disabilities, including being classified as "special education classes" and "communication handicap" was clearly relevant, especially since he testified on his own behalf at the Miranda hearing and at trial. (See Trial transcript, June 9, 1998, (3MT) 3MT 72-6 to 117-15; Trial transcript, June 16, 1998, (4T) 4T 130-19 to 165-5 and June 17, 1998, Morning Session, (5T) 5T 3-9 to 133-6).

An ineffective assistance of counsel claim was appropriate for appellate review. Because all the essential underlying facts to raise trial counsel's ineffectiveness on direct appeal clearly lied inside the trial record. Appellate counsel's decision not

to pursue trial counsel's failure to present evidence of defend-
ant's special education status was objectively unreasonable
because the omitted issue is obvious from the trial record.
(See Statement of Facts Pages 6 and 7; Da 201 to Da 205).
Strickland, supra. 466 U.S. at 688, 104 S.Ct. at 2052.

In assessing the adequacy of appellate counsel's
performance, strategic choices made after a thorough investi-
gation of law and facts relevant to the plausible option are
virtually unchallegeable; and strategic choices made after less
than complete investigation are reasonable precisely to the
extent that reasonable professional judgment support the
limitations on investigations. In other words, "counsel has
a duty to make reasonable investigations or to make reasonable
decision that makes particular investigations unnecessary."
Strickland, supra. 466 U.S. at 690-91, S.Ct. at 2066.

In the present appeal, given the facts found in the mailing
between appellate counsel and defendant (Da 179 to Da 181);
the trial record which is full of references regarding defend-
ant's special education status See (3MT 48-15 to 21; 1T 39-12
to 15; 2T 97-8 to 10; 6T 188-18 to 19); and especially at the
sidebar colloquy where defendant's special education status
was at issue. See (Da 201 to Da 205). This can not be deemed
a strategic choice because appellate counsel's conduct was not
an exercise of sound appellate strategy.

Accordingly, analysis of whether appellate counsel has
rendered reasonably competent representation on appeal must
take into consideration the nature of the issue which should
have been argued on direct appeal and the applicable state law
at the time of defendant's trial. Since the deficiencies of

-37-

trial counsel set forth in **Point II** would have resulted in

defendant's conviction being reversed on direct appeal had this

claim been raised on direct appeal, appellate counsel's failure

to raise this clearly meritorious claim on direct appeal

constitutes a prima facie based on the Appellate Division

decision in State v. Sexton, supra. 311 N.J. Super. at 88.

See (PCR-T 18-7 to 24; Da 170 to Da 173).

Appellate counsel had a duty make an investigation into

the law of defendant's special education status pursuant to

the first prong of Strickland v. Washington, supra. Counsel

unreasonably failed to perform this duty, and therefore was

deficient pursuant to Strickland v. Washington supra.

To show "prejudice," the defendant must show "that there

is a reasonable probability that, but for counsel's profess-

ional errors, the result of the proceeding would have been

different." Strickland v. Washington, supra. 466 U.S. at 694,

104 S.Ct. at 2068.

The Appellate Division in Sexton stated that even when

defendant does not raise a diminished capacity or insanity

defense, defendant mental condition may, nonetheless, be admitted

as evidence at trial:

> We note that despite extensive psychological
> expert testimony at the waiver hearing, no
> expert testimony was offered at trial. Under
> those circumstances, it was within the trial
> judge's discretion either to admit or to
> exclude defendant's and his mother's
> testimony regarding his school placement. The
> trial judge found the proffer so vague as to
> be more prejudicial and confusing than
> relevant. See N.J.R.E. 403. However, We think
> it only fair, in the event of a retrial, that
> defendant have the opportunity upon proper
> notice to the State, to offer relevant experts
> and/or appropriate school personnel, who may

be able to fairly describe defendant's mental
ability. [emphasis added].

[311 N.J. Super. at 88].

