

# UNION COUNTY PROSECUTOR'S OFFICE
### 32 RAHWAY AVENUE
### ELIZABETH, NEW JERSEY 07202-2155
### (908) 527-4500
### FAX: (908) 289-1267

THEODORE J. ROMANKOW
**Prosecutor of Union County**

ALBERT CERNADAS, JR.*
**First Assistant Prosecutor**

ANNE K. FRAWLEY*
**Deputy First Assistant Prosecutor**

June 6, 2013

\* CERTIFIED CRIMINAL ATTORNEY

MEREDITH L. BALO
Assistant Prosecutor
of Counsel and
on the Letter Brief

sliebman@ucnj.org


        LETTER IN LIEU OF BRIEF ON BEHALF OF THE
                STATE OF NEW JERSEY


Honorable Judges of the Superior Court of New Jersey
Appellate Division
Richard J. Hughes Justice Complex
CN 006
Trenton, New Jersey 08625


        Re:  State of New Jersey (Plaintiff-Respondent) v.
             Marvin Mathis (Defendant-Appellant)
             Docket No. A-3222-11T1

             Criminal Action: On Appeal from an Order of the
             Superior Court, Law Division, Union County,
             Denying Defendant's Petition for Post-Conviction
             Relief

             Sat Below: Honorable John F. Malone, J.S.C.


Honorable Judges:

        Pursuant to R. 2:6-2(b), and R. 2:6-4(a), this letter in lieu

of formal brief is submitted on behalf of the State.

**TABLE OF CONTENTS**

|  | **Page** |
|---|---|
| COUNTER-STATEMENT OF PROCEDURAL HISTORY | 1 |
| COUNTER-STATEMENT OF FACTS | |
| Waiver Hearing | 4 |
| Trial and Miranda | 4 |
| PCR Hearing | 4 |
| LEGAL ARGUMENT | |
| POINT I | |
| THE PCR COURT PROPERLY DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE HE FAILED TO PRESENT A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL. | 6 |
| POINT II | |
| THE PCR COURT PROPERLY DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WHERE DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENTS WAS PROPERLY DENIED. | 11 |
| POINT III | |
| THE PCR COURT PROPERLY DENIED RELIEF WHERE DEFENDANT'S CHALLENGE TO HIS SENTENCE WAS ALREADY RAISED ON DIRECT APPEAL, AND WHERE HE FAILED TO MAKE A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL. | 17 |
| POINT IV | |
| ALL REMAINING POINTS RAISED IN DEFENDANT'S PRO SE PAPERS LACK MERIT. | 21 |
| CONCLUSION | 21 |

COUNTER-STATEMENT OF PROCEDURAL HISTORY[1]

On January 25, 1996, Union County Juvenile Delinquency Complaint No. FJ-20-01786-96E was filed against defendant-appellant Marvin Mathis, charging him with acts, that if committed by an adult, would constitute armed robbery, in violation of N.J.S.A. 2C:15-1 and N.J.S.A. 2C:2-6, and felony murder, in violation of N.J.S.A. 2C:11-3(a)(3). (Da1). On November 11, 1996, defendant appeared before the Honorable Rudolph N. Hawkins, Jr., J.S.C. for a Waiver Hearing. After a thorough recitation of his findings, Judge Hawkins ruled that defendant should be waived to the adult court. (1T19-15 to 29-21).

---

[1] "Da" refers to appendix on appeal.
"pro se Da" refers to defendant's pro se appendix on appeal.
1T refers to transcript of Waiver Hearing, dated November 11, 1996.
2T refers to transcript of Miranda Motion, dated June 9, 1998.
3T refers to transcript of Miranda Motion, dated June 10, 1998.
4T refers to trial transcript, dated June 11, 1998 (morning session).
5T refers to trial transcript, dated June 11, 1998 (afternoon session).
6T refers to trial transcript, dated June 16, 1998.
7T refers to trial transcript, dated June 17, 1998 (morning session).
8T refers to trial transcript, dated June 17, 1998 (afternoon session).
9T refers to trial transcript, dated June 18, 1998.
10T refers to transcript of sentencing, dated August 14, 1998.
11T refers to transcript of PCR Motion, dated February 29, 2008.
12T refers to transcript of PCR Hearing, dated January 27, 2012.

