NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-3222-11T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARVIN MATHIS,

     Defendant-Appellant.

_____

Submitted January 22, 2014 — Decided August 1, 2014

Before Judges Espinosa and Koblitz.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No.
97-02-0123.

Joseph E. Krakora, Public Defender, attorney
for appellant (Kimmo Z.H. Abbasi, Designated
Counsel, on the brief).

Grace   H.   Park,   Acting   Union   County
Prosecutor,   attorney   for   respondent
(Meredith L. Balo, Special Deputy Attorney
General/Acting   Assistant   Prosecutor,   of
counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

This is defendant's second appeal from the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. For the reasons that follow, we affirm.

At age fifteen, defendant was charged in a juvenile delinquency complaint with acts which, if committed by an adult, would constitute armed robbery and felony murder. Juvenile jurisdiction was waived, and he was convicted in the Law Division of first-degree murder, first-degree armed robbery, first-degree felony murder, and weapons offenses. The sentencing court imposed an aggregate sentence of fifty years in New Jersey State Prison with thirty years of parole ineligibility.

Defendant appealed, challenging the decision to waive juvenile jurisdiction, the admission of hearsay evidence, statements made by the prosecutor, and his sentence. We affirmed his convictions and sentence in an unpublished opinion. State v. Mathis, No. A-3316-98 (App. Div. June 2, 2000), certif. denied, 165 N.J. 603 (2000).

Defendant filed a PCR petition in 2003. A memorandum of law and amended petition were submitted by defendant on February 24, 2005. In the memorandum and in a pro se letter brief, defendant raised additional claims, which included the following points:

A-3222-11T1

(III)   Defendant's waiver of his Miranda[1] rights was not knowing and intelligent because defendant was not informed that, although he was a juvenile, any statement made by him could be used against him in a prosecution as an adult.

(IV)   Trial counsel was ineffective for failing to present evidence of defendant's low intellectual functioning in order to establish that defendant's waiver of his Miranda rights was not knowing and intelligent.

(V)   Trial counsel was ineffective for not presenting in mitigation of sentence the evidence of defendant's low intellectual functioning and personality disorder.

.   .   .   .

(VIII)   Trial and appellate counsel were prejudicially ineffective by failing to discover and raise the issue of the defendant's lack of competence to stand trial. N.J. Const. (1947) Art. 1, Par. 1, Par. 10; U.S. Const. Amend. V; VI; XIV.

In his appeal from the denial of his petition without a hearing, the issues he raised included the following:

III. THE COURT ERRED IN DENYING POST-CONVICTION RELIEF BECAUSE TRIAL COUNSEL'S FAILURE TO PRESENT EVIDENCE THAT THE DEFENDANT WAS DIAGNOSED WITH A PERSONALITY DISORDER AND COGNITIVE LIMITATIONS AND WAS FOUND TO BE FUNCTIONING AT THE BORDERLINE LEVEL OF RETARDATION DURING THE PRETRIAL MIRANDA HEARING, DURING THE TRIAL, AND AT SENCTENCING SATISFIED BOTH PRONGS OF THE

---

[1]   Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A-3222-11T1

> STRICKLAND/FRITZ   TEST   FOR   INEFFECTIVE
> ASSISTANCE OF COUNSEL, AND APPELLATE COUNSEL
> WAS INEFFECTIVE FOR FAILING TO RAISE THESE
> ISSUES ON APPEAL.

We reversed the denial of PCR and remanded for a new

hearing based upon another issue raised by defendant, finding

> PCR counsel rendered ineffective assistance
> when he failed to prepare a brief on behalf
> of defendant, or, at a minimum, failed to
> certify that after reviewing the pro se
> petition and brief he was satisfied that no
> further   argument   or   elaboration   was
> required.
>
> [State v. Mathis, No. A-3695-07 (App. Div.
> October 12, 2010).]

