HONORABLE JOSE L. LINARES, U.S.D.J.

Marvin Mathis #304144/244859-C
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625-0861
**Petitioner pro se**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CIVIL NO. 15-2095 (JLL)

MARVIN MATHIS,                       :

    Petitioner,                  :

                               :    <u>Civil Action</u>

    v.                           :
                                  **PETITIONER'S REPLY TO**
                              :  **RESPONDENT'S ANSWER TO**
ATTORNEY GENERAL OF                     **PETITION FOR A WRIT OF**
NEW JERSEY, et al.                   :  **HABEAS CORPUS**

    Respondents.                 :

                               :

     Petitioner, by way of Traverse to the Answer to the Petition a Writ of Habeas Corpus, hereby state the following:

    1. There is no allegation in Paragraph One of the Answer to contest.

    2. There is no allegation in Paragraph Two of the Answer to contest.

    3. The statements in Paragraph Three of the Answer are not contested.

    4. There is no allegation in Paragraph Four of the Answer to contest.

    5. There is no allegation in Paragraph Five of the Answer to contest.

    6. There is no allegation in Paragraph Six of the Answer

to contest.

7. There is no allegation in Paragraph Seven of the Answer to contest.

8. There no allegation in Paragraph Eight of the the Answer to contest.

9. The statements in Paragraph Nine of the Answer are not contested.

10. There is no allegations in Paragraph Ten of the Answer to contest.

11. Petitioner takes no issue with paragraph 11(a). Petitioner takes issue and totally disagrees with the allegations contained in Paragraph 11(b), the grounds listed on page four of petitioner's addendum did stated the grounds raised in the appeal of his post-conviction motion.

12. Petitioner takes issue and totally disagrees with the allegations in Paragraph Twelve of the Respondent's Answer.

### RESPONSE TO AFFIRMATIVE DEFENSE

#### POINT I

**The Petition for Writ of Habeas Corpus is not Filed Beyond the Statute of Limitations, and is Well Within the One Year Limit**

Petitioner filed his pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 13, 2015. (EC1 No. 1). Petitioner filed a timely pro se PCR petition to the Superior Court of New Jersey Law Division, which was time stamped "Received and Filed" on May 01, 2001 by the court clerk's office. (ECF No. 3 at 4-5). Petitioner asserts that the 2001 PCR petition was properly filed.

In most cases, including this one, the one year statute

2

of limitations applicable to petitions brought under § 2254
begins to run on the "date on which the judgment became final
by the conclusion of direct review or the expiration of the
time for seeking such review including the 90-period for
filing a petition for writ of certorari in the United States
Supreme Court." See Figueroa v. Buechele, No. 15-1200, 2015
WL 1403829, at *2 (D.N.J. Mar. 25, 2015).

In the present case, on March 15, 1999, the Superior Court
of New Jersey, Appellate Division ("Appellate Division") granted
petitioner's motion to file Notice of Appeal Nunc Pro Tunc.
(Pet Reply App. 1 and 2).[1] Petitioner's conviction was affirmed
on direct appeal by the Appellate Division on June 02, 2000.
(Ra 3). On October 11, 2000, the New Jersey Supreme Court denied
petitioner's petition for certification. State v. Mathis, 165
N.J. 603 (2000). (Ra 6). Petitioner's one-year time to file
his habeas petition begin to run on January 10, 2001, following
the expiration of the 90-period in which petitioner could
have sought review in the United States Supreme Court.

Thereafter, time was tolled when petitioner properly filed
his petition for post-conviction relief on May 01, 2001 by the
court clerk's office. (ECF No. 3 at 4-5). On September 21, 2003,
petitioner filed a pro se Verified Petition for Post-Conviction
Relief to the Superior Court of New Jersey Law Division, which
was time-stamped "Received and Filed" on September 25, 2003.

---

[1] "Pet. Reply App" hereinafter is in reference to Petitioner's attached
Appendix.

(Ra at 30). When petitioner filed his pro se Verified Petition for PCR, he inadvertently left out the word **"amended."** After presiding over a non-evidentiary hearing on February 29, 2008, post-conviction relief was denied. An Order denying post-conviction relief was filed on February 29, 2008. (Pet. Reply App. 3).

On May 19, 2008, petitioner received via legal mail from the Superior Court of New Jersey Appellate Division, which contained an Order granting petitioner's motion to proceed as an indigent and for free transcripts, dated May 08, 2008 by Judge Edwin H. Stern, P.J.A.D. [2] (Pet. Reply App. 5 and 4).

In the May 08, 2008 Order, Judge Stern stated that "the clerk advises that even though the application was filed in **2001**, this is an appeal from the denial of [petitioner's] first petition for post-conviction relief. It is a timely appeal from a decision of February 29, **2008.**" (Pet. Reply App. 4).

On October 12, 2010, the Appellate Division reversed and remanded petitioner's case, finding that PCR counsel failed to comply with the requirements of Rule 3:22-6(d), State v. Rue,, 175 N.J. 1, 811 A.2d. 423 (2002) and State v. Webster, 187 N.J. 254, 901 A.2d. 338 (2006). (Ra 20 at 20 to 30).

---

[2] On April 21, 2015, this Court ordered petitioner to show cause why his petition should not be dismissed as time-barred. (EC I No. 2). On May 11, 2015, in his response, petitioner presented the May 08, 2008 Appellate Division's Order under Docket No. A-3695-07T4, in his supporting documents marked as **"Exhibit 17."** On May 28, 2015, this Court found that petitioner showed good cause why his petition should not be dismissed as untimely and ordered respondents to file a full and complete answer. (See Respondents' answer page 11).

After remanded, the post-conviction relief court utlimately denied relief January 27, 2012. (Ra 20 at 60), and appealed to the Appellate Division under Docket No. A-3222-11T1, and was denied. On February 03, 2015, the New Jersey Supreme Court denied petitioner's petition for certification. State v. Mathis, 220 N.J. 572, 108 A.2d. 632 (2015).

In its answer to this claim, the respondents attempts to argue to this Court that petitioner's 2003 Verified Petition for PCR was the "properly filed" petition, and the 2001 filing was deficient and not a "properly filed" post-conviction petition where there were no grounds for relief raised. The respondents further argues that the state court did not, and could not, proceed with the 2001 filing since there was absolutely no indication what type of relief petitioner sought. (See Respondent answer pg. 13).

"An application is 'properly filed' when its delivery and acceptance are compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 .U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000); See also Figueroa, 2015 WL 1403829, at *2 (The statute of limitations, however, is tolled during the pendency of a valid state court post-conviction review (PCR)).

In this case, petitioner asserts that both the Superior Court of New Jersey Appellate Division's opinions have simply misconstrued the filing date of petitioner's PCR petition. In their opinions, the Appellate Division are relying on the 2003 Verified Petition for PCR. As petitioner mentioned above, he

5

inadvertently left out the word **"amended."** (Ra 8 at 3).

At the **January 27, 2012** Post-Conviction Relief hearing, newly assigned PCR counsel clarified on the record that the 2001 filing of petitioner's PCR petition was filed in a timely manner. (16T5-22 to 6-13).

With regard to the timeliness of petitioner's PCR petition, the Superior Court of New Jersey Law Division found:

> **[PCR Court]:** <u>I agree there is not a procedural bar here based on time.</u> This is a remand. And I appreciate the prosecutor pointing out it was not for errors by the trial court but rather deficiencies of PCR counsel. <u>But it doesn't raise an issue that this is some way barred by time, the timeliness of the application.</u>
>
> (16T24-21 to 25-2).

Therefore, since the Appellate Division's Order, dated May 08, 2008 has already found that petitioner's PCR application was filed in 2001 (Pet. Reply App. 4), and the **January 27, 2012** PCR record plainly shows that the PCR Court acknowledged that petitioner's PCR petition was filed in a timely manner. (16T 24-21 to 25-2). Petitioner's petition for writ of habeas corpus is well within time and is not time-barred.