In the present appeal, appellate counsel's error in failing
to raise trial counsel's ineffectiveness on defendant's first
direct appeal also prejudiced defendant. A reasonable probability
exists that had this highly relevant evidence of defendant's
special education status been admitted during the sidebar
colloquy, it would have demonstrated defendant's special
education background which documents years of learning disabili-
ties, including being classified as "special education classes,"
with "communication handicap" dating back to 1990. See (Da 98;
Da 100 and Da 104).

During the sidebar colloquy, even the prosecutor pointed
out that expert testimony was needed in describing defendant's
cognitive difficulties and what exactly special education meant,
but trial counsel refused the aid of an expert. See (2T 116-
4 to 13; Da 203). If defendant's status as a special education
student did not make any sense to the prosecutor, how would
it make any sense to the jury? See (2T 115-14 to 16 and 2T 116-
4 to 8; Da 202 to Da 203).

Defendant contends that his special education status was
also a significant factor in his defense, and that such evidence
was material to the issue of the voluntariness of his statement
to the police. Presentation of this relevant evidence would
have corroborated defendant's testimony that he did not fully
understand his Miranda  rights. (See Statement of Facts Pages
5 and 6; Da 79 to Da 86).

Defendant further contends that had this relevant evidence
been admitted at trial, it would have also established a basis

-39-

for the jury to understand defendant's demeanor. Moreover,
defendant's guilt or innocence hinged on the jury's assessment
of defendant's credibility and the believability of his
testimony. As opposed to the State's witnesses, there exists
a reasonable probability that the outcome of the trial would
have been different had the jury heard the evidence of defend-
ant's special education background. Strickland v. Washington,
supra. 466 U.S. at 694, 104 S.Ct. at 2068.

Now on this present appeal, defendant contends that had
appellate counsel raised trial counsel's ineffectiveness on
direct appeal relying on the trial record defendant would have
prevailed. More specifically, the sidebar colloquy where defend-
ant's special education status was at issue. See (2T 114-19
to 117-12; Da 202 to Da 205). The Appellate Division decision
set forth in State v. Sexton, supra., falls perfectly within
the reach of the present appeal because it was decided **33 days**
before defendant's trial. Defendant is cognizant that the
Appellate Court generally do not review ineffective assistance
of counsel claim on direct appeal because the facts lie outside
of the trial record; however, in this case the record is
sufficient to clearly demonstrate that defendant was prejudiced
by trial counsel's conduct and that a reasonable probability
exist that defendant would have prevailed on appeal had this
significant and obvious issue been raised. The trial record
strongly supports that this ineffective assistance on trial
counsel claim would have had the magnitude for reversal of this
conviction. Defendant has demonstrated that, but for appellate
counsel's failure to investigate and research the applicable
state law at the time of his trial, the Appellate Court would
have overturned defendant's conviction on direct appeal. See

Strickland v. Washington, supra. 466 U.S. at 692, 104 S.Ct.
at 2068-2069; Fritz, supra. 105 N.J. at 58; Morrison, supra.
215 N.J. Super. at 551; and Guzman, supra. 313 N.J. Super. at
275.

As stated earlier, in State v. Cummings, 321 N.J. Super.
154 (App. Div. 1999), certif. denied, 162 N.J. 199 (2000), the
court held that in order to establish the right to a full
evidentiary hearing on post-conviction relief, a defendant must
establish a prima facie claim of ineffective assistance of
counsel under the two prong Strickland/Fritz test. In denying
post-conviction relief, the court applied an improper "outcome
determinative" test in finding that defendant failed to show
prejudice under the second prong:

> [PCR Court]: Again, it is not developed or
> demonstrated as to how that would have affected
> the outcome of this matter. There is simply
> nothing that indicates to the Court that errors
> committed by trial counsel, if there were any,
> were such a substantial nature so that it is
> reasonably probably that the results would have
> been different.
>
> I must conclude that there has not been a
> prima facie showing of ineffective assistance of
> counsel demonstrated in this case from which the
> Court could determine, should determine that a
> hearing is required. This P.C.R. application is
> denied.
>
> (PCR-T 28-7 to 18).