As a result, in January 1997, a Union County Grand Jury returned Indictment No. 97-01-00123, charging defendant with first-degree murder, in violation of N.J.S.A. 2C:11-3(a)(1) and/or N.J.S.A. 2C:11-3(a)(2) (count one); first-degree robbery, in violation of N.J.S.A. 2C:15-1 (count two); first-degree felony murder, in violation of N.J.S.A. 2C:11-3(a)(3) (count three); second-degree possession of a firearm for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a) (count four); and third-degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b) (count five).  (Da2-5).

Defendant appeared before the Honorable John F. Malone, J.S.C. to argue his motion to suppress statements on June 9 and 10, 1998.  (2T3-2 to 117-12; 3T7-17 to 17-5).  After listening to witness testimony and counsels' argument, Judge Malone denied defendant's motion and ruled his statements were admissible. (3T17-3 to 4).  Defendant's case then proceeded to trial before Judge Malone and a jury on June 10, 11, 16, 17, and 18, 1998. On June 18, 1998, the jury found defendant guilty on all counts. (9T82-22 to 83-25).

At the sentencing on August 14, 1998, Judge Malone merged count one (murder), count three (felony murder), and count four (possession of a weapon for unlawful purposes).  (10T10-18 to 23).  On the count one murder charge, Judge Malone sentenced

-2-

defendant to fifty years in prison, with a thirty-year parole disqualifier.  On count two, robbery, defendant was sentenced to eighteen years, with a period of parole ineligibility for six years.  On count five, unlawful possession of a weapon, defendant was sentenced to four years with an eighteen-month parole disqualifier.  (Da6-7; 10T10-24 to 11-15).  The judge awarded 934 days of jail credit and imposed the requisite fines and penalties.  (10T11-2 to 22).

Defendant appealed to the Appellate Division, and his conviction and sentence was affirmed on June 2, 2000.  (Da8-47). The Supreme Court denied defendant's Petition for Certification on October 11, 2000.  (Da49).

On September 25, 2003, defendant filed a Petition for Post-Conviction Relief.  (Da50-57).  Defendant filed a Memorandum of Law in support of his petition on or about February 24, 2005. (Da58-126).  A letter-brief in support of his petition was subsequently filed August 7, 2007.  (Da127-142).  The State filed its response on December 13, 2007.  (Da143-149).  After listening to argument on defendant's petition, Judge Malone denied relief on February 29, 2008.  (Da150; 11T7-18 to 12-19).

Defendant appealed the PCR Court's decision to the Appellate Division, and on October 12, 2010, the Appellate Division reversed and remanded for a new post-conviction

-3-

hearing.  (Da151-161).  Counsel for defendant filed a brief in support of his post-conviction motion on October 11, 2011. (Da162-244.5).  Argument on defendant's PCR, following remand, was heard on January 27, 2012.  (12T5-19 to 23-23).  Judge Malone found that defendant failed to make a prima facie showing of ineffective assistance of counsel and denied relief.  (Da245; 12T23-24 to 28-19).  Thereafter, defendant filed a Notice of Appeal.  (Da246).  This appeal follows.

COUNTER-STATEMENT OF FACTS

Waiver Hearing

The State respectfully adopts the facts set forth in the Appellate Division opinion affirming defendant's conviction and sentence on direct appeal, attached at Da25 to 28, for its counter-statement of facts relating to the waiver hearing.

Trial and Miranda

The State respectfully adopts the facts set forth in the Appellate Division opinion affirming defendant's conviction and sentence on direct appeal, attached at Da8 to 22, for its counter-statement of facts relating to the trial and Miranda issue.