After remand, the PCR court denied defendant's petition by

order dated January 27, 2012.  Defendant presents the following

issues for our consideration in his appeal.

> POINT I
>
> THE PCR COURT ERRED IN DENYING MATHIS AN
> EVIDENTIARY   HEARING   EVEN   THOUGH   MATHIS
> PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE
> ASSISTANCE OF TRIAL COUNSEL.
>
> POINT II
>
> THE PCR COURT ERRED IN DENYING MATHIS'S
> PETITION FOR POST-CONVICTION RELIEF AS
> MATHIS SUCCESSFULLY DEMONSTRATED THAT HIS
> STATEMENTS TO THE POLICE SHOULD HAVE BEEN
> SUPPRESSED AND MATHIS DID NOT RECEIVE
> REASONABLE REPRESENTATION OF TRIAL COUNSEL
> AT THE MIRANDA HEARING.
>
> POINT III

A-3222-11T1

THE PCR COURT ERRED IN DENYING MATHIS'S
PETITION FOR POST-CONVICTION RELIEF EVEN
THOUGH THE SENTENCE IMPOSED BY THE TRIAL
COURT WAS EXCESSIVE, IMPROPER AND OTHERWISE
UNCONSTITUTIONAL AND MATHIS DID NOT RECEIVE
THE REASONABLE REPRESENTATION OF TRIAL
COUNSEL AT SENTENCING.

POINT IV

MATHIS INCORPORATES BY REFERENCE THE
ARGUMENTS CONTAINED IN HIS INITIAL VERIFIED
PETITION AND BRIEF.

Plaintiff filed a supplemental pro se brief in which he

presents the following arguments:

POINT I

THE ORDER DENYING POST-CONVICTION RELIEF
SHOULD BE REVERSED BECAUSE THE COURT
MISAPPLIED THE PROCEDURAL BARS OF R. 3:22-4
AND 3:22-5.

POINT II

THE PCR COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF BECAUSE
TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
INVESTIGATE AND PRESENT EVIDENCE OF
DEFENDANT'S COGNITIVE LIMITATIONS AND HIS
STATUS AS A SPECIAL EDUCATION STUDENT DURING
THE PRETRIAL MIRANDA HEARING AND AT TRIAL.

POINT III

THE PCR COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF BECAUSE
APPELLATE COUNSEL FAILED TO DISCOVER AND
RAISE[] ON DIRECT APPEAL TRIAL COUNSEL'S
FAILURE TO PRESENT EVIDENCE OF DEFENDANT'S
COGNITIVE LIMITATIONS AND HIS STATUS AS A
SPECIAL EDUCATION STUDENT DURING THE
PRETRIAL MIRANDA HEARING AND AT TRIAL.

A-3222-11T1

POINT IV

THE PCR COURT'S RULING DENYING POST-CONVICTION RELIEF VIOLATED DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE [COUNSEL] AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

POINT V

DEFENDANT REASSERTS ALL OTHER ISSUES RAISED IN HIS PRO SE PETITION AND BRIEFS IN SUPPORT OF POST-CONVICTION RELIEF.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-prong test of establishing both that (1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

A-3222-11T1

<u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 687, 694, 104 <u>S. Ct.</u> at 2064, 2068, 80 <u>L. Ed.</u> 2d at 693, 698.

A PCR petition is not, however, "a substitute for appeal from conviction or for motion incident to the proceedings in the trial court." <u>R.</u> 3:22-3. <u>Rule</u> 3:22-5 bars our consideration of an issue that has been previously adjudicated, stating,

> A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

The primary arguments raised concern claims of ineffective assistance of counsel based on defendant's representation at sentencing and a failure to present evidence of defendant's alleged mental deficiency at his <u>Miranda</u> hearing. Defendant's argument based upon his sentence is procedurally barred as his sentence was challenged on direct appeal and not found to be excessive. <u>R.</u> 3:22-5. For the reasons that follow, we find the arguments relating to the performance of his counsel at the <u>Miranda</u> hearing to lack merit. Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

The facts underlying defendant's convictions are set forth in our opinion on defendant's direct appeal and need not be

A-3222-11T1

repeated here.  We summarize the record regarding his claim that his counsel failed to investigate and present evidence of his alleged mental deficiency at the <u>Miranda</u> hearing.