### Standard for Obtaining Relief

28 U.S.C. 2254 (d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of United States; or (2)

resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

As to any of petitioner's claims adjudicated on the merits
in state court, this Court may not grant relief unless either
2254(d)(1) or 2254(d)(2) is satisfied. As to 2254(d)(1), "clearly
established Federal Law" refers to the holding, as opposed
to the dicta, of [the supreme court's] decision as of the time
of the relevant state-court decision." Williams v. Taylor 529
U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A court
must therefore look for "the governing legal principle or
principles set forth by the Supreme Court at the the state
court renders its decision." Lockyer v. Andrade, 538 U.S. 63,
71, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

Subsection (d)(1) involves two clauses. The first clause
is referred to as the "contrary to" clause; the second clause
as the "unreasonable application" clause. Williams v. Taylor,
529 U.S. at 412-13. A state court's decision runs afoul of the
"contrary to" clause if the state court applies a rule that
contradicts the governing law forth in Supreme Court Cases or
if it confronts a set facts that are materially
indistinguishable from a decision of the Court and nevertheless
arrives at a result different from Court precedent. Id. at 405-
06. A state court runs afoul of the "unreasonable application"
clause if "the state court identifies the correct governing
legal principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts of [the

petitioner's] case." Id. at 409. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. Id. at 411; See also Werts v. Vaughn, 228 F.3d. 178, 197 (3d Cir. 2000); Matteo v. Superintendent, SCI Albion, 171 F.3d. 877, 891 (3d Cir. 1999).

Under 2254(d)(2) habeas relief also may not be granted unless a state court's determination of the fact findings was unreasonable. Moreover, federal courts are required to apply a presumption of correctness to factual determinations made by the state court. See 28 U.S.C. 2254(e)(1). This presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. Id.

For the purpose of 2254(d) and 2254(e)(1), even a summary adjudication constitutes an adjudication on the merits. Weeks v. Angelone, 528 U.S. 225, 120 S.Ct. 727, L.Ed.2d (2000). However, a federal court focuses on the last reasoned state court decision. Weaver v. Palmateer, 455 F.3d. 958, 963 n. 6 (9th Cir. 2006); See also Simmons v. Beard 590 F.3d. 223, 232 (3d Cir. 2009). In the present case, the Superior Court of New Jersey, Appellate Division issued the last reasoned state court decision on August 01, 2014.

## LEGAL ARGUMENT

**GROUND ONE:**   THE STATE COURT RULING THAT PETITIONER WAS NOT
DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL
RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL,
COUNSEL'S FAILURE TO PRESENT EVIDENCE OF
PETITIONER'S LOW INTELLECTUAL FUNCTIONING IN ORDER
TO ESTABLISH THAT PETITIONER'S WAIVER OF HIS
MIRANDA RIGHTS WAS NOT KNOWING AND INTELLIGENT
WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW,
AND AN UNREASONABLE APPLICATION THEREOF, THEREFORE
THE WRIT SHOULD ISSUE

The well-known standard of Strickland v. Washington, governs

this claim. To obtain federal relief, petitioner must show that

the state court's decision involved an unreasonable application

of this standard, which requires that a petitioner show that

his trial counsel's performance was deficient and that deficiency

prejudiced the defense. Strickland, at 687, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984). "Performance is deficient if it falls

below an objective standard of reasonableness, which is defined

in terms of prevailing professional norms. Wiggins; v. Smith,

539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing

Strickland, supra); Stickland, at 688-89. Prejudice is found

if there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different." Strickland at 694, 104 S.Ct. 2052, 80 L.Ed.2d

674.

Here, trial counsel's failure to present evidence of

petitioner's low intellectual functioning at the Miranda hearing

fell below an objective standard of reasonableness because the

extensive evidence of petitioner's low intellectual functioning

was readily available to trial counsel before the Miranda

hearing; and but for counsel's deficient performance, a

reasonable probability exists that the outcome of the <u>Miranda</u>
hearing would have been different because the inclusion of this
relevant evidence combined with the fact of petitioner's age
and lack of a prior record would have affected the outcome of
the <u>Miranda</u> hearing. Furthermore, a reasonable probability exists
that suppression of petitioner's statement would have affected
the outcome of his trial because petitioner's statement
constituted a significant part of the state's case.

**Miranda hearing**

During the <u>Miranda</u> hearing, trial counsel first reference
of petitioner's cognitive limitations and his status as a special
education student occurred during his cross-examination of
Detective Thomas Koczur:

> **[Trial counsel]:** (W)ere you aware that [petitioner]
> was a special education student in the school?
>
> **[Detective Koczur]:** No.
>
> **[Trial counsel]:** So you weren't aware he may have
> had certain learning disabilities that made it
> difficult for him to understand any of these things?
>
> **[Detective Koczur]:** No.
>
> **[Trial counsel]:** So you just assumed in **two
> minutes** that you read this that he understand
> everything?
>
> **[Detective Koczur]:** Yes.
>
> (emphasis added) (3T48-15 to 21).

At the <u>Miranda</u> hearing, trial counsel demonstrated
petitioner's learning disability by posing the following
questions:

> **[Trial counsel]:** [Petitioner] can you tell me how
> many week there are in a year?

> [Petitioner]: How many week in a year?
>
> [Trial counsel]: Yes.
>
> [Petitioner]: Thirty.
>
> (3T80-15 to 19).

Trial counsel then questioned petitioner about his ability to understand the statement:

> [Trial counsel]: Did he ask you to read any part of that statement or any part of this?
>
> [Petitioner]: That part, no.
>
> [Trial counsel]: Did he ask you to read out loud any part of the statement?
>
> [Petitioner]: No, he didn't.
>
> [Trial counsel]: Are there any parts of this statement that you would have trouble reading, do you recall?
>
> [Petitioner]: Few, at the time.
>
> [Trial counsel]: I am talking back in 1996 when you were fifteen?
>
> [Petitioner]: Yes, it was, you know, it was a few.
>
> (3T82-16 to 83-1).

The portion of petitioner's testimony (at the <u>Miranda</u> hearing) the prosecutor referred to was as follows:

> [Prosecutor]: Back then what didn't you understand? Let's go through it all over. You have a right to remain silent, Did you understand that at that point in time?
>
> [Petitioner]: Yes.
>
> [Prosecutor]: I mean, that's as simple as it can be. You can keep your mouth shut. You knew that, right?
>
> [Petitioner]: Yes.
>
> Prosecutor]: And anything you say and will be used against you in a court of law: And you understood

that right, because that's also very simple?

[Petitioner]: Yes.

[Prosecutor]: You have a right to talk to a lawyer and have him present when you are being questioned? You knew a lawyer was?

[Petitioner]: Yes. I, at that time I didn't know I could have had a lawyer present, you know, I didn't know that.

[Prosecutor]: Did you think you could have a lawyer only later no?

[Petitioner]: Like on in the future. Yes.

[Prosecutor]: But in terms of present, you didn't understand that?

[Petitioner]: I didn't understand.

[Prosecutor]: was it the word "present" that you didn't understand?

[Petitioner]: Sort of.

[Prosecutor]: All right. So when they read this to you: You have a right to talk to a lawyer, you understood that up to that point, right?

[Petitioner]: Yes.

[Prosecutor]: And have him present while you were being questioned. Okay. You understand while you are being questioned, right?

[Petitioner]: Yes.

[Prosecutor]: And have him, you understand?

[Petitioner]: Right.

[Prosecutor]: So 'present' was the only word you didn't understand?

[Petitioner]: Yes.

[Prosecutor]: If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish: Did you understand that back then?

[Petitioner]: <u>No.</u>

[Prosecutor]: <u>What didn't you understand?</u>

[Petitioner]: <u>That part, 'if you wish,' I didn't understand.</u>

[Prosecutor]: 'If you wish' you did not understand?

[Petitioner]: Yes.

(3T 114-14 to 117-3).

In denying the motion to suppress, the trial court stated:

> **I do not find credible defendant's testimony that he didn't understand what was being read to him.** On cross examination, Mr. Kolano went through the form with him and indicated phrase by phrase almost word by word what was contained in the form, and there the answers given by the **defendant did not suggest that he was, that he did not understand what was contained in the form.**

(4T16-7 to 13)

When rendering this determination, the trial court was not aware of petitioner's severe learning disabilities and his special education status. Presentation of the relevant evidence by trial counsel would have corroborated petitioner's testimony that he did not fully understand his <u>Miranda</u> rights.

Petitioner's special education status counsel referred to was well documented in petitioner's school records and by three psychologists, to whom petitioner was referred to in order that they assess the likelihood of successful rehabilitation of petitioner within the juvenile court system prior to reaching the age of 19 years. These psychologists also determined through testing that petitioner functioned at a low intellectual level.

Dr. Cheryl L. Thompson administered a mental status exam reviewed petitioner's school records. In her report dated

February 10, 1996, she estimated petitioner's intelligence as "Borderline to Low Average[,]" (Pet. Reply App. 8). Petitioner described himself to Dr. Thompson as "a school person[,]" but [Petitioner's] school record reflect severe learning problems that became obvious in first grade. [Petitioner] was retained in first and second grades. He was placed in special education program because he was never able to learn basic reading, writing and computation." (Pet. Reply App. 8). Dr. Thompson described Petitioner as "not bright and is easily confused." (Pet. Reply App. 9). She concluded that **"[Petitioner] should have a complete diagnostic assessment as he may be functioning as [sic] the level of retardation."** (Pet. Reply App. 10).