The PCR Court's ruling represents an abuse of judicial
discretion because its function in post-conviction relief in
determining whether defendant established a prima facie showing
of prejudice is to determine whether defendant's claims creates
a reasonable probability that a different final result would
have been reached at trial or on appeal. State v. Bey, 161 N.J.
233, 252 (1999). A court is not to disregard controlling legal
criteria in denying post-conviction relief. In Strickland v.
Washington, supra., the Supreme Court rejected the "outcome

-41-

determinative" type of prejudice test that was applied by the
court in this case. Instead, the Supreme Court held, "(W)e
believe that a defendant need not show that counsel's deficient
conduct more likely than not altered the outcome in the case
. . . the result of a proceeding can be rendered unreliable,
and hence the proceeding itself unfair even if the errors of
counsel cannot be shown by a preponderance of the evidence to
have determined the outcome." Id. 466 U.S. at 687, 694. Under
this standard, defendant established a prima facie showing of
prejudice. In denying post-conviction relief without a full
evidentiary hearing, the court failed to apply the judiciary's
long-standing dictate that defendant's submission should be
viewed in the light most favorable to the defendant when
determining if a prima facie claim was established. State v.
Preciose, supra. 129 N.J. at 462.

　　Although R. 3:22-1 does not require evidentiary hearings
to be held on post-conviction relief petitions, R. 3:22-10
recognizes judicial discretion to conduct such hearings. State
v. Marshall, supra. 148 N.J. at 159. However, if defendant's
has presented a prima facie case in support of his petition,
the failure to conduct a full evidentiary hearing is an abuse
of judicial discretion. State v. Russo, 333 N.J. Super. 119,
138 (2000). In this appeal, the PCR Court's opinion denying
post-conviction relief is not entitled to any deference because
defendant has presented a prima facie claim of ineffective
assistance of appellate counsel. State v. Cummings, supra. For
the aforementioned reasons, the order denying post-conviction
relief should be reversed and the matter remanded for a full
evidentiay hearing.

POINT IV

THE PCR COURT'S RULING POST-CONVICTION
RELIEF VIOLATED THE DEFENDANT'S RIGHT
TO EFFECTIVE ASSISTANCE OF TRIAL,
AND APPELLATE COUNSEL GUARANTEED BY
THE AMENDMENT TO THE UNITED STATES
CONSTITUTION AND ARTICLE I, PARAGRAPH
10, OF THE NEW JERSEY CONSTITUTION

The Sixth Amendment to the United States Constitution
and Article I, paragraph 10 of the New Jersey Constitution,
guarantees a defendant the right to effective assistance of
trial and appellate counsel. Strickland v. Washington, supra.
State v. Morrison, supra; and State v. Fisher, 156 N.J. 494,
501 (1998). In the present appeal, for the reasons set forth
in Point II and Point III, ante, defendant was entitled to post-
conviction relief because he established by the preponderance
of credible evidence that his trial and appellate counsels
performance were deficient. Accordingly, defendant contends
that the PCR court's ruling denying post-conviction relief
violated his federal constitutional rights under the Sixth
Amendment to the United States Constitution and as well as his
rights under Article I, paragraph 10 of the New Jersey State
Constitution. For the aforementioned reasons, defendant's
convictions should be reversed.

### POINT V

DEFENDANT   REASSERTS   ALL   OTHER   ISSUES
RAISED   IN   HIS   PRO SE   PETITION   AND
BRIEFS   IN SUPPORT   OF   POST-CONVICTION
RELIEF

Pursuant to State v. Rue, 175 N.J. 1, 18 (2002), and State v. Webster, 187 N.J. 254, 257 (2006), defendant reasserts all other claims and arguments contained in his pro se briefs. These arguments, as presented in defendant's pro se briefs and petition are hereby incorporated by reference and presented to the court for consideration.

## C O N C L U S I O N

For the aforementioned reasons, defendant submits that the order denying post-conviction relief be reversed and his convictions reversed. In the alternative, defendant submits that the order denying post-conviction relief be reversed and the matter remanded for a full evidentiary hearing on the issue of ineffective assistance of trial and appellate counsel.

Respectfully submitted,

Marvin Mathis, pro se

Dated: March 13, 2013