PCR Hearing

In his initial petition and supplemental briefs, defendant argued that the decision to waive him to family court was

-4-

erroneous, that the decision allowing his statement to be
admitted was erroneous, that his sentence was illegal, and that
he received ineffective assistance of counsel. (11T4-15 to 22;
12T7-15 to 18-24).  The State argued that many of defendant's
claims were procedurally barred, and that defendant had not
submitted proof that he was not competent or that he had a
viable diminished capacity defense, and relied on the arguments
set forth in its brief.  (11T6-2 to 5; 12T19-15 to 22-10).

The PCR Court denied the petition, addressing both the
procedural bars and the merits of defendant's claims.  The court
ruled that because the Appellate Division had ruled on the
propriety of waiver, that claim was procedurally barred under R.
3:22-5.  (11T8-2 to 7; 12T26-13 to 18).  Further, the court
ruled that because any claim regarding a Miranda hearing could
have been raised on direct appeal, it was barred under R.
3:22-4, and, that regardless, that claim failed on the merits.
(11T8-8 to 9-2; 12T27-2 to 9).  As to defendant's claim that
counsel was ineffective in failing to raise a diminished
capacity defense or lack of competency, the court found that
defendant had not met his burden under Strickland.  The court
ruled that there was no evidence that defendant lacked
competency or had a diminished capacity defense, and thus, there
was no deficient performance on counsel's part.  (11T11-9 to 24;

-5-

12T25-12 to 26-12).   Further, the court ruled that there was no
prejudice, stating that there was nothing to indicate that any
possible errors by trial counsel were so substantial that there
was a reasonable probability that the result would have been
different.   (12T28-7 to 13).

LEGAL ARGUMENT

POINT I

THE PCR COURT PROPERLY DENIED DEFENDANT'S PETITION FOR
POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE HE
FAILED TO PRESENT A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE
OF COUNSEL.   (Also addressing Points I and IV of defendant's pro
se brief).

Defendant argues that the PCR Court erred in denying his
petition without an evidentiary hearing.   Defendant's claim,
though, is without merit where he failed to present a prima
facie claim of ineffective assistance of trial counsel.

To prevail on an ineffective assistance of counsel claim, a
defendant must meet the two-pronged test articulated by the
United States Supreme Court in Strickland v. Washington, 466
U.S. 668, 687-694, (1984), and subsequently adopted by the New
Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 53-58
(1987).   This test requires the defendant to first show that his
attorney "'made errors so serious that counsel was not

-6-

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" <u>State v. Allah</u>, 170 <u>N.J.</u> 269, 283 (2002) (quoting <u>Strickland v. Washington</u>, <u>supra</u>, 466 <u>U.S.</u> at 687). Next, the defendant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>State v. Allah</u>, <u>supra</u> (quoting <u>Strickland v. Washington</u>, <u>supra</u> at 695).

    In this case, defendant failed to make a <u>prima facie</u> claim of ineffectiveness, and, thus, the Court properly denied relief without an evidentiary hearing.  A court presented with a petition for post-conviction relief is not required to conduct a factual hearing merely upon the petitioner's request.  Rather, <u>R.</u> 3:22-10 recognizes judicial discretion to conduct hearings, and then only where the defendant has presented a <u>prima facie</u> case supporting his claim.  <u>State v. Marshall</u>, 148 <u>N.J.</u> 89, 157-58, <u>cert. denied</u>, 522 <u>U.S.</u> 850 (1997); <u>State v. Jack</u>, 144 <u>N.J.</u> 240, 254 (1996); <u>State v. Preciose</u>, 129 <u>N.J.</u> 451, 462 (1992); <u>State v. Sheika</u>, 337 <u>N.J. Super.</u> 228, 249 (App. Div.), <u>certif. denied</u>, 169 <u>N.J.</u> 609 (2001); <u>State v. Cummings</u>, 321 <u>N.J. Super.</u> 154, 170 (App. Div.), <u>certif. denied</u>, 162 <u>N.J.</u> 199 (1999).  If the post-conviction-relief court perceives that an evidentiary hearing will not aid its analysis of whether the defendant is entitled to such relief, or that the defendant's allegations are

-7-

too vague or speculative, no such hearing is necessary.
State v. Marshall, supra; State v. Jack, supra.  Furthermore,
even where a defendant asserts an issue of fact, he may not be
entitled to an evidentiary hearing.  Not every case where the
defendant asserts an issue of fact requires an evidentiary
hearing, because the post-conviction-relief judge, after
considering oral argument and the papers submitted, still "has
the discretion to evaluate an issue as lacking adequate factual
or legal merit."  State v. Pyatt, 316 N.J. Super. 46, 51 (App.
Div. 1998), certif. denied, 158 N.J. 72 (1999).