At the suppression hearing, the State presented the testimony of two police officers who provided the following account:

After his girlfriend told a police officer that defendant admitted shooting someone by accident, two officers in plain clothes went to his high school and asked defendant if he would go to police headquarters because one of the detectives wanted to speak to him.  Defendant agreed and was transported to police headquarters.  He was not under arrest or handcuffed.  At headquarters, defendant was told he was "a strong suspect" in a robbery-murder case.  He was instructed not to answer any questions until his mother was present.  The police officer advised defendant pursuant to <u>Miranda</u> orally and in writing in his mother's presence.  Both defendant and his mother were asked if they understood each of the rights and stated they did.  Both defendant and his mother signed the <u>Miranda</u> form.

Defendant initially denied any involvement in the robbery and shooting but then asked for his mother to leave the room.  She did not object and left the interview room.  Defendant then admitted he had been present at the shooting.  His mother

A-3222-11T1

returned to the room, and he repeated his admission.  A written statement was taken in which defendant again acknowledged that he understood each of his rights.  Defendant and his mother also executed a consent to search form, permitting the police to search their apartment.

Defendant's mother testified that when she arrived at police headquarters, the officers were already questioning her son.  She said she left the interview room at the request of one of the police officers.  She confirmed that defendant was advised of his rights, specifically as to his right to remain silent and whether he understood that right.  She also stated defendant never admitted involvement in the shooting or robbery in her presence and that her written statement to the contrary was incorrect.

Defendant testified that he did not accompany the officers to the police station voluntarily and that he was told he had to go.  He stated he was not advised of his Miranda rights until after he made his first statement to police and that he was told he had to put his initials on the form.  As to questioning regarding his understanding of the rights, he testified as follows:

> Q.   . . . Did he read that sheet to you, do
>      you recall?
>
> A.   Yes, he did.  He read it to me.

A-3222-11T1

Q.     And did he ask you questions after --
       Did he read each one and ask you that
       you understand?

A.     Yes, he did.

Q.     And did you understand it?

A.     Not that good, no.

Q.     Did you tell him that?

A.     No.

Q.     And you signed it?

A.     Yes.

Defendant said the detectives asked him to read the first statement he gave before he signed it, that his mother was present, and that he thought his mother looked at the statement before he signed it, but he said he did not read the entire document because the detective was rushing him.

Defendant testified that after he gave the first statement, the detectives continued to question him and did not advise him of his rights a second time. He did not recall giving the response in the second statement that he intended to rob people with "Antwan," did not recall signing the statement, and said that he did so because the detectives told him to sign it.

At one point, defense counsel asked defendant how many weeks there are in a year and he replied, "Thirty." Defendant was asked by his counsel whether the detective asked him to read

10

any part of the statement out loud and said, "No, he didn't."
Defense counsel then questioned defendant about his ability to
understand the statement:

> Q.   Are there any parts of this statement
>      that you would have trouble reading, do
>      you recall?
>
> A.   Few, at that time.
>
> Q.   I am talking back in 1996 when you were
>      fifteen.
>
> A.   Yes, it was, you know, it was a few.

On cross-examination, defendant confirmed the following
facts.  He was not handcuffed until after he gave the second
statement.  The officers did not do a pat-down of him before
taking him to the police department.  One of the detectives told
him he should not answer any questions until his mother was
present.  He repeated that to another detective who tried to
question him, and the detective then stopped questioning him.
He understood that he had a right to stop the questioning.  He
was not under the influence of drugs or alcohol when questioned,
and his mind was clear.