Dr. Martha H. Page administered several tests to petitioner and also reviewed his school records. (Pet Reply App. 13). In her report dated July 15, 1996, she recounts petitioner's school history, which documents years of learning disability, including that petitioner was classified as Special Education, Communication Handicap. (Pet. Reply App. 14-16).

The results of the several tests Dr. Page administered to petitioner showed him to be "functioning at the intellectually deficient to borderline range of intelligence[,]" though "[p]otential intellectual functioning was in the borderline to low average level of intelligence." (Pet. Reply App. 17). According to Dr. Page, "[Petitioner] found it difficult to process verbally presented material rapidly. Ability to define words was well below average. . . Certainly, the . . . classification of [Petitioner] as Communication Handicapped

14

was an appropriate one." Ibid. "[I]t was evident that [petitioner's] academic skills were still quite low and further impaired when he felt under pressure to achieve or was in a less than well-controlled and structured situation." (Pet. Reply App. 18). Dr. Page concluded that **"Petitioner had considerable difficulty in thinking analytically and accurately especially when he felt under pressure."** (Pet. Reply App. 20).

In Dr. Louis B. Schlesinger report dated October 02, 1996, he wrote:

> [Petitioner] is currently functioning within the high \*\*d of the borderline range of intelligence, gaining a Full Scale IQ of 79 . . . Verbal skills \*\*\* within low end of dull-normal range. **Fund of general information is weak, suggesting that [Petitioner] has not profited a great deal from school or experence.** For example, he did not know the number of weeks in a year, the identity of Louis Armstrong, the direction travelled from Chicago to Panama, the location of Brazil, the author of Hamlet, the President during the Civil War, and other such simple facts. **Vocabulary is equally poor and far below average capacity as he was unable to define such words as fabric, assemble, conceal, consume, regulate, and like.** . . In general, verbal skills fall within low end of dull-normal range, which seems to be f\*\*\*\*\* \*ccurate assessment of his current and potential capacity.

(Pet. Reply App. 29-30).

Trial counsel represented petitioner at the juvenile waiver hearing and was fully aware of the evidence of petitioner's low intellectual functioning since counsel was the one who had referred petitioner to Dr. Thompson and to Dr. Page and since counsel undoubtedly received through discovery a copy of the report of Dr. Schlesinger (to whom petitioner was referred to

by the state). Trial counsel's failure to present at the <u>Miranda</u> hearing the extensive evidence of petitioner's low intellectual functioning thus fell below an objective standard of reasonableness. <u>Strickland supra</u> 466 <u>U.S.</u> at 688.

"In determining whether a defendant in police custody has voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights, a trial court looks at several factors, including the defendant's **age, education** and **intelligence**, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." <u>State Presha</u>, 163 <u>N.J.</u> 304, 313, 748 A.2d. 1108 (2000). "[A] suspect's previous encounters with the law also has been mentioned as [a] relevant factor." <u>Ibid.</u>

In determining whether or not petitioner gave a voluntary statement, the Court assess the totality of all the surrounding circumstances. <u>Columbe v. Connecticut</u>, 367 <u>U.S.</u> 568, 81 <u>S.Ct.</u> 1860, 6 L.Ed.2d 1037 (1961); <u>Schneckloth v. Bustamonte</u>, 412 <u>U.S.</u> 218, 226, 93 <u>S.Ct.</u> 2041, 36 L.Ed.2d 854 (1973); <u>Withrow v. Williams</u>, 507 <u>U.S.</u> 680, 706, 113 <u>S.Ct.</u> 1745, 123 L.Ed.2d 407 (1993). Petitioner contends that his mental or developmental condition impaired his ability to comprehend his choices and must be factored into this Court's determination of voluntariness.

Here, trial counsel rightly focused on the fact that petitioner was a juvenile and on petitioner's lack of a prior record. (4T9-24 to 10-8). Counsel was remiss, however, in failing to present the evidence of petitioner's low intellectual

functioning. As a result, petitioner's testimony about his inability to understand simple words in the language of the rights read to him came off as incredible and appeared as a transparent attempt to get a favorable ruling. Counsel's failure to introduce this evidence at the Miranda hearing can only be characterized as unreasonable because the omitted evidence bore directly on the question whether petitioner's voluntarily, knowingly, and intelligently waived his Miranda rights.

Counsel's failure to present this highly relevant evidence also prejudiced petitioner because a reasonable probability exists that the inclusion of this evidence, combined with petitioner's young age and lack of background in the criminal justice system, would have affected the outcome of the Miranda hearing. See Scheckloth v. Bustamonte, supra, 412 U.S. at 226; Withrow v. Williams, supra 507 U.S. at 706.

Based on the factual circumstances of petitioner's case, the ruling of the state courts is contrary to clearly established federal law, an unreasonable application of federal law, and an unreasonable determination of the facts in light of the evidence presented. Therefore, the writ in this matter should issue.

**GROUND TWO:** THE STATE COURT RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, COUNSEL'S FAILURE TO PRESENT IN MITIGATION OF SENTENCE THE EVIDENCE OF PETITIONER" LOW INTELLECTUAL FUNCTIONING AND PERSONALITY DISORDER WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW, AND AN UNREASONABLE APPLICATION THEREOF, THEREFORE THE WRIT SHOULD ISSUE

The well-known standard of Strickland v. Washington governs this claim. 466 U.S. 668, 104 S.Ct. 2052, 80, L.Ed.2d 674 (1984). To obtain federal relief, petitioner must show that the state court's decision involved an unreasonable application of this standard, which requires that a petitioner show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. Stickland at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Performance is deficient if it falls below an objective standard of reasonable, which is defined in terms of prevailing professional norms." Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (Citing Strickland, supra); Strickland, at 688-689. Prejudice is found if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Here, trial counsel failure to present in mitigation of sentence the evidence of petitioner's low intellectual functioning and personality disorder fell below an objective standard of reasonableness because such evidence was readily available to counsel before the sentencing hearing; and but for counsel's deficient performance, a reasonable probability exists that the outcome of the sentencing hearing would have been different because petitioner's age, combined with his low intellectual functioning, personality disorder and poor impulse control would have provided substantial grounds to mitigate petitioner's sentence of 50 years.

As outlined in Ground one, petitioner's intellectual
functioning (at the time of the charged offenses) was estimated
at Borderline to Low Average. Dr. Louis B. Schlesinger also
reported that "Results of the projective and personality tests
are consistent with clinical impression showing a late adolesent
(16 years 6 months of age [at the time of the testing] displaying
the early signs of a developing personality disorder with
impulsive and antisocial traits. The Rorschach shows a young
man with the early signs of developing mild to moderate
characrerological disturbance . . ." (Pet. Reply App. 31).
"[Petitioner] responds to the outside world as well as to his
****rnal processes. With regard to the former, he often over-
reacts in loose and poorly controlled ways. His inner life is
dominated somewhat by impulsive tendencies, making the
likelihood of acting-out rather high." (Pet. Reply App. 31-32).

In her report, Dr. Cheryl L. Thompson wrote:

> [Petitioner] presents as a follower,
> someone who could be easily persuaded by
> more successful anti-social characters to
> become involved with them.
>
> . . . .
>
> [Petitioner] presents as a pleasant
> cooperative young man whose behavior reflects
> a negative idealization of a group of people
> he started to associate with. That is,
> [Petitioner] does not appear to have the
> ability to judge the social appropriateness
> of the group he selected to involve himself
> with. One of the people shown on the video
> tape was a relative of [Petitioner's].
>
> . . . .
>
> [Petitioner] presents as a young man who
> does not have an anti-social identification.
> He describes himself as a school person
> and he was in the correct grade for his
> age. He states that he can't explain what
> allowed him to engage in such behavior.

19

He is ashamed and sad that an innocent person
lost his life as a result of the actions
of the group. [He] does believe that he
would not have been in such behavior had
his cousin not been involved with him.
    [Petitioner's] behavior is that of a person
whose judgment was clouded, probably as
a result of the overstimulation in the house,
substance abuse and a desire to feel that
he was a part of the group.

Pet. Reply App. 9-10).