In this case, defendant argues that his trial counsel was
ineffective for failing to argue about a deficiency in the
indictment.  Defendant's argument, though, was already raised in
his direct appeal and was rejected by the Appellate Division.
As such, defendant's claim is procedurally barred pursuant to R.
3:22-5.

In his post-conviction motion, defendant argued that the
facts required to be found to try him as an adult were not
included in the indictment.  (Da64-68).  Essentially, defendant
argued that a juvenile should be tried first as an adult, then
if he was found guilty, a penalty hearing should be conducted to
determine whether he should be sentenced as an adult or
juvenile.  (Da65-66).  However, defendant has already challenged

-8-

his indictment in his direct appeal.  In fact, the Appellate
Division found that

> As a Chart I offender, defendant's burden in
> overcoming the strong presumption of waiver
> is a heavy one.  Under the statute,
> juveniles charged with the crimes of murder,
> robbery, sexual assault and similar serious
> offenses are the primary candidates for
> waiver to the adult courts.  State v.
> R.G.D., 108 N.J. 1 (1987).  While experts
> for defendant were of the opinion that
> defendant could be rehabilitated by the time
> he reached age 19, the judge found it
> important that society, particularly
> juveniles, receive a clear message from
> defendant's crime – that committing a
> callous and wanton act of murder would be
> severely punished.  The judge's waiver
> determination is grounded in competent,
> credible evidence, and will not be disturbed
> on appeal.

> [Da28].

Defendant's argument that other racial groups are less
likely to be waived up to adult court is merely defendant's
unsupported opinion.  Defendant provides no evidence of the
waiver process being used more for one group over another.
Further his contention is meritless where, just as the Appellate
Division stated, a juvenile charged with murder is a "prime
candidate" for waiver to the adult court.  (Da28).

Moreover, defendant's blanket assertion that the grand jury
and petit jury were not made up of a cross-section of the
community fails.  Defendant has failed to indicate the makeup of

either jury.  Moreover, after swearing in the petit jury, the judge specifically instructed them to base their determination solely on the evidence presented during the trial.  (3T18-23 to 19-2).  There is no indication that the jurors strayed from their task or had a personal vendetta against defendant because of his race.

Lastly, defendant argues that his trial attorney failed to adequately address the trial testimony of Migdalia Hernandez and its inconsistency with co-defendant April Diggs.  (Db23-24). However, contrary to defendant's argument, defense counsel properly cross-examined each witness on her respective testimony.  Moreover, defense counsel was not ineffective for failing to cross-examine on discrepancies between their testimony where their testimony did not contradict each other.

Defendant argued that Migdalia Hernandez testified falsely when she testified that the four people involved in this incident returned to her apartment.  (Db23).  However, both Ms. Hernandez and April Diggs testified that after the shooting the four people involved returned to Ms. Hernandez' apartment. (5T169-18 to 19; 5T170-13 to 16; 5T187-5 to 11).  Further, both Ms. Hernandez and Ms. Diggs testified that the date of the incident was January 22, 1996.  (5T167-12 to 168-16; 5T180-14 to 16).  Next, although Ms. Hernandez testified regarding the use

-10-

of black face masks, Ms. Diggs was never questioned on these subject, so, again, there is no contradiction.  (5T169-20 to 170-12).  Lastly, although Ms. Diggs said in a statement to police that defendant shot the gun (5T196-19 to 197-2), Ms. Hernandez was never questioned in the jury's presence about any such statements.  (5T166-8 to 175-19)[2].