He admitted that he lied in initially denying any knowledge
about the robbery and in stating there were two or three other
guys involved who were not really involved.  However, he did
tell the detectives from the beginning that Antwan was
responsible for the robbery.  He also admitted there was a time

A-3222-11T1

when he wanted his mother to leave the interview room because he did not want her to get upset by hearing him tell the details of the crime.  He testified that he told the detective the details and then repeated them when his mother returned.

Defendant gave the following account of the robbery and shooting:

> [Antwan] told me to run across the street, look out for cops, and told the other two girls go up the street, ask the man something.  Then they just kept on walking. So at that time the two girls, they asked the man a question, the man didn't respond to them.  Then that's when I stood by, almost close to the Chinese store.  That's when Antwan ran across the street and told the man to empty his pocket.  Man just looked at him.  Then Antwan grabbed the man, the man just slapped his hand down, threw a punch.  Then the man -- no.  Man threw a punch at Antwan.  Antwan threw a punch at the man.  Then that's when Antwan pull out the gun, out of his pants, and he was about to shoot him -- they was struggling, they was struggling like for good two minutes, then that's when I realized they were struggling, that's when I went try to stop the struggle, and gun went off.

Defendant also admitted he knew Antwan had a gun and that Antwan was going to rob a deli and another man who was waiting for a bus but did not after defendant asked him not to do so.

The prosecutor reviewed the Miranda warnings one at a time with defendant and asked if he understood each one.  Defendant answered that he understood each one with the following

A-3222-11T1

exceptions.  Although he understood he had the right to talk to a lawyer, he stated he did not understand he could have had a lawyer "present" at the time he was questioned and that he thought he could only have a lawyer "in the future."  "Present" was the only word in the <u>Miranda</u> warnings he did not understand. As for the warning, "If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish," defendant stated he did not understand the part, "if you wish."

In arguing for the suppression of defendant's statements, his counsel stated the State had failed to show he had knowingly waived his rights, "that he was sufficiently . . . informed of his rights to be able to knowingly waive those rights."  He noted the nature of the charges, defendant's age and lack of a prior record, and the brief time spent in advising defendant of his rights.

Among the findings made by the trial court in denying the motion were the following:

> I do not find credible defendant's testimony that he didn't understand what was being read to him.  On cross examination, [the prosecutor] went through the form with him and indicated phrase by phrase almost word by word what was contained in the form, and there the answers given by the defendant did not suggest that he was, that he did not understand what was contained in the form. Furthermore, he didn't advise the police

A-3222-11T1

that he didn't understand anything.  Nor did
his mother advise the police that things
were not understood.  And there was the
example, cited even by the defendant, that
an officer came to the room where he was
waiting and he told the officer that he was
instructed not to say anything until his
mother came, and no interrogation took
place.  Clearly, the defendant had some
knowledge even in advance of having rights
read to him, just based on an oral statement
of an officer that he should wait for his
mother, that he was able to exercise some
control over the process.

Defendant contended in both the first argument before the
PCR judge and in the argument following remand that he had a
long history of cognitive difficulties, an inability to
understand complex concepts, and was a special education
student.  In support of this argument, he relied upon the
reports from three psychologists who had evaluated defendant
prior to the waiver of juvenile jurisdiction to assess the
likelihood that he could be rehabilitated within the juvenile
justice system, Dr. Page, Dr. Thompson, and Dr. Schlesinger, who
determined that defendant functioned at a low intellectual
level.

His PCR counsel argued that trial counsel, who had since
died, was ineffective in failing to perceive defendant's
difficulties and should have pursued a defense that defendant
was incompetent to stand trial.