In her report, Dr. Martha H. Page wrote:

The Porteus Mazes provide a measure of
planning ability in every day life as well
as the ability to follow the rules. A high
Qualitative Score has been found to be
characteristic of juvenile delinquents
who tend to feel the end justifies the means.
It also provides a measure of tension level
and impulsivity. Performance is also
affected by the individual's ability to
visualize and plan ahead. [Petitioner]
received a Qualitative Score of 94 to 16
trials, well in excess of the cutoff score
for delinquents of 40 to 50. [Petitioner's]
score was detrimentally affected by his
difficulties in visualizing and planning
ahead. . . . Between his perceptual-motor
difficulties and desire to achieve, he found
it very difficult to follow the rules.
even though his Quantitative Score of 90
placed him in the average range, under
pressure he would have difficulty in
utilizing his ability to plan ahead.

(Pet. Reply App. 7).

Dr. Page further wrote that, "Impulse control could be

quite poor when he was in s stressful situation. He could act

with poor judgment because he had difficulty in thinking things

through carefully when he was in an unfamiliar situation, or

when he felt challenged or thought that he had to act as tough

he were cool and tough." (Pet. Reply App. 19). Dr. Page diagnosed

petitioner as having an Adjustment Disorder with Mixed
Disturbance of Emotions and Conduct. (Pet. Reply App. 20).

At the sentencing hearing, as at the <u>Miranda</u> hearing, trial
counsel referred to petitioner being "a special ed student,"
(14T3-1 to 2), but counsel did not explain nor present evidence
to establish exactly what that meant. Trial counsel's failure
to present the extensive evidence of petitioner's low
intellectual functioning and personality disorder fell below
an objective standard of reasonableness.[3]

Trial counsel should have known that this relevant evidence
could have been presented as mitigating factor pursuant to N.J.
Stat. Ann. 2C:44-1b(4).[4] The evidence of petitioner's intellectual
and mental deficiencies would have also supported counsel's
contention that petitioner's relative youth (15 at the time

---

[3]

The Superior Court of New Jersey, Appellate Division, did not specifically
address <u>Strickland</u>'s deficient performance prong. (Ra 24 at 7). Accordingly
this Court's review of the deficiency performance prong is <u>de novo</u>, and not
controlled by 28 U.S.C. 2254(d), which only applies to claims already
"adjudicated on the merits in state court proceedings." <u>See Porter v.
McCollum</u>, 130 <u>S.Ct.</u> 447, 452, 175 L.Ed.2d 398 (2009); <u>Appel v. Horn</u> 250 F.3d.
203, 210 (3d Cir. 2001)(if a properly preserved claim was not addressed
by the state court on the merits, the deferential standards of AEDPA do not
apply; in such instances, the federal habeas court must conduct a <u>de novo</u>
review over pure legal questions and mixed questions of law and fact, as
a court would have done prior to the enactment of AEDPA.); <u>see also</u> <u>Wiggins</u>
<u>v. Smith</u>, <u>supra</u>, 539 <u>U.S.</u> at 534 ("In this case, our review is not
circumscribed by a state court conclusion with respect to prejudice, as
neither of the state courts below reached this prong of the <u>Strickland</u>
analysis.").
the <u>Strickland</u> prejudice prong, is not a credibility determination within
the judge's province. 490 F.3d. 482, 490

[4]
That statute reads: "There were substantial grounds tending to excuse or
justify the defendant's conduct, though failing to establish a defense[.]"

of the charged crimes) should be accepted as a mitigating factor.
(14T2-17 to 18).

Trial counsel's failure to present evidence of petitioner's
intellectual and mental deficiencies could have been presented
as a mitigating factor pursuant to N.J. Stat. Ann. 2C:44-1b
(13).[5] The fact that petitioner was also influenced by older
persons. As pointed out by trial counsel at the sentencing
hearing, "two of the three people who petitioner was involved
with were older than him." (14T3-1 to 3-3). Petitioner's
susceptibility to influence by an adult is abundantly supported
by portions of Dr. Thompson's and Dr. Page's respective reports
outlined earlier. (Pet. Reply App. 9 and 19). Dr. Thompson opined
that petitioner "may be functioning as the level of retardation."
(Pet. Reply App. 10).

Also worth noting is that not a single witness was proffered
by trial counsel at the sentencing hearing even though counsel
was obviously aware that such witnesses were available.
Incredibly, nonetheless, trial counsel sought to have the Court
consider such evidence without actually proffering same:

> [Trial counsel]: The court recalls the trial. I
> think two teachers tried or attempted to testify
> as to his good character. There were other
> teachers present who weren't called. In any case
> there were at least half dozen teachers that had
> him in class that were willing to come forward
> because he was such an excellent student. Even the
> primary witness I feel against him was his
> girlfriend, and she indicated that she was stunned.
> Counselor who she went to was stunned, everyone was
> stunned; they couldn't believe that Marvin could

---

5
  That statute reads: "The conduct of a youthful defendant was substantially
influenced by another person more mature than the defendant"[.]

get involved in something like this.
\*   \*   \*   \*   \*
There was also Miss Garcia who testified in the case about what she was told by one of the Diggs sisters.
In any case, prior to that she had written a letter indicating her strong support for Marvin, and she felt that he could be rehabilitated and he was basically a good person. [emphasis added]

(14T3-4 to 3-24).

Trial counsel's failure to call witnesses at the sentencing hearing, as can be seen from trial counsel's remarks, there were obviously witnesses that could have, and should have, been called in support of the mitigating factors.

Notwithstanding trial counsel's shortcomings, it is submitted that the sentencing Court does not have discretion to reject, altogether, a mitigating factor that are amply based in the record before the sentencing judge, they must be found. To be sure, they may be accorded such weight as the Court determines is appropriate. "That is a far cry, however, fro suggesting that a judge may simply decline to take into account a mitigating factor that is fully supported by the evidence. Such reading of the statute flies in the face of our sentencing scheme and the well-established that aggravating and mitigating factors must be supported by the credible evidence.." State v. Dalziel, 182 N.J. 494 (2005)(citing State v. Roth, 95 N.J. 334, 356-64, 471 A.2d. 370 (1984).

Here, petitioner's youth combined with his low intellectual functioning, personality diorder and poor impulse control provided substantial grounds to mitigate petitioner's sentence of 50 years; and counsel's failure to present this available

23

mitigating evidence satisfies both prongs of the Strickland test. See Wiggins v. Smith, supra, 539 U.S. at 521 (defense counsel's decision not to present evidence cannot be strategic if counsel's failure to investigate precluded counsel from making informed decision); Williams v. Taylor, 529 U.S. at 397 (Counsel's failure to introduce the voluminous evidence of defendant's "nightmarish childhood" was ineffective assistance in a capital trial because this evidence raised "a reasonable probability that the result of the sentencing proceeding would have been different", but for counsel's errors); Marshall v. Cathel, 428 F.3d. 452, 465-71 (3d Cir. 2005)(counsel's lack of preparation for sentencing was ineffective assistance).

Based on the factual circumstances of petitioner's case, the ruling of the state court is contrary to clearly established federal law, an unreasonable application of federal law, and an unreasonable determination of the facts in light of the evidence presented. Therefore, the writ in this matter should issue.

**GROUND THREE:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW, AND AN UNREASONABLE APPLICATION THEREOF, THEREFORE THE WRIT SHOULD ISSUE

The well-known standard of Strickland v. Washington governs this claim. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To obtain federal relief, petitioner must show that the state court's decision involved an unreasonable application of this standard, which requires that a petitioner show that his trial

24

counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland, at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Performance is deficient if it falls below an objective standard of reasonableness, which is defined in terms of prevailing professional norm." Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(citing Strickland , supra,); Stirckland, at 688-689. Prejudice is found if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have different." Stickland, at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Here, trial counsel's failure to present evidence of petitioner's learning disabilities and his special education statue fell below an objective standard of reasonableness because such evidence was readily available to counsel before trial; and but for counsel's deficient performance, a reasonable probability exists that the outcome of the trial would have been different because petitioner's special education status was a significant factor in his defense, and calling witnesses (expert and/or appropriate school personnel) would have provided the jury with a better understanding of petitioner's mental status. Had this relevant evidence been admitted at trial, it would have also established a basis for the jury to understand petitioner's demeanor. Moreover, petitioner's guilt or innocence hinged on the jury's assessment of his credibility and believability of his testimony.

Petitioner's special education status was well documented in his school records. Moreover, in advance of the juvenile

waiver hearing, petitioner was also evaluated by psycholoists
to assess the likelihood of successful rehabilitation within
the juvenile justice system. These psychologists also determined
that petitioner functioned at a low intellectual level. (Pet
Reply App. 8, 10, 13, 14, 16 and 20).