Therefore, since the Appellate Division has already found that defendant's waiver to adult court was proper, and defendant's remaining allegations are without merit, this Court should affirm the PCR Court's order denying relief.

POINT II

THE PCR COURT PROPERLY DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WHERE DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENTS WAS PROPERLY DENIED. (Also addressing Points I, II, and III, in defendant's pro se brief).

Defendant argues that because he is a juvenile, he should have been advised by the police before questioning of the possibility of being prosecuted as an adult.  Defendant's argument is without merit.

Defendant's claim that his statement should have been suppressed is one that could have been raised on direct appeal.

---

[2] Ms. Hernandez testified during an evidentiary hearing, outside of the jury's presence, that "someone" said a person was shot, but she did not remember who said it.  (5T143-7 to 22).

-11-

It was not. (Da9). Therefore, defendant's claim is now barred, and he cannot belatedly bring that claim in his petition for post-conviction relief. R. 3:22-4.

However, even if this Court reviewed the merits of defendant's claim, it still fails. In this case, despite th3 procedural bar, the trial court considered the merits of defendant's claim that his statement should have been suppressed, and found that claim to be meritless. (11T8-12 to 2; 12T25-3 to 26-12; 12T27-2 to 13). And, in evaluating defendant's claim of ineffective assistance of counsel, the trial court reviewed the merits of defendant's assertion that waiver was improper. (11T9-3 to 10-9; 12T26-13 to 18). Again, he found that assertion to lack merit. (11T10-10 to 12-19; 12T26-19 to 27-1). Therefore, while the trial court properly applied procedural bars, since the court also considered the merits of defendant's claims, the petition was properly denied.

After all, New Jersey law does not require officers to advise a juvenile of the possibility of being prosecuted as an adult while advising him of his Miranda warnings. It is well settled that Miranda warnings are required when a person is subjected to "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). Juveniles, though, are accorded extra protection while being

questioned.  State ex rel. A.W., 212 N.J. 114, 128 (2012).

Courts require that the police attempt to locate the juvenile's

parent before commencing with questioning.  State v. Presha, 163

N.J. 304, 316-17 (2000).  In determining the voluntariness of a

juvenile's confession, courts have looked at "defendant's age

and familiarity with the criminal process, his clear desire to

be interviewed without a parent present, the presence of a

parent at the outset of the questioning, and his fair treatment

by police ... to conclude that defendant's will was not

overborne by investigators."  State ex rel. A.W., supra, 212

N.J. at 130, quoting State v. Presha, supra, 163 N.J. at 318.

In this case, Detective Thomas Koczur testified at the

suppression hearing that after defendant was brought in, he

informed defendant that he was a "strong suspect" in the case,

and told defendant "not to answer any questions until his mother

was present ... ."  (2T18-10 to 19).  After defendant's mother

arrived, Detective Koczur advised defendant regarding his

Miranda rights.  (Da15; 2T20-1 to 24-9). · Defendant's mother was

present at the start of the interview, however at one point,

defendant asked his mother to leave the room.  Defendant then

confessed to the crime.  (Da15-16; 2T26-8 to 10; 2T27-4 to 28-

3).  After defendant's mother returned to the room, defendant

reiterated his involvement in the crime and provided two written
statements.  (Da16-17; 2T28-4 to 22; 2T36-13 to 38-21).

After hearing all of the testimony presented during the
suppression hearing and the attorneys' arguments, the trial
court properly found

> beyond a reasonable doubt that ... defendant
> knowingly, voluntarily, and intelligently
> read his, waived his rights after having
> been advised of those rights.  There is no
> evidence that the defendant was threatened,
> forced, or coerced into giving a statement.
> The defendant's rights were, as I indicated,
> read to him by the officer.

[3T15-14 to 21].

The court also found defendant's testimony that he didn't
understand what was being read to him to be not credible.
(3T16-7 to 8).  Neither defendant, nor his mother, advised
police, or gave any indication, that they did not understand the
warnings.  (3T16-8 to 23).  Therefore, defendant was properly
advised of his <u>Miranda</u> rights as required by law, and
defendant's argument now on appeal that he should have been
advised of the possibility of being tried as an adult is without
merit, where such a warning is not required by law.