A-3222-11T1

In the first argument regarding defendant's petition, the PCR court found that the record supported the conclusion that defendant made his statement knowingly and voluntarily and made the following findings as to this argument:

> The second part of this [Stickland/Fritz] test is . . . but for that deficient conduct of counsel the results would have been different. The defendant asserts that the ineffective assistance of his counsel deals with the fact that counsel did not raise, either during the Miranda proceeding or at the time of sentencing, his mental status.
>
> It is argued that the defendant, a special ed. student at the time of his arrest suffered from learning disabilities and that therefore, his competency to stand trial, his competency to have made a voluntary statement was lacking, and that he lacked -- that his capacity to formulate the necessary mental status necessary to convict him of these crimes was lacking.
>
> So the question then before the court is was that failure -- was there a failure on the part of counsel to raise these issues. Information has been presented to the court [al]luded to by counsel here in the argument, the psychological reports that have been presented to the court here in connection with this matter.
>
> Based upon my review of those reports it is clear to me that they -- while the evidence does support the conclusion that Mr. Mathis had learning disabilities, that his -- that he -- his learning capacity was as -- I believe it is indicated at a borderline level. There's also no information contained in these reports that

A-3222-11T1

supports a conclusion that he was suffering any psychiatric illness.

There is nothing here that says he lacked competence. That is that he did not understand and appreciate the nature of the charges against him. There is nothing that supports the conclusion that he had a diminished capacity. That is he did not have the capacity to formulate the ability to act in a purposeful or knowing way.

The review of the proceedings indicates that he participated in the interview with the police and the time he gave his statement -- again in the presence of his -- of a parent. He voluntarily waived his rights. It is apparent that he understood the proceedings, that he understood the questions being posed to him, and was able to formulate answers to those questions that were appropriate and responsive to the questions before him.

There is nothing that allows this court to conclude that the evidence supports a conclusion that the defendant at the time of his trial was incompetent or suffered from diminished capacity. Thus any failure on the part of his attorney to raise those issues, either in connection with the Miranda or at the time of sentencing to mitigate -- as a mitigating factor or to raise as a bar to the prosecution of this case that any failure of counsel to do that was ineffective assistance. There simply was nothing to present to the court to argue that the defendant lacked competency or that he suffered diminished capacity.

The PCR court concluded that the two prongs of the Strickland/Fritz standard were not satisfied and denied defendant's petition.

A-3222-11T1

The PCR judge addressed this issue again in denying defendant's petition after remand:

> With respect to the contention that the failure to raise a learning disability or special ed status, constituting ineffective assistance, the court notes that in reviewing the record, it does not find that there are any facts from which it could be demonstrated that the fact that the defendant was learning disabled or was a special ed student was sufficient to show that he had a mental deficiency that would some way render him incapable of or impairing his ability to participate in this case.
>
> There is nothing that indicates that he was disabled so that he could not knowingly and voluntarily waive his <u>Miranda</u> rights. That somehow that special ed status would have affected his waiver hearing in juvenile court, his participation in the trial, or even affect the sentencing. We are not without a record here. There was a waiver proceeding in the juvenile court. There was a psychologist involved in that proceeding.
>
> And again the conclusion of the court is that there was not evidence that the mental deficiency was so severe that the absence of his presentation would have affected the outcome of the proceeding. There is nothing to show that reasonable probability but for the failure to present that evidence, the result somehow would have been different.

Based upon our review of the record, we agree that defendant failed to make a prima facie showing of ineffectiveness of trial counsel within the <u>Strickland</u>/<u>Fritz</u> test. The fact that defendant was a special education student

A-3222-11T1

and functioned at a low intellectual level does not alone constitute a sufficient factual basis to conclude that he did not understand his rights when he waived them. When he testified at the suppression hearing, defendant generally acknowledged his understanding of the Miranda warnings, identifying only isolated phrases that he claimed he did not understand. The motion judge found this testimony not to be credible, a finding entitled to our deference. State v. Nuñez-Valdéz, 200 N.J. 129, 142 (2009). No evidence has been presented to refute that finding to create a prima facie case of ineffective assistance on this ground. Accordingly, the PCR court correctly concluded that an evidentiary hearing was not warranted. See State v. Preciose, 129 N.J. 451, 462-63 (1992).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-3222-11T1