The Sixth and Fourteenth Amendment right of confrontation
is "a fundamental right essential to a fair trial in a criminal
prosecution." Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct.
1065, 1068, 13 L.Ed.2d 923 (1965). New Jersey's Constitution
contain a similar guarantee. N.J. Const., Art I, Paragraph 10.
The right of confrontation "protect against improper restrictions
on questions defense counsel may ask during cross-examination"
and "encompasses the right to elicit favorable testimony" from
those witnesses. State v. Budis, 125 N.J. 519, 531 (1991)
Together with the rights to compulsory process and due process,
the right confrontation guarantee criminal defendants "a
meaningful opportunity to present a complete defense." Crane
v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 2146, 90 L.Ed.2d
636 (1986); California v. Trombetta, 467 U.S. 479, 485, 104
S.Ct. 2528, 81 L.Ed.2d 413 (1984). Petitioner contends that
it is respectfully submitted that those right were unquestionably
denied in this case. (6T116-2 to 3 and 6T116-13 to 16).

The evidence of petitioner's low intellectual functioning
was relevant and material to the jury's assessment of
petitioner's demeanor and credibility as a witness at trial.
Trial counsel's failure to present this evidence fell below
an objective standard of reasonableness.

26

In State v. Sexton, the Superior Court of New Jersey, Appellate Division specifically stated that "evidence of the defendant's mental ability is potentially relevant to the reasonableness of his perceptions. It is also relevant to the jury's evaluation of the defendant's demeanor and credibility as a witness at trial. State v. Sexton 311 N.J. Super. 70, 88, 709 A.2d. 288 (App. Div. 1998), aff'd 160 N.J. 93, 733 A.2d. 1125 (1999).

The Appellate Division further stated that even when the defendant does not raise a diminished capacity or insanity defense, defendant's mental condition may, nonetheless, be admitted as evidence at trial:

> We note that despite extensive psychological expert testimony at the waiver hearing, no expert testimony was offered at trial. Under those circumstances, it was within the trial judge's discretion either to admit or to exclude defendant's and his mother's testimony regarding his school placement. The trial judge found the proffer so vague as to be more prejudicial and confusing than relevant. See N.J.R.E. 403. **However, We think only fair, in the event of a retrial, that defendant have the opportunity upon proper notice to the state, to offer relevant experts and/or appropriate school personnel, who may be ability to fairly describe defendant's mental ability.** [emphasis added].

> [State v. Sexton, supra, 311 N.J. Super at 88].

It is beyond dispute that the right to call witnesses in protected by the Sixth and Fourteenth Amendments. "Few rights are more fundamental that of an accused to present witnesses in his own defense. Indeed, this right is an essential attribute of adversary system itself." Taylor v. Illinois, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (internal citations

omitted). Here, trial counsel was ineffective because he
precluded petitioner from presenting evidence of his special
education status at trial. (6T116-2 to 3). Not only did
petitioner received ineffective assistance of trial counsel
as a result of counsel's failure to properly present a defense,
petitioner was further deprived of his Constitutional right
to present witnesses on his behalf. (6T116-4 to 13).[4]

Counsel's failure to call witnesses (expert and/or
appropriate school personnel) also prejudiced petitioner because
a reasonable probability exist that the aid of an expert or
appropriate school personnel would have provided the jury with
a better understanding of petitioner's special education status.
(Pet. Reply App. 8, 10, 14, 16, 29 and 30). Had this relevant
evidence been admitted at trial, it would have also established
a basis for the jury to understand petitioner's demeanor.
Moreover, petitioner's guilt or innocence hinged on the jury's
assessment of petitioner's credibility and believability of
of his testimony.

Based on the factual circumstances of the petitioner's
case, the ruling of the state courts is contrary to clearly
established federal law, an unreasonable application of federal
law, and an unreasonable determination of the facts in light
of the evidence presented. Therefore, the writ in this matter
should issue.

---

[4]The state court also did not adjudicate the merits of this claim, and the
deferential standard of 28 U.S.C. § 2254(d) thus do not apply. See Porter
v. McCollun, supra, 130 S.Ct. 447, 452, 175.

28

**GROUND FOUR:** THE STATE COURT'S RULING THAT PETITIONER WAS
NOT DEPRIVED OF HIS SIXTH AMENDMENT
CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE
OF COUNSEL AND COMPULSORY PROCESS FOR OBTAINING
WITNESSES IN HIS FAVOR BY TRIAL COUNSEL, COUNSEL'S
FAILURE TO INVESTIGATE AND PRESENT EVIDENCE OF
PETITIONER'S COGNITIVE LIMITATIONS AND HIS STATUS
AS A SPECIAL EDUCATION STUDENT DURING THE
MIRANDA HEARING AND AT TRIAL WAS CONTRARY TO
CLEARLY ESTABLISHED FEDERAL LAW, AND AN
UNREASONABLE APPLICATION THEREOF, THEREFORE THE
WRIT SHOULD ISSUE

The well-known standard of Strickland v. Washington governs

this claim. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To obtain federal relief, petitioner must show that the state

court's decision involved an unreasonable application of this

standard, which requires that a petitioner show that his trial

counsel's performance was deficient and that the deficiency

prejudiced the defense. Strickland at 687, 104 S.Ct. 2052, 80

L.Ed.2d. 674 (1984). "Performance is deficient if it falls below

an objective standard of reasonable, which is defined in terms

of prevailing professional norms." Wiggins v. Smith, 539 U.S.

510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (Citing Strickland,

supra); Strickland, at 688-689. Prejudice is found if there

is reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different." Strickland at 694, 104 S.Ct. 2052, 80 L.Ed.2d

674.

Here, trial counsel failure to investigate and present

evidence of petitioner's cognitive limitations and his status

as a special education student during the Miranda hearing and

at trial fell below an objective standard of reasonableness

because such evidence was readily available to counsel before

29

trial; and but for counsel's deficient performance, a reasonable probability exists that the outcome of the trial would have been different because petitioner's special education status was a significant factor in his defense, such evidence was material to the issue of the voluntariness of petitioner's statement to the police. And evidence of petitioner's special education status would have established a basis for the jury to evaluate petitioner's demeanor and credibility as a witness at trial. Counsel's failure to call witnesses to support the assertion that petitioner had a severe learning disability and being classified as a special education student also prejudiced petitioner because a reasonable probability exists that the aid of an expert would have provided the jury with a better understanding of petitioner's special education status background.

Throughout petitioner's trial, trial counsel repeatedly made references of petitioner's status as a special education student at the Miranda hearing (3T48-15 to 21); in defense opening statement (4T39-12 to 15); during the testimony of Detective Thomas Koczur (6T97-8 to 10); in defense summation (12T188-18 to 19); and during sentencing (14T3-1 to 3).

Trial counsel questioned Detective Thomas Koczur regarding petitioner's special education status in the presence of the jury:

> [Trial counsel]: (W)ere you aware at anytime that you were questioning him that [Petitioner] was a special education staudent?

[Detective Koczur]: No.

(6T97-8 to 10).

Petitioner's status as a special education student became
the focus of significant attention at sidebar where a lengthy
discussion took place between the prosecutor and trial counsel.
The prosecutor was troubled when trial counsel asked Detective
Thomas Koczur during cross-examination if he was aware that
petitioner was a special education student, the prosecutor
immediately requested the trial judge to give a curative
instruction to the jury. The prosecutor and trial counsel
exchanged the following:

> [Prosecutor]: While there is some testimony
> of special education, you know you should not
> assume what the meaning of the is. You can
> only make determinations base on the **evidence**
> and **testimony**. And that is something that
> requires expert testimony. Because that's a
> kind of reverse inflammatory.
>
> [Trial counsel]: T I think the request is
> premature at this point.
>
> [Prosecutor]: <u>The jury is thinking this kid is</u>
> <u>too stupid to give a statement and he is more</u>
> <u>likely to be malleable and led into this</u>.
> Because I know I have thoughts about special
> education, **but I have never had any experience**
> **so I don't know what it actually is**
>
> [Trial counsel]: I asked the question based on
> the fact that he is a special education student.
>
> [Prosecutor]: <u>So what is he - - advanced, middle</u>
> <u>level, low level?</u>
>
> Trial counsel]: **It goes to the voluntariness of**
> **the statement**, whether the officer was aware at
> the time. (emphasis added).

(6T115-4 to 22).

31

Evidence of petitioner being classified as special education and communication handicap was readily available to counsel:

> **[Trial counsel]:** But I can bring evidence that he is classified as special ed. **That's no problem**.
>
> (6T116-2 to 3).

Trial counsel had ample opportunity to offer an expert to illustrate what petitioner's status as a special education student meant, but counsel refused to elicit the aid of an expert as evidenced by the following:

> **[Trial counsel]: I won't call an expert.** All I am saying school administrator, custodian of that record saying he is classified as special ed. **As to the basis of it you already have discovery**. (emphasis added).
>
> (6T116-13 to 16).