Defendant also argues that due to his "severe learning
disability," he was unable to fully understand his <u>Miranda</u>
warnings.  Although defendant was in special education classes
at the time of his arrest, this falls far short of establishing

-14-

a mental deficiency rendering him incapable of waiving his
Miranda rights.  Again, the trial judge had the opportunity to
view defendant during his testimony and evaluate his ability to
understand and answer questions.  Defendant's mother was also
present when Detective Koczur read defendant those rights.
(2T20-1 to 24-9).

Furthermore, while Drs. Thompson and Page classified
defendant as low to borderline intelligence, (Da97; Da109), Dr.
Schlesinger classified him as within the high end of borderline
range of intelligence.  (Da117).  Dr. Thompson also found that
defendant was oriented to time, place and person, had no
delusional thinking, and had no acute psychiatric disability.
(Da97-98).  She also stated that he was fully aware of her role
in his judicial process.  (Da96).  Dr. Schlesinger additionally
concluded that defendant had no severe psychopathology; nor did
he show signs of schizophrenia, psychosis, or major mental
illness.  (Da124).  In short, defendant presented nothing
indicating that he was suffering from any type of mental defect
that would have affected his ability to understand and waive his
Miranda rights.  Thus, the trial court correctly concluded that
defendant did not establish that counsel was deficient, since
the evidence that defendant claims should have been presented
does not exist.

-15-

Even if this Court finds that more evidence regarding defendant's intelligence level should have been presented, defendant still cannot show that the result would have been different.  Regarding his statement, again the State points to the trial court's findings, which were based on direct observations of defendant when he testified.  And, even giving defendant every benefit, and assuming that counsel had presented additional evidence regarding defendant's intelligence level that resulted in his confession being suppressed, defendant still cannot show that the result of the trial would have been different.  There was considerable evidence of defendant's guilt without his confession.  Indeed, as the PCR Court found "There is simply nothing that indicates to the Court that errors committed by trial counsel, if there were any, were such a substantial nature so that it is reasonably probably [sic] that the results would have been different.  (12T28-9 to 13).  At trial, Sharlama Brooks, defendant's girlfriend at the time of the indicident, testified that defendant first asked her to lie about his whereabouts at the time of the murder, and then confessed to her that he had shot the victim, although he claimed by mistake.  (3T66-6 to 12; 3T75-2 to 5).  Defendant's confession to Detective Koczur was far from the only evidence

-16-

against defendant.  Thus, he has not shown prejudice under Strickland.

POINT III

THE PCR COURT PROPERLY DENIED RELIEF WHERE DEFENDANT'S CHALLENGE TO HIS SENTENCE WAS ALREADY RAISED ON DIRECT APPEAL, AND WHERE HE FAILED TO MAKE A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

Defendant's challenge that his sentence was excessive was already raised, and rejected, previously on direct appeal. Since this claim has already been addressed by the Appellate Division, and since defendant failed to make a prima facie claim of ineffective assistance of counsel, relief should be denied.

Post-conviction relief "is a safeguard to ensure that a defendant was not unjustly convicted." State v. Afanador, 151 N.J. 41, 49 (1997); State v. Cummings, 321 N.J. Super. 154, 164 (App. Div.), certif. denied, 162 N.J. 199 (1999).  Post-conviction relief proceedings are not opportunities "to relitigate cases already decided on the merits," however. State v. Preciose, 129 N.J. 451, 459 (1992); accord, State v. Afanador, 151 N.J. at 50; State v. McQuaid, 147 N.J. 464, 484 (1997); State v. White, 260 N.J. Super. 531, 538 (App. Div. 1992), certif. denied, 133 N.J. 436 (1993).  Once an issue, even one of constitutional dimension, has been decided, it "may not

-17-

be relitigated." State v. Smith, 43 N.J. 67, 74 (1964), cert. denied, 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965).