It is also important to emphasis that the issue of petitioner's special education status at sidebar was left unresolved. (6T117-11 to 12).

Trial counsel was wholly ineffective because he did not present such evidence at the suppression hearing. (6T115-21 to 22; 6T116-2 to 3; See also Ground one, supra). Yet, this was well documented in petitioner's school records. Moreover, in advance of the juvenile waiver hearing, the petitioner was also evaluated by psychologists to assess the likelihood of successful rehabilitation within the juvenile justice system. These psychologists also determined that petitioner functioned at a low intellectual level. (Pet Reply App. 8, 10, 13, 14, 16 and 20).

Also worth noting is that trial counsel should have also

presented evidence of petitioner's special education status at trial. In State v. Sexton, **which was decided 33 days before petitioner's trial,** the Superior Court of New Jersey, Appellate Division specifically stated that evidence of the defendant's mental ability is potentially relevant to the reasonableness of his perceptions. It is also relevant to the jury's evaluation of the defendant's demeanor and credibility as a trial. State v. Sexton, 311 N.J. Super. 70, 88, 709 A.2d. 288, (App. Div. 1998), aff'd 160 N.J. 93, 733 A.2d. 1125 (1999).

The Appellate Division further stated that even when the defendant does not raise a diminished capacity or insanity defense, defendant's mental condition may, nonetheless, be admitted as evidence at trial:

> We note that despite extensive psychological expert testimony at the waiver hearing, no expert testimony was offered at trial. Under those circumstances, it was within the trial judge's discretion either to admit or to exclude defendant's and his mother's testimony regarding his school placement. The trial judge found the proffer so vague as to be more prejudicial and confusing than relevant. See N.J.R.E. 403. **However, we think it only fair, in the event of a retrial, that defendant have the opportunity upon proper notice to the State, to offer relevant experts and/or appropriate school personnel, who may be able to fairly describe defendant's mental ability.** [emphasis added].

State v. Sexton, supra, 311 N.J. Super. at 88.

Here, evidence of petitioner's severe learning disabilities, including being classified as special education and communication handicap was clearly relevant, especially since petitioner testified on his own behalf at the Miranda hearing and at trial.

33

See 3T72-6 to 117-15; 9T130-19 to 165-5 and 11T3-9 to 113-6).

By virtue of trial counsel's representation, petitioner was

precluded from presenting such evidence that was readily

available. (6T116-2 to 3). As such, petitioner contends that

not only he receive the ineffective assistance of trial counsel

as a result of counsel's failure to properly present a defense,

but that by virtue of the ineffective assistance of counsel,

he was further deprived his Constitutional right to present

witnesses on his behalf. (6T116-13 to 16).[5]

The New Jersey Court has found that the right to effective

assistance of counsel under Article I, Paragraph 10 of the New

Jersey Constitution includes the right to the assistance of

experts.[6] State v. Difrisco, 174 N.J. 195, 243-44, 804 A.2d.

507 (2002); State v. Green, 55 N.J. 13, 18, 258 A.2d. 889 (1969).

See Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923,

18 L.Ed.2d 1019 (1967) (right of accused to present evidence

---

[5]
The State court also did not adjudicate the merits of this claim, and the
deferential standard of 28 U.S.C. § 2254(d) thus do not apply. See Porter
v. McCollun, supra, 130 S.Ct. 447, 452, 175. See also Appel v. Horn, supra,
250 F.3d. at 210.

[6]The New Jersey Supreme Court has determined that a specific provision of
Public Defender Act, N.J.S.A. 2A:158A-5, grants indigent defendants in New
Jersey the Statutory right to the assistance of expert necessary to their
defense. See In Re Cannady, 126 N.J. 486, 492, 600 A.2d. 459 (1991); In Re
Kauffman, 126 N.J. 499, 501, 600 A.2d. 455 (1991), finding that the Public
Defender Act mandates that the Office of the Public Defender pay for expert
services that are necessary to indigent defendant's case. In the present
case, petitioner contends that it is respectfully submitted that those rights
were unquestionably denied by trial counsel. See (6T116-13 to 16).

in his defense). The New Jersey also affords the right to present a defense. N.J. Const. Art. I, para. 1; State v. Feaster, 184 235, 250, 877 A.2d. 229 (2005). This means that petitioner must be afforded "a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690, 2142, 90 L.Ed.2d 636 (1986). This includes presenting witnesses in his favor. Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, L.Ed.2d 297 (1973) ("few rights are more fundamental than that of an accused to present witnesses in his own defense).

Here, the fact that petitioner's special education status was at issue, which is understood by the sidebar colloquy, counsel's failure to present this highly relevant evidence prejudiced petitioner because had this evidence been admitted during the sidebar colloquy, it would have clearly demonstrated petitioner's special education background which documents years of learning disabilities, including being classified as special education classes, with communication handicap dating back to 1990. See (Pet. Reply App. 8, 14, 16, 29 and 30). If petitioner's status as a special education student did not make any sense to the prosecutor, how would it make any sense to the jury? See (6T115-14 to 16 and 6T116-4 to 8).

Also worth noting is trial counsel's decision to refuse the aid of an expert prejudiced petitioner. (6T116-13 to 16). The sidebar colloquy demonstrates all the more reason why an expert was critically needed, even the prosecutor pointed out that expert testimony was needed in describing petitioner's mental abilities and what exactly special education meant. See

(6T116-4 to 8).

Evidence of petitioner's special education status was also a significant factor in his defense, and that such evidence was material to the issue of the voluntariness of his statement to the police. (6T115-21 to 22). Presentation of this relevant evidence would have corroborated petitioner's testimony that he did not fully understand his Miranda rights. (3T114-14 to 117-3).

Petitioner further contends that had this relevant evidence been admitted at trial, it would have also established a basis for the jury to understand petitioner's demeanor. Moreover, petitioner's guilt or innocence hinged on the jury's assessment of petitioner's credibility and the believablility of his testimony. (16T13-17 to 19). As opposed to the State's witnesses, there exists s reasonable probability that the outcome of the trial would have been different had the jury heard the evidence of petitioner's special education background. Strickland, supra, 466 U.S. at 694.

### Post-Conviction Relief

At the **January 27, 2012** Post-Conviction Relief hearing, PCR counsel relied on the psychologists reports, and argued that trial counsel was ineffective for failing to present evidence of petitioner's cognitive limitations and his special education status at the Miranda hearing and at trial. (16T8-17 to 23; 9-10 to 12 and 10-25 to 11-10). PCR counsel also introduced on record a trial transcript of a sidebar colloquy that took place between the prosecutor and trial counsel where

petitioner's special education status was at issue. (16T11-14
to 25; 12-1 to 25; and 13-1 to 23).

With regard to the issue of ineffective assistance of
counsel, in denying post-conviction relief, the court found
trial counsel was not ineffective. With regard to <u>Strickland</u>
v. Washington, the trial court found:

> **[PCR Court]:** with respect to the contention that
> the failure to raise a learning disability or
> special ed status, constituting ineffective
> assistance, **the court notes that reviewing the**
> **record, it does not find that there are any facts**
> **from which it could be demonstrated that the fact**
> **that the defendant was learning disabled** or was a
> special ed student was sufficient to show that he
> had a mental deficiency that would some way render
> him incapable of or impairing his ability to
> participate in this case.

> There is nothing that indicates that he was
> disabled so that he could not knowingly and
> voluntarily waive his Miranda rights. That
> somehow that special ed status would have
> affected his waiver hearing in juvenile court,
> his participation in the trial, or even affect
> the sentencing. We are not without a record here.
> There was a waiver proceeding in the juvenile
> court. **There was psychologist involved in that**
> **proceeding**

> And again the conclusion of the court is that
> there was not evidence that mental deficiency
> was so severe that the absence of his presentation
> would have affected the outcome of the proceeding.
> There is nothing to show that reasonable probability
> but for the failure to present that evidence, the
> result somehow would have been different.

> (16T25-16 to 26-12).

On appeal from denial of the PCR petition, the Appellate
Division largely relied on both the PCR court's findings of
"February 29, 2008" and "January 27, 2012." (15T10-10 to 11-
20 16T25-16 to 26-12). In affirming the PCR court, the Appellate

37

Division held:

> **Based upon our review of the record,** "we agree
> that defendant failed to make a prima facie
> showing of ineffectiveness of trial counsel
> within the Strickland/Fritz test. The fact that
> defendant was a special education student and
> functioned at a low intellectual level does not
> alone constitute a sufficient factual basis to
> conclude that he did not understand his rights
> when he waived them. When he testified at the
> suppression hearing, defendant generally
> acknowledged his understanding of the Miranda
> waiving, identifying only isolated phrases that
> he claimed his did not understand. The motion
> judge found this testimony not to be credible, a
> finding entitled to our deference. State v. Nunez-
> Valdez, 200 N.J. 129, 142 (2009). No evidence has
> been presented to refute that finding to create a
> prima facie case of ineffective assistance on this
> ground. Accordingly, the PCR court correctly
> concluded that evidentiary hearing was not
> warranted. See State v. Preciose, 129 N.J. 451, 462–
> 63 (1992).

(Ra 24 at 17 to 18).

Petitioner contends that these findings were an unreasonable
application of clearly established federal law under § 2254(d)
(1) and based on an unreasonable determination of the facts
before the PCR court and the Appellate Division under § 2254
(d)(2); See Miller-El v. Cockrell, 537 U.S. 322, 346, 123 S.Ct.
1029, 154 L.Ed.2d 921 (2003). It was unreasonable because both
the PCR court and the Appellate Division failed to consider:
**(1)** the trial record which is full of references regarding
petitioner's special education status (See 3T48-15 to 21; 4T39-
12 to 15; 6T97-8 to 10; and 12T188-18 to 19); **(2)** the fact that
petitioner's special education status was at issue, which is
understand by the sidebar colloquy, this issue was left
unresolved. (6T117-11 to 12). and **(3)** the psychological
evaluations by Dr. Thompson, Dr. Page, and Dr. Schlsinger. (Pet.

Reply App. 8, 10, 14, 16, 29 and 30).

In failing to note, much less consider these key facts, the PCR court and the Appellate Division based their decisions on an unreasonable determination of the facts. See Miller-El, 537 U.S. at 346 (a State court's fact-finding may qualify as unreasonable where "the State court . . . had before it, and apparently ignored," evidence supporting petitioner's claim); See also Simmons v. Beard, 590 F.3d. at 237-38.

Based on the factual circumstances of the petitioner's case, the ruling of the state courts is contrary to clearly established federal law, an unreasonable application of federal law, and an unreasonable determination of the facts in light of the evidence presented. Therefore, the writ in this matter should issue.

**GROUND FIVE:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, COUNSEL'S FAILURE TO DISCOVER AND RAISE ON DIRECT APPEAL, TRIAL COUNSEL'S FAILURE TO PRESENT EVIDENCE OF PETITIONER'S COGNITIVE LIMITATIONS AND HIS STATUS AS A SPECIAlt EDUCATION STUDENT DURING THE MIRANDA HEARING AND AT TRIAL WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW, AND AN UNREASONABLE APPLICATION THEREOF, THEREFORE THE WRIT SHOULD ISSUE

The right to appellate counsel is now firmly established. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 the United States Supreme Court announced that the due process clause of the Fourteenth Amendment guarantees to defendants the effective assistance of counsel on first appeals as of rights

Id. at 396. The Court did not set forth a specific standard
to be applied in reviewing the performance of a different test
for ineffective assistance of appellate counsel, it stands to
reason that the standard set forth in Strickland, supra, should
be used in judging appellate counsel's effectiveness, where
defendant has a Sixth Amendment right to counsel on appeal.

The well-known standard of Strickland v. Washington, governs
this claim. To obtain federal relief, petitioner must show that
the state court's decision involved an unreasonable application
of this standard, which requires that petitioner show that
his appellate counsel's performance was deficient and that
deficiency prejudiced the defense. Strickland, at 687, 104 S.Ct
2052, 80 L.Ed.2d. 674 (1984). "Performance is deficient if it
falls below an objective standard of reasonableness, which is
in terms of prevailing professional norms. Stickland, at 688-
89. Prejudice is found if there is a reasonable probability
that, but for counsel's unprofessional errors, the result of
the proceeding would have been different." Strickland, at 694,
104 S.Ct. 2052, 80 L.Ed.2d 674.

Here, appellate counsel's failure to discover and raise
on direct appeal, trial counsel's failure to present evidence
of petitioner's cognitive limitations and his status as a special
education student during the Miranda hearing and at trial below
an objective standard of reasonableness because all the essential
facts to raise trial counsel's ineffectiveness on direct appeal
clearly lied inside the trial record; and but for counsel's
deficient performance, a reasonable probability exists that

40

the outcome of the appeal would have been different because petitioner would have prevailed on appeal had this significant and obvious issue been raised.

On July 21, 1999, petitioner received a letter from Paul Klein, appellate counsel informing him that the "only issues he can raise on appeal at this time are issues that can be found in the trial transcript" . . . . "evidence of [petitioner's] status as a special education student cannot be raised on direct appeal because there is nothing in the record to support the argument." (Ra 20 at 179).

Petitioner then wrote appellate counsel and mailed it via certified mail dated May 23, 2000. (Ra 20 at 182). Petitioner brought to appellate counsel's attention a lengthy discussion between the prosecutor and trial counsel at sidebar where petitioner's special education status was at issue and the need of expert testimony to illustrate his mental ability. (Ra 20 at 181).

Petitioner's special education status was brought into focus when the prosecutor requested a sidebar to express his concerns about trial counsel asking Detective Thomas Koczur during cross-examination if he was aware that petitioner was a special education student, the prosecutor immediately requested the trial judge to give a curative instruction to the jury. (6T115-4 to 22).

It is also significant, with respect to trial counsel's notice of fact materially relevant to petitioner's special education status that evidence of him being classified as

"special education classes" and "communication handicap" was readily available to trial counsel. Counsel was remiss, however, in offering this relevant evidence. (6T116-2 to 3). In addition, the issue of defendant's special education status at sidebar was left unresolved. (6T117-11 to 12).

Trial counsel was wholly ineffective because he did not present evidence of defendant's special education status at the Miranda hearing. (Ground one, supra). Yet, this was well-documented in petitioner's school records. Moreover, in advance of the juvenile waiver hearing, petitioner was evaluated by psychologists to assess the likelihood of rehabilitation within the juvenile justice system. These psychologists also determined that petitioner's functioned at a low intellectual level. (Pet. Reply App. 8, 10, 13, 14, 16, and 20).

At the time relevant to petitioner's trial, in State v. Sexton, the Superior Court of New Jersey, Appellate Division specifically stated that "evidence of the defendant's mental ability is potentially relevant to the reasonableness of his perceptions. It is also relevant to the jury's evaluation of the defendant's demeanor and credibility as a witness at trial. State v. Sexton, 311 N.J. Super. 70, 88, 709 A.2d. 288 (App. Div. 1998), aff'd 160 N.J. 93, 733 A.2d. 1125 (1999).

The Appellate Division further stated that even when the defendant does not raise a diminished capacity or insanity defense, defense defendant's mental condition may, nonetheless, be admitted as evidence at trial:

> We note that despite extensive psychological
> expert testimony at the waiver hearing, no

42

expert testimony was offered at trial. Under
those circumstances, it was within the trial
judge's discretion either to admit or to
exclude defendant's and his mother's
testimony regarding his school placement. The
trial judge found the proffer so vague as to
be more prejudicial and confusing than
relevant. See N.J.R.E. 403. However, **We think
it only fair, in the event of a retrial, that
defendant have the opportunity upon proper
notice to the State, to offer relevant experts
and/or appropriate school personnel, who may
be able to fairly describe defendant's mental
ability. [emphasis added].**

[State v. Sexton, supra, 311 N.J. Super. at 88].

In this case, evidence of petitioner's severe learning

disabilities, including being classified as "special education

classes" and "communication handicap" was clearly relevant,

especially since he testified on his own behalf at the Miranda

hearing and at trial. (3T72-6 to 117-15; 9T130-19 to 165-5 and

11T3-9 to 133-6).

An ineffective assistance of counsel claim was appropriate

for appellate review. Because all the essential underlying facts

to raise trial counsel's ineffectiveness on direct appeal clearly

lied inside the trial record. Appellate counsel's decision not

to pursue trial counsel's failure to present evidence of

petitioner's special education status was objectively unreason-

able because the omitted issue is obvious from the trial record.

(6T114-19 to 117-12)[7].

It is true that appellate attorney does not have to raise

---

[7]The State court also did not adjudicate the merits of this claim, and
deferential standard of 28 U.S.C. § 2254(d) thus do not apply. (Ra 24 at
7). See Porter v. McCullum, supra, 130 S.Ct. 447, 452, 175. See also Appel
v. Horn, 250 F.3d. at 210.

issues which he considers frivolous on appeal. Jones v. Barnes, 463 U.S. 745, 749, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). Nevertheless, an attorney must raise the meritorious issues on appeal which are likely to lead to a petitioner's conviction being reversed on appeal. Otherwise such an attorney is rendering ineffective assistance of counsel. Evitts v. Lucey, 469 U.S. at 389. "Matters of appellate strategy, like matters of trial strategy are generally relegated to the discretion of counsel." Caruso v. Zelinsky, 515 F. Supp. 676, 685 (D.N.J. 1981). And to overcome the strong presumption that appellate counsel's conduct fell with the wide range of reasonable professional assistance, a defendant must "present evidence" that appellate counsel's supposed failure was not an exercise of sound appellate strategy. Collins v. Dormire 240 F.3d. 724, 727 (8th Cir 2001).

Here, given the facts found in the mailing between appellate counsel and petitioner (Ra 20 at 179 and Ra 20 at 181); the trial record which is full of references regarding petitioner's special education status (3T48-15 to 21; 4T39-12 to 15; 6T97-8 to 10; 12T188-18 to 19); and especially at the sidebar colloquy where petitioner's special education status was at issue. (6T 114-19 to 117-12). This cannot be deemed a strategic choice because appellate counsel's conduct was not an exercise of sound appellate strategy.

Appellate counsel's error in failing to raise trial counsel's ineffectiveness on petitioner's first direct appeal prejudiced petitioner. A reasonable probability exists that had this highly relevant evidence of petitioner's special

education status been admitted during the sidebar colloquy,
it would have demonstrated petitioner's special education back-
ground which documents years of learning disabilities, including
being classified as "special education classes," and
"communication handicap" dating back to 1990. (Pet. Reply App.
8, 10, 13, 14, 16 and 20).

During the sidebar colloquy, even the prosecutor pointed
out the expert testimony was needed in describing petitioner's
cognitive difficulties and what exactly special education meant,
but trial counsel refused the aid of an expert. (6T116-4 to
16).

Had this relevant evidence been admitted at trial, it would
have also established a basis for the jury to understand
petitioner's demeanor. Moreover, petitioner's guilt or innocence
hinged on the jury's assessment of petitioner's credibility
and the belivability of his testimony. As opposed to the State's
witnesses, there exists a reasonable probability that the outcome
of the trial would have been different had the jury heard the
evidence of petitioner's special education background.

Petitioner contends that had appellate counsel raised trial
counsel's ineffectiveness on direct appeal relying on the trial
record petitioner would have prevailed. More specifically, the
sidebar colloquy where petitioner's special education status
was at issue. (6T114-19 to 117-12). The Appellate Division
decision set forth in Statev v. Sexton, supra, falls perfectly
within the reach of the present case because it was decided
**33 days before** petitioner's trial The record is sufficient

45

to clearly demonstrate that petitioner was prejudiced by trial counsel's conduct and that a reasonable probability exists that petitioner would have prevailed on appeal had this significant and obvious issue been raised. Petitioner has demonstrated that, but for appellate counsel's failure to investigate and research the applicable state law at the time of his trial, the Appellate Division would have overturned petitioner's conviction on direct appeal. See Evitt v. Lucey, 469 U.S. at 389.

Based on the factual circumstances of the petitioner's case, the ruling of the state courts is contrary to clearly established federal law, an unreasonable application of federal law, and an unreasonable determination of the facts in light of the evidence presented. Therefore, the writ in this matter should issue.

**GROUND SIX:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, COUNSEL'S FAILURE TO MOUNT AND ARGUE THE ISSUES RAISED HEREIN BEFORE THE APPELLATE DIVISION ON DIRECT APPEAL. APPELLATE COUNSEL ALSO FAILED TO ARGUE THE TOTALITY OF THE CIRCUMSTANCES TEST MANDATED IN SCHENLOTH BUSTAMANTE (DIC). THE CONFESSION ALLEGEDLY GIVEN BY PETITIONER WERE NOT VOLUNTARILY NOR KNOWINGLY WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW, AND AN UNREASONABLE APPLICATION THEREOF, THEREFORE THE WRIT SHOULD ISSUE

The right to appellate counsel is now firmly established. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 the United States Supreme Court announced that the due process clause of the Fourteenth Amendment guarantees to defendants the effective assistance of counsel on first appeals as of rights.

Id. at 396. The Court did not set forth a specific standard
to be applied in reviewing the performance of a different test
for ineffective assistance of appellate counsel, it stands to
reason that the standard set forth in Strickland, supra, should
be used in judging appellate counsel's effectiveness, where
defendant has a Sixth Amendment right to counsel on appeal.

The well-known standard of Strickland v. Washington, governs
this claim. To obtain federal relief, petitioner must show that
the state court's decision involved an unreasonable application
of this standard, which requires that petitioner show that
his appellate counsel's performance was deficient and that
deficiency prejudiced the defense. Strickland, at 687, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984). "Performance is deficient if it
falls below an objective standard of reasonableness, which is
in terms of prevailing professional norms. Strickland, at 688-
89. Prejudice is found if there is a reasonable probability
that, but for counsel's unprofessional errors, the result of
the proceeding would have been different." Strickland, at 694,
104 S.Ct. 2052, 80 L.Ed.2d 674.

Here, appellate counsel's failure to argue that the totality
of circumstances of petitioner's statement was not voluntarily
nor knowingly fell below an objective standard of reasonableness
because all the facts to raised this issue lied inside the
Miranda hearing; but for counsel's deficient performance, a
reasonable probability exists that the outcome of the appeal
would have been different because the inclusion of petitioner's
special education status, combined with his young age and lack

47

of background in the criminal justice system, would have affected
the outcome of the <u>Miranda</u> hearing. Petitioner would have
prevailed on appeal had this significant and obvious issue been
raised.

At the <u>Miranda</u> hearing, petitioner testified inferentially
that he did not have the cognitive ability to understand and
to knowingly waive his rights when he was questioned by the
police. (3T82-16 to 83-1 and 3T113-14 to 117-3). Trial counsel
argued that petitioner's statement should be suppressed because
petitioner "didn't understand those rights":

> **[Trial counsel]:** I suggest to the court con-
> sidering the nature of the charge, the fact
> that you have a fifteen year ten month old
> juvenile at the time of the arrest . . .
> knowingly waived his rights . . especially
> since my client's own testimony indicated
> that he didn't understand those rights at
> that time.

(4T10-17 to 11-1).

In denying the motion to suppress, the trial court stated,
on the record, that he did "not find credible petitioner's
testimony that he didn't understand what was being read to him."
(4T16-7 to 13).

However, as previously noted herein, there was evidence
that could have been submitted to support petitioner's assertion
that he did not understand. Not only were there school records,
but as noted above, petitioner had also evaluated by three
psychologists for the juvenile waiver hearing. Dr. Thompson
and Dr. Page were retained by the defense; Dr. Schlesinger was
retained by the State. Petitioner contends that the school
records and the three psychological assessment reports support

48

petitioner's contention that he did not understand. (Pet. Reply App. 8 and 14).

In determining whether or not petitioner gave a voluntary statement, the Court assess the totality of all the surrounding circumstances. Columbe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Withrow v. Williams, 507 U.S. 680, 706, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Petitioner contends that his mental or developmental condition impaired his ability to comprehend his choices and must be factored into this Court's determination of voluntariness. (6T115-21 to 22).

Appellate counsel's failure to argue the totality of the circumstances of petitioner's statement was not voluntarily nor knowingly fell below an objective standard of reason-ableness[8]

It is true that appellate attorney does not have to raise issues which he considers frivolous on appeal. Jones v. Barnes, 463 U.S. at 749. Nevertheless, an attorney must raise the meritorious issues on appeal which are likely to lead to a petitioner's conviction being reversed on appeal. Otherwise such an attorney is rendering ineffective assistance of counsel.

---

[8] The State court also did not adjudicate the merits of this claim, and deferential standard of 28 U.S.C. § 2254(d) thus do not apply. (Ra 24 at 7). See Porter v. McCollum, supra, 130 S.Ct. 447, 452, 175.

15. There is no allegations in Paragraph Fifteen of the Answer to contest.

16. There is no allegations in Paragraph Sixteen of the Answer to contest.

17. There is no allegation in Paragraph Seventeen of the Answer to contest.

18. Petitioner takes issue and totally disagrees with the allegations in Paragraph Eighteen, as argued in detailed in Paragraph Twelve. See petitioner's Response to Affirmative Defense above.

## Conclusion

WHEREFORE, petitioner respectfully requests that the Court grant him a writ of habeas corpus.


Dated: September 15, 2015                Respectfully submitted,


                                         Marvin Mathis
                                         Petitioner, pro se