In his PCR, defendant argues that the PCR Court erred in denying relief where his sentence was excessive and trial counsel was ineffective in his representation at sentencing. First, defendant's argument has already been litigated on direct appeal, and rejected by the Appellate Division when it found defendant's sentence was not excessive. (Da42-47). Specifically, on direct appeal, defendant argued that the trial court "failed to consider defendant's youth, his lack of a prior record, and the hardship of imprisonment as mitigating factors." (Da42).

Now on appeal, defendant attempts to re-argue some of these mitigating factors, and even included a few additional mitigating factors, in attempt to get a second-bite at the apple. However, the Appellate Division has already thoroughly reviewed defendant's sentence and affirmed it where "the trial judge properly identifie[d] and balance[d] the aggravating and mitiating factors that [were] supported by competent credible evidence." (Da47).

However, even if this Court were to review the merits of defendant's argument as to the newly raised mitigating factors, his argument fails. Defendant argues that the trial court

should have considered mitigating factors eight and nine where
his conduct was the result of circumstances unlikely to recur,
and where his character and attitude indicate he was unlikely to
commit another offense.  However, mitigating factor eight is not
applicable where there is absolutely no indication that this
crime was the result of circumstances unlikely to recur again.
Defendant and his codefendants intentionally went out that night
looking for someone to rob.  Defendant wanted to "see how it
felt."  (Da46).

Next, mitigating factor nine is inapplicable where
defendant lacked any remorse and took no responsibility for his
actions.  State v. O'Donnell, 117 N.J. 210, 216-17 (1989);
State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012).  At
the sentencing hearing, defense counsel acknowledged, "Now, the
only negative thing I read about in the report about him was
they talk about a lack of remorse on his part."  (10T3-14 to
16).  Defense counsel attempted to explain away the lack of
remorse by stating that it could be because defendant still
maintained his innocence.  (10T3-17 to 20).  Moreover,
defendant's eleventh hour attempt to show remorse at sentencing
was insincere (10T4-13 to 15; 10T4-24 to 5-9), and the trial
court properly declined to find mitigating factor nine.

Defendant also now argues that the trial court should have

-19-

considered mitigating factor four where there were substantial grounds to excuse or justify defendant's conduct, and mitigating factor eleven where imprisonment would entail an excessive hardship on defendant based on his mental abilities. (Db41).

Mental illness may be considered as a mitigating factor in certain cases. In State v. Nataluk, 316 N.J. Super. 336 (App. Div. 1998), for example, found it "difficult to understand how defendant's condition could not have constituted a mitigating factor." Id. at 350. In Nataluk, the defendant suffered from a bipolar disorder, disassociative disorder, amnesia, and severe hallucinations. Id. at 342. However, unlike the defendant in Nataluk, the defendant in this case presented no evidence that he was unaware of his actions during the shooting. On the contrary, defendant stated at sentencing that he "[understood] somebody got killed" and claimed that he "tried to stop what happened that night, but it was too late." (10T4-24 to 5-4). Moreover, Dr. Schlesinger classified him as within the high end of borderline range of intelligence, while Dr. Thompson found that defendant was oriented to time, place and person, had no delusional thinking, and had no acute psychiatric disability. (Da97-98; Da117). Therefore, mitigating factors four and eleven do not apply to defendant where he was aware of the crime he was committing, and there is no evidence that imprisonment would

-20-

entail an excessive hardship.  As such trial counsel was not ineffective for failing to argue these additional mitigating factors.

POINT IV

ALL REMAINING POINTS RAISED IN DEFENDANT'S PRO SE PAPERS LACK MERIT. (Also addressing Point V in defendant's pro se brief).

The trial court reviewed and considered all papers submitted on behalf of defendant and the State.  Any issues raised by defendant that were not specifically addressed lack merit and warrant no further discussion.

CONCLUSION

For the foregoing reasons, the State respectfully requests that the Order denying Post Conviction Relief be affirmed.

Respectfully submitted,

THEODORE J. ROMANKOW
Prosecutor of Union County

By:   MEREDITH L. BALO
      Assistant Prosecutor

MLB/hg

